1  R. Rex Parris, Esq. (SBN 96567)
   rrparris@rrexparris.com
2  Kitty K. Szeto, Esq. (SBN 258136)
   kszeto@rrexparris.com
3  **R. REX PARRIS LAW FIRM**
   43364 10th Street West
4  Lancaster, CA  93534
   Telephone:   (661) 949-2595
5  Facsimile:    (661) 949-7524

6  Deborah A. Klar, Esq. (SBN 124750)
   dklar@dklarlaw.com
7  2934 1/2 Beverly Glen Circle
   Bel Air, California 90077
8  Telephone:  (310) 858-9500

9  Attorneys for Plaintiff
   WIMO LABS, LLC
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13  Wimo Labs, LLC                    CASE NO.:   8:15-CV-01330

14         Plaintiff,
                                      FIRST AMENDED COMPLAINT
15         v.

16  eBay, Inc., a Delaware Corporation;
    PayPal Holdings, Inc., a Delaware
17  Corporation, Hoonie S. Kang, an
    individual; D.I.R. Enterprises, Inc., a
18  California Corporation; and Simon
    Chen, an individual,
19
           Defendants.
20

21

22

23

24

25

26

27

28

                            COMPLAINT

# TABLE OF CONTENTS

**PAGE**

NATURE OF THE ACTION ........................................................................... 1

THE PARTIES ........................................................................................... 3

    A.    eBay Defendants ............................................................... 3

    B.    Seller Defendants ............................................................. 4

JURISDICTION ........................................................................................ 5

VENUE ..................................................................................................... 5

FACTUAL ALLEGATIONS ....................................................................... 6

    C.    Plaintiff's Business and Marks ........................................... 6

    D.    Counterfeiting and the Internet ....................................... 11

    E.    eBay's Business ............................................................... 12

    F.    Intentional Use on ebay.com of Counterfeit Marks That Infringe On Plaintiff's Marks By Defendants ...................... 15

Unauthorized Use of Plaintiff's Marks By Seller 1 ................................... 21

Unauthorized Use of Plaintiff's Marks By Seller 2 ................................... 24

Unauthorized Use of Plaintiff's Marks By Seller 3 ................................... 47

Unauthorized Use of Plaintiff's Marks By eBay ....................................... 55

The Counterfeit Report Confirms Unauthorized Use of Plaintiff's Marks by eBay Sellers and Knowing Contribution by eBay. ...................... 60

Unauthorized Use of Plaintiff's Marks In Connection with Listings for LUNATIK® EPIK. ............................................................... 61

    G.    PayPal's Processing of Counterfeit Sales Through ebay.com .............. 62

# TABLE OF CONTENTS

PAGE

H.    eBay Is an Indispensable Part of the Enterprise that Sells Obvious Counterfeit Products that Infringe on Plaintiff's Trademarks, Resulting in Consumer Confusion and Harm to Plaintiff ............................................. 67

I.    eBay's Unwillingness to Refrain from Trademark Infringement ......... 68

J.    The Financial Services Provided by eBay's Partner, PayPal, to Unauthorized Sellers Materially Aid and Abet the Enterprise that Traffics In The Sale of Counterfeit Goods ............................................................ 73

FIRST CAUSE OF ACTION AGAINST eBAY AND THE SELLER DEFENDANTS (Trademark Infringement Under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a)) ............... 75

SECOND CAUSE OF ACTION AGAINST eBAY (Contributory Trademark Infringement and Counterfeiting Under the Lanham Act) ................... 77

THIRD CAUSE OF ACTION AGAINST eBAY AND THE SELLER DEFENDANTS (Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)) ................................................ 82

FOURTH CAUSE OF ACTION AGAINST eBAY (Direct Trademark Infringement Through Initial Interest Confusion) ................................ 84

FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS (Violations of Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c)) ..................................................... 85

The RICO Enterprise ........................................................................ 85

Pattern of Racketeering Activity ........................................................ 89

Pattern of Racketeering Activity:  Numerous Instances of Trafficking in Counterfeit Goods  In Violation of 18 U.S.C. § 2320(a)(1) .................................. 90

Pattern of Racketeering Activity: Multiple Instances of Wire Fraud  In Violation of 18 U.S.C. § 1343 ................................................ 97

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**PAGE**

Summary of the Pattern of Racketeering Activity Alleged
Against Each RICO Defendant..................................................................104

DEMAND FOR JURY TRIAL ...........................................................110

COMPLAINT

Plaintiff Wimo Labs, LLC, by their attorneys, the R. Rex Parris Law Firm and Deborah A. Klar, for their complaint against Defendant eBay, Inc., alleges as follows:

## NATURE OF THE ACTION

1.    The Internet has opened the door for unauthorized merchants to reach a wide range of consumers in their efforts to sell obvious counterfeit versions of products that are not manufactured, licensed, or approved by the duly registered owner(s) of the product's trademark(s) ("Fake Products").  "Counterfeiting is a $1 trillion global criminal enterprise, and e-commerce websites, including eBay, are an ideal platform to distribute counterfeits directly to the consumer. e-Commerce websites reap billions in revenue, and profit from transaction fees for the counterfeit product web sales."[i]  The sale of products that infringe on U.S. trademarks threaten the health and safety of American consumers and the U.S. economy.  In 2013, the total value of customs-related Seizures (MSRP) in the United States was $1.74 Billion,[ii] which Plaintiff is informed and believes represents only a small fraction of the counterfeit products shipped into the United States.

2.    This is an action against eBay, Inc. ("eBay"), PayPal, Inc. ("PayPal") (formerly eBay's wholly-owned subsidiary now publicly-traded PayPal Holdings, Inc.), and various unauthorized sellers registered on www.ebay.com ("Seller Defendants").  The action arises in connection with eBay's direct and contributory infringement on Plaintiff's Marks notwithstanding reports by Plaintiff and others to eBay that there have been more than *five thousand intentional unlawful listings on ebay.com* by more *than two thousand ebay.com registered sellers* ("Unauthorized Sellers")[iii] of obvious counterfeit Lunatik products (sometimes referred to herein as "Fake Lunatik Products") that display Plaintiff's trademarks, in violation of the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. (the "Lanham Act"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), et seq. ("RICO").

3.     Since February 2013, Plaintiff has sent eBay more than 5,557 Notices of Claimed Infringement ("NOCI") by at least 2,200 individual ebay.com registered sellers.  The NOCI are broken down by product and location of product.  At all relevant times, eBay had direct control and the ability to monitor ebay.com, the instrumentality used by ebay.com registered sellers to infringe on Plaintiff's Marks, and has had reasonable means available to withdraw its services and the services of PayPal so that ebay.com could not be used by Unauthorized Sellers to directly infringe on Plaintiff's trademarks.  For example, it is reported that the most successful avenue for shutting down a counterfeiter is to cut off its flow of funding from credit card companies and banks, such as the flow of funding facilitated by eBay and PayPal.

4.     Recognizing eBay's role and expecting, among other things, that eBay would use the reasonable means they have available to take prophylactic and other action against Unauthorized Sellers' continuing trademark infringement, the Plaintiff's NOCIs request eBay's "cooperation in identifying to [Plaintiff] [eBay's] source for the infringing products."

5.     Instead of cooperating or taking effective remedial action against recidivist counterfeiters, (i) eBay, and PayPal, do not take the reasonable means they have available to withdraw their services to Unauthorized Sellers; and (ii) eBay continues to allow ebay.com and PayPal to be used by thousands of Unauthorized Sellers to advertise Fake Products that display counterfeit Lunatik trademarks that infringe on Plaintiff's trademarks.

6.     Plaintiff is informed and believes that eBay and PayPal intentionally turn a blind eye to the infringing activity on ebay.com of many of its sellers.   Because eBay and PayPal cannot continue to enjoy the enormous profits derived from the proliferation of Fake Products sold on the eBay website if the intentional infringing unauthorized sellers are excluded, eBay's policies and practices are designed to,

among other things, (i) promote the unlawful activities of its unauthorized sellers by soliciting eBay buyers to purchase Fake Lunatik Products knowingly using listings that infringe on Plaintiff's Marks; and (ii) ignore evidence of the unlawful activities by its unauthorized sellers. On account of eBay's policies and practices, eBay and PayPal have reason to know and suspect that users of ebay.com are infringing on legitimate rights of trademark holders, such as Plaintiff.

## THE PARTIES

7.     Plaintiff Wimo Labs, LLC, doing business as Lunatik ("Lunatik" or "Plaintiff") is a Delaware limited liability company registered to do business in California with its principal place of business in Irvine, California.   Plaintiff holds multiple federal registrations in its LUNATIK® mark.

### A.     eBay Defendants

8.     Defendant eBay Inc. ("the Company" or "eBay") is a Delaware corporation with its principal place of business located in San Jose, California. eBay is an American multinational corporation and e-commerce company, providing consumer to consumer & business to consumer sales services via the Internet.

9.     PayPal Holdings, Inc. ("PayPal") was incorporated in Delaware in January 2015 for the purpose of owning and operating eBay's Payments business in connection with the separation and distribution described in the S-1 Registration Statement recently filed by eBay with the Securities & Exchange Commission. The address of PayPal's principal executive offices is PayPal Holdings, Inc., 2211 North First Street, San Jose, California 95131. Before its recent spin-off, PayPal was a wholly-owned subsidiary of eBay. Established in 1998, PayPal had its IPO in 2002, and became a wholly owned subsidiary of eBay later that year. In 2014, PayPal moved $228 billion in 26 currencies across more than 190 nations, generating total revenue of $7.9 billion (44% of eBay's total reported profits). It was announced on September 30, 2014, that eBay would spin off PayPal into a separate publicly traded

company.  PayPal started trading on NASDAQ on or about July 20, 2015.   PayPal reports that after the spin-off, "[it] will derive a significant amount of revenues from eBay."  Plaintiff is informed and believes that based on agreements between PayPal and eBay, post spin-off, there will be no material change in the nature and scope of the services that PayPal provides to buyers and sellers who process transactions on ebay.com.

### B.  <u>**Seller Defendants**</u>

10.    Defendant Hoonie S. Kang ("Kang" or "Seller 1"), identified as eBay Seller 18074, is located in Stevenson Ranch, California according to eBay registered user information.   Kang's eBay user I.D. is "scvhills."   According to ebay.com, "[b]ased in United States, [Seller 1] has been an eBay member since March 22, 2000."   Plaintiff is informed and believes that Kang resides in Beverly Hills, California and currently is a partner with Kearny Real Estate Company ("Kearny") located in Los Angeles, California.  Kang reportedly has been with Kearny since 2001 where his responsibilities include the origination and execution of acquisitionsIn the past two years, Kang reportedly played a pivotal role in the acquisitions of over eighty non-performing loans totaling over $400 million. He continues to serve as the asset manager for many of these assets.

11.    Defendant D.I.R. Enterprises, Inc. ("DIR" or "Seller 2"), is located in El Monte, California. Seller 2 has registered with Defendant PayPal stating that it uses or has used at least the following email addresses:     gaadaptors@gmail.com, zhong.beejob@gmail.com,        maizhuhui@hotmail.com,        hjx928@163.com, haha2yaya@gmail.com, alanmak@tom.com.  Seller 2 has used multiple eBay user IDs in connection with its sale of fake Lunatik products, including the following: accessory-innovation (previously identified as "Seller 4"), cyber-innovation (previously identified as "Seller 6"), usa-cyberlink (previously identified as "Seller 7"), usacyber (previously identified as "Seller 8"), usgadget-tech (previously

identified as "Seller 9"), laptop-cyber (previously identified as "Seller 10"), bearbear-2010 (previously identified as "Seller 11").  Seller 2 has also been identified on ebay.com using eBay Seller Nos. 40101, 37283, 41423, 32166, 22596, and 24768.

12.    Defendant Simon Chen ("Chen" or "Seller 3) is located in Shanghai. Seller 3 has registered with Defendant PayPal stating that he uses or has used at least the following email addresses: heywholesale@gmail.com, newcomdigicsa@gmail.com, newcomdigihey@gmail.com, newcomdigifr@gmail.com, newcomdigiebay@gmail.com, hid911@gmail.com, hid911@hotmail.com, netled22@gmail.com, lvyingmingpp@yahoo.com.cn, anson7878@tom.com, netlamp@gmail.com, newcomdigide@gmail.com, xenon68@gmail.com, hiking0978@merchantrun.com, xenon30@gmail.com, wrongpay@gmail.com, newcomdigiebay@gmail.com, newcom68@gmail.com. Seller 3 has used multiple eBay user IDs in connection with his sale of fake Lunatik products, including, the following:  ledno3 and netled.  Seller 3 has also been identified on ebay.com as eBay Seller Nos. 14394 and 32903.

## **JURISDICTION**

13.    This is an action arising under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c), *et seq.* ("RICO").

14.    This Court has federal question jurisdiction over this action under 15 U.S.C. § 1121(a) (action arising under the Lanham Act), 28 U.S.C. §§ 1331 (federal question), 1338(a) (any Act of Congress relating to patents or trademarks), and 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark law).

## **VENUE**

15.    Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c) and (d) as Defendants transact business in Los Angeles County, California, a substantial part

of the events or omissions giving rise to the claim occurred within this District, and one or more of the Seller Defendants has its principal place of business in this district.

## FACTUAL ALLEGATIONS

### C.    Plaintiff's Business and Marks

16.    Plaintiff is the owner of the right, title and interest in and to, *inter alia*, the following federally registered trademarks and/or service marks:

| U.S. Registration No. | Mark | Reg. Date | Goods Covered (summarized) |
|---|---|---|---|
| 4,075,222 | LUNATIK | Dec. 20, 2011 | Watch bands for holding PDAs |
| 4,296,576 | LUNATIK | Feb. 26, 2013 | Cases for electronic devices |
| 4,262,488 | TAKTIK | Dec. 18, 2012 | Mobile phone cases |
| 4,542,506 |  ("Lunatik Logo Mark") | June 3, 2014 | Cases for electronic devices (cell phones, PDAs (e.g., smart watches) |

17.    Annexed hereto as Exhibit 1 are true and correct copies of the United States Patent and Trademark Office ("PTO") registration certificates evidencing Plaintiff's ownership of these trademarks and printouts from the PTO's website setting forth the status of these trademarks. Each mark was first used in commerce on or before the first date of use set forth in Exhibit 1. All of the registrations set forth in Exhibit 1 are valid and subsisting, and Lunatik also owns common law rights in the above and other marks for use in connection with Lunatik Products. These registered and common law trademarks are collectively referred to as the "Lunatik Marks" or "Plaintiff's Marks."

18.    The Lunatik Marks are in full force and effect. Lunatik has never abandoned the Lunatik Marks nor has Lunatik ever abandoned the goodwill of its

businesses in connection thereto. Lunatik intends to continue to preserve and maintain its rights with respect to the Lunatik Marks.

19.    Lunatik does not sell on ebay.com, and does not authorize any of its licensed distributors to sell on ebay.com.

20.    Lunatik's website offers various types of products for sale to Internet users.    Lunatik designs premium products that transform and enhance the user's mobile, digital life.    As to its iPhone cases, Lunatik categorizes its iPhone cases into different types for iPhone 4s, iPhone 5/5s, iPhone 5c, iPhone 6, and iPhone 6 Plus. Lunatik also sells two rugged protection systems for Apple watches, EPIK and EPIK Aluminum. Each product has a  different appearance, function, and purpose.    Shown below is a true and accurate screenshot of Lunatik's website at www.lunatik.com on which its iPhone cases and EPIK products are sold.

21.    The authentic TAKTIK® Extreme for iPhone 4 ("TAKTIK® Extreme for iPhone 4s"), manufactured by Plaintiff, is Lunatik's Premium Protection System for the iPhone 4s.  The MSRP for TAKTIK® Extreme for iPhone 4s is $99.95.



22.    Shown to the left is an image of an authentic TAKTIK® Extreme for iPhone 4 with the Corning® Gorilla® Glass Impact Lens For Screen Protection which bears Lunatik's federally registered trademark names and logo mark. *See* Ex. 1 (Lunatik U.S. Reg. Nos. 4,296,576, 4,262,488 and 4,542,506).  Lunatik makes the TAKTIK® Extreme for iPhone 4s with a ballistic-grade polymer (plastic) and only sells it in white and

7

black.  TAKTIK® Extreme for iPhone 4s is designed to exceed user expectations in the rugged case market. TAKTIK® Extreme for iPhone 4s balances strong iconic aesthetics with innovative performance features to transform the iPhone 4s through bold design, precision engineering and the best performance materials available.

23.    The authentic LUNATIK® TAKTIK® Extreme cell phone case for iPhone 5s ("TAKTIK® Extreme for iPhone 5s") is manufactured and distributed by Plaintiff.  Originally the MSRP was $129.95.  In July, 2015, the MSRP was lowered to $89.95.

24.    Shown to the right is an image of an authentic TAKTIK® Extreme for iPhone 5s with the Corning® Gorilla® Glass Impact Lens For Screen Protection which bears Lunatik's federally registered trademark names and logo mark.  *See* Ex. 1



(Lunatik U.S. Reg. Nos. 4,296,576, 4,262,488 and 4,542,506).  Lunatik makes the TAKTIK® Extreme for iPhone 5s with a ballistic-grade polymer (plastic) and only sells it in white with a gold port cover, and black with a red port cover.  TAKTIK® Extreme for iPhone 5s has an upgraded rear bezel to be fully compatible with the new 5s iSight camera and flash. TAKTIK® Extreme for iPhone 5s delivers refined and ultra-rugged protection from impact, drops and screen damage as well as water and dust ingression.   Featuring an industry-first Corning® Gorilla® Glass lens, TAKTIK® Extreme for iPhone 5s provides screen protection that does not compromise on touch screen responsiveness.

25.    TAKTIK® 360 for iPhone 6, manufactured by Plaintiff, is the evolution of Lunatik's most protective case, TAKTIK® Extreme ("TAKTIK® 360").  The MSRP for TAKTIK® 360 for iPhone 6 is $124.95.



26.    Shown to the left is an image of an authentic TAKTIK® 360 for iPhone 6 with the Corning® Gorilla® Glass Impact Lens For Screen Protection which bears Lunatik's federally registered trademark names and logo mark.  *See* Ex. 1 (Lunatik U.S. Reg. Nos. 4,296,576, 4,262,488 and 4,542,506).  The TAKTIK® 360 is made with a ballistic-grade polymer (plastic) and is only available in black.    While maintaining Lunatik's tough standards for impact and drop protection, TAKTIK® 360 provides enhanced protection from water and dust.  Installation is made easier with Lunatik's patent pending compression closure system and single latch closure. The Corning® Gorilla® Glass lens adds an extra layer of screen protection without compromising a fluid touchscreen experience.   TAKTIK® 360 is the ultimate in rugged protection.

27.    The EPIK Aluminum for Apple Watch ("LUNATIK® EPIK") is manufactured by Plaintiff.   The MSRP for the LUNATIK® EPIK is $139.95.

28.    Shown to the right is an image of an authentic LUNATIK® EPIK Apple Watch Kit only available for sale on a pre-order basis on Plaintiff's website, which bears Lunatik's federally registered logo mark.   *See* Ex. 1 (Lunatik U.S. Reg. No. 4,542,506). The packaging for the product bears Lunatik's federally registered trademark name.   *See* Ex. 1 (Lunatik U.S. Reg. No. 4,296,576).  The LUNATIK® EPIK transforms the Apple Watch into a ruggedly refined companion more suited for the abuse an everyday active lifestyle "dishes out."  It is designed to protect the Apple Watch and provides enhanced tactile control and unobstructed access to the watch's sensor and features.



29.     Plaintiff maintains strict quality control standards for its products. Customers, potential customers, and other members of the public and industry associate Plaintiff's products with high quality materials, style, and functionality. Plaintiff's products are among the most sought after iPhone cases offered for sale in the United States. On information and belief, many consumers purchase Plaintiffs' products because of Plaintiff's reputation for durable, long-lasting products – characteristics that result from Plaintiff's strict material and manufacturing standards.

30.     Shown below is an image of the packaging for TAKTIK® Extreme iPhone cases which bears Lunatik's federally registered trademark name and logo mark See Ex. 1 (Lunatik U.S. Reg. Nos. 4,227,706 and 4,542,506) is shown below: Plaintiff's products are displayed in their respective advertising and promotional materials.  To date, Plaintiff has spent hundreds of thousands of dollars on advertising and promoting its respective marks and products, and Plaintiff has enjoyed millions of dollars in sales.




10
COMPLAINT

31.    Plaintiff's continuous and broad use of its respective marks on its products and packaging for the products has expanded their renown and enabled Plaintiff's Lunatik Marks and brand to be one of the best known in the industry – particularly with respect to high-end, ultra-protective phone cases.  Even eBay itself admits and advertises Lunatik's phone cases as being among the most durable smartphone cases on the market.[iv]

32.    Plaintiff's reputation is a direct result of its extensive advertising and promotion, concomitant widespread sales, the care and skill utilized in the manufacturing of its products, the uniform high quality of such products sold under or in connection with Plaintiff's Marks, and the public acceptance thereof.  Plaintiff has created invaluable goodwill throughout the United States and elsewhere by selling products of consistent dependable quality.   Based on the extensive sales of the Plaintiff's Products and the wide popularity of the Lunatik brand, Plaintiff's Marks have developed a secondary meaning and significance in the minds of the purchasing public, and the services and products utilizing and/or bearing such marks and names are immediately identified with Plaintiff by the purchasing public.   Plaintiff's valuable goodwill and brand value is being blurred and has been tarnished by the rampant infringement alleged herein.

**D.    Counterfeiting and the Internet**

33.    Perhaps the single greatest threat to brand owners such as Plaintiff is the global sale of counterfeit products, including products with counterfeit marks that intentionally infringe on the legitimate owners' trademarks.

34.    Reports introduced into the Congressional Record indicate that counterfeiting costs U.S. businesses between $200 and $250 billion every year and results in 750,000 lost jobs.  Congress has recognized that counterfeits not only present  "'grave risks to the health and safety of consumers of these articles,' but have a " 'dire effect on the economy' " as well.[v]

35.     The Internet has become an increasingly popular way to market products with counterfeit marks to consumers globally and in the United States by providing increased access to customers and allowing the infringing goods to be shipped in small quantities to better evade detection by customs and other law enforcement agencies. The lure of the Internet is easy to understand from the perspective of the sellers of counterfeit and fake products: there is a minimal cost for operating a website, a decreased risk of prosecution and, if the counterfeiters are forced to shut down one online store, they can simply open another.

**E.    eBay's Business**

36.     Founded in 1995, Defendant eBay, Inc. is the proprietor of www.ebay.com ("ebay.com"), an Internet-based marketplace that allows those who register with it to purchase goods from and sell goods to one another.  Through its aggressive marketing and solicitation, it connects buyers and sellers and enables transactions that are carried out directly between eBay members.[vi]  In its auction and listing services, it provides the venue for the sale of goods and material support for the transactions.[vii]  eBay is the world's largest online marketplace with an estimated 120 million active users worldwide. In 2012, individual buyers and sellers and businesses sold over $75 billion worth of goods on eBay.[viii]  In 2014, eBay's operating profit margin was 19.63%.[ix]

37.     The business of eBay is to "enable global commerce and payments on behalf of users, merchants, retailers and brands of all sizes."[x]  As reported in the eBay Form 10-K for the period ending December 31, 2014 ("eBay Annual Report"), the technologies and services eBay provides through its website, ebay.com, are designed to enable users and merchants worldwide to organize and offer their inventory for sale and buyers to find, buy and pay for it virtually anytime and anywhere.  eBay enables commerce through three reportable segments: Marketplaces, Payments and Enterprise.  According to eBay, the company "is only successful when the users and

merchants we enable are successful."[xi]  **eBay reports that it is "primarily a transaction-based business that generates revenue from the transactions and payments that it successfully enables**."[xii] (Emphasis added).

38.    eBay's Marketplaces segment includes its core global ecommerce platform, ebay.com and other localized sites around the world.[xiii]    eBay's Marketplaces offer the following features: (i) ebay.com is a leading commerce platform for users and merchants; (ii) ebay.com provides a variety of access points for consumers to shop virtually anytime, anywhere; and (iii) ebay.com provides a large selection of inventory globally.[xiv]

39.    eBay's Payments segment includes its core payments brand PayPal, which enables individuals and businesses to securely, easily and quickly send and receive payments online and through a broad range of mobile devices in approximately 203 markets worldwide and in 26 currencies as of December 31, 2014. eBay's Payments platforms offer the following features:  (i) eBay enables payment in the online and physical worlds; (ii) eBay's global reach and scale provides value for consumers and merchants; and (iii) eBay's payments solutions offer leading fraud prevention and protection.[xv]

40.    eBay measures it footprint in its "addressable market" using a metric that it calls "**Enabled Commerce Volume**" ("ECV").  ECV consists of the total commerce and payment volume that runs through eBay platforms which eBay enables on behalf of its merchants and retailers.[xvi]    As of December 31, 2014, eBay's Marketplaces segment had more than 155 million active buyers and more than 800 million listings globally, while its Payments segment had 162 million active registered accounts.[xvii] eBay generates revenue by charging sellers to use its listing services.  For any listing, it charges an "insertion fee."  Fee amounts are based on the terms in effect when the listing goes live and when it renews.  If a seller selects more than one category for a listing, insertion and advanced listing upgrade fees apply for each category.[xviii]    For

any completed sale, it charges a "final value fee" that ranges from 5.25% to 10% of the final sale price of the item.  Sellers have the option of purchasing, at additional cost, features "to differentiate their listings, such as a border or bold-faced type."[xix]

41.    eBay's business model and pricing is designed so that its Marketplaces business is successful when its merchants are successful.  eBay reports that the majority of its Marketplace revenue "comes from a take rate on the Gross Merchandise Volume, or GMV, of transactions closed on our Marketplaces trading platforms."[xx]  In 2014, eBay generated $82.95 billion in GMV.  eBay defines GMV as the total value of all successfully closed transactions between users on Marketplaces platforms (excluding eBay's classifieds websites, brands4friends and Shopping.com) during the applicable period, regardless of whether the buyer and seller actually consummated the transaction."[xxi]

42.    At all relevant times, eBay also has generated revenue through PayPal, through which it allows users to process their purchases.  As a wholly-owned eBay subsidiary, PayPal deducted, as a fee for each transaction that it processes, 1.9% to 2.9% of the transaction amount, plus a flat fee of $0.30.  This gave eBay an added incentive to increase both the volume and the price of the goods sold on its website.[xxii]

43.    Today, under the 5-year operating agreement between PayPal and eBay, eBay is contractually bound to maintain the majority of its GMV (the total volume in dollars of sales on eBay) to be processed through PayPal. Specifically, eBay has guaranteed that 80% of GMV is paid via PayPal, otherwise it will have to pay PayPal "restitution."[xxiii]

44.    The success of the eBay and PayPal business models relies on eBay's active promotion and facilitation of the sale of an enormous number of Fake Products through ebay.com.  The acts and omissions of eBay and PayPal enable manufacturers, distributors and unauthorized sellers of Fake Products by providing them with a global marketplace for such goods, which variously includes, *inter alia*, aggressive

online marketing, credit card processing, financing, and shipping services. Recognizing that the sale of Fake Products on ebay.com may significantly contribute to reported profits, eBay's and PayPal's policies and practices, variously, among other things, (i) promote the unlawful activities of unauthorized sellers by soliciting buyers to purchase Fake Products, and (ii) ignore evidence of the unlawful activities by its unauthorized sellers. On account of eBay's policies and practices, it has reason to know and suspect that users of ebay.com are infringing on legitimate rights of trademark holders, such as Plaintiff.

45. eBay and PayPal exercise significant control over the unauthorized sellers' means of trademark infringement by means of their significant control over the transactions and listings facilitated by and conducted through ebay.com. Given that control, eBay and PayPal have the ability to, among other things, identify and take action against recidivist counterfeiters based on activities on ebay.com.

**F.    Intentional Use on ebay.com of Counterfeit Marks That Infringe On Plaintiff's    Marks By Defendants**

46. eBay expressly recognizes that the protection of a company's intellectual property, including its trademarks (in the case of eBay the trademarks covering the eBay and PayPal names), patents, copyrights, domain names, trade dress and trade secrets as critical to the company's success. For that reason, eBay aggressively protects its intellectual property rights by relying on federal, state and common law rights in the U.S. and internationally, as well as a variety of administrative procedures.[xxiv]

47. eBay acknowledges that the listing or sale by eBay users of items that allegedly infringe the intellectual property rights of rights owners, including pirated or counterfeit items, may harm the business of the lawful rights owners. eBay reports that "the listing or sale by our merchants of 'counterfeit' goods, has resulted and may continue to result in allegations of civil or criminal liability for unlawful activities

15
COMPLAINT

against eBay (including the employees and directors of our various entities) involving activities carried out by users through eBay's services.  In a number of circumstances, third parties, including government regulators and law enforcement officials, have alleged that eBay services aid and abet violations of certain laws, including laws regarding the sale of counterfeit items."[xxv]

48.    In addition, eBay reports that allegations of infringement of intellectual property rights, including but not limited to counterfeit items, have resulted in threatened and actual litigation from time to time by rights owners, such as Lunatik.[xxvi]   "Plaintiffs in these and similar suits seek, among other remedies, injunctive relief and damages.   Statutory damages for copyright or trademark violations could range up to $150,000 per copyright violation and $2,000,000 per trademark violation in the United States.   In the past, eBay has paid substantial amounts in connection with resolving certain trademark and copyright suits."[xxvii]

49.    eBay expressly acknowledges and agrees that unauthorized copies or fake products that are advertised and appear on its website may infringe on the manufacturer's trademark.   For example, it is eBay's publicly stated position that an item that has a company's name or logo on it, but not made or endorsed by the owner of the trademark, is not allowed on eBay.  "These kinds of things may infringe on someone's copyright or trademark."  ebay.com warns:  "[m]ake sure your listing follows these guidelines.  If it doesn't, it may be removed, and you may be subject to a range of other actions, including limits of your buying and selling privileges and suspension of your account."[xxviii]

50.    Notwithstanding eBay's knowledge of these claims and practices by its sellers, eBay publicly admits that it has resisted modifying its business practices because such changes could/would increase costs, lower revenue, make eBay's websites and mobile platforms less convenient to customers, and require eBay to spend substantial resources to take additional protective measures or discontinue

certain service offerings in order to combat these known and acknowledged user practices.[xxix]

51.    eBay is well aware that: (i) it directly solicits eBay buyers to purchase obvious counterfeit Lunatik products from its Unauthorized Sellers; (ii) Unauthorized Sellers are using ebay.com to list products that display counterfeit marks that infringe on Plaintiff's trademarks; (iii) eBay has an essential role in these infringements, since it is via ebay.com that the advertisements and offers for sale are communicated by eBay and others to buyers on its site; (iv) given what ebay.com does and does not state in response to a shopper's request for Plaintiff's trademarked products is likely to cause confusion as to the source of the product displayed with a counterfeit mark that infringes on Plaintiff's trademarks; (v) eBay's take down procedures are at best reactionary rather than proactive; and (vi) changes in its practices, policies and procedures that would assist trademark owners, such as Plaintiff, by proactively removing Fake Products and blocking repeat offenders would lead ebay.com to being less attractive to the sellers of Counterfeit Products, hurting eBay's reported profits.

52.    In addition, Plaintiff is informed and believes that eBay recognized that the company and PayPal could reap tremendous profits from the sale of Fake Products if ebay.com could provide a platform for sellers to cheaply source those products overseas.

53.    To that end, Plaintiff is informed and believes that eBay developed a business strategy that, among other things, (i) launched eBay China; (ii) used non-US eBay account managers to target sellers in foreign markets, where fake products could be cheaply manufactured, to become high volume sellers on ebay.com; and (ii) committed substantial eBay resources to the promotion and development of these sellers' business by, *inter alia*, negotiating highly favorable trilateral agreements between the US Postal Service, eBay China and the Hong Kong Post office to offer China and Hong Kong eBay sellers fast but low cost shipping options.

54.    In or about 2007, eBay China launched www.ebay.cn, an exchange, communication and sharing platform specially built for Chinese cross-border buyers and sellers. Reportedly, it provides training courses to help Chinese sellers expand their business in overseas markets. "The mission of eBay China is to open up a new online silk-road for Chinese enterprises and individual users and help more Chinese sellers reaching out to the world." [xxx]

55.    An important postal service negotiated by eBay to benefit Chinese sellers involved in the sale of Fake Products, launched in or about May 2011, is referred to as ePacket.  ePacket offers local pick-up service, label printing, online tracking and pre-customs declaration for a 7 to 10-day guaranteed delivery period at a 30 to 50% discounted price compared with many equivalent.[xxxi]  When originally announced, the arrangement was touted as follows:   "The collaborative service and marketing agreement for these lightweight shipments provides U.S. consumers with greater convenience and delivery confirmation information online at usps.com. Sellers using eBay GC can track their shipments with electronic notifications such as in-process and proof-of-delivery scans at ebay.cn. Upon arrival in the U.S., these shipments are processed as domestic First-Class Mail, with a one to three-day delivery standard."[xxxii] Sellers in China using the shipping platform through eBay GC were expected to ship small items such as cellular telephone accessories and electronics weighing up to 4.4 pounds (2 kilos), with most in the range of 13 ounces and under.[xxxiii]

56.    "This collaboration will increase convenience and improve delivery consistency for American consumers ordering small shipments from merchants in China, and holds great potential for increasing international package volumes for the Postal Service," said Pranab Shah, managing director and vice president, Global Business. "We look forward to working with our business partners to build upon this agreement as we move forward."[xxxiv]

57.    According to the Washington Post, ePacket "makes it possible for an [eBay seller] to send a pound of stuff from Hong Kong to D.C. for less than it would cost to send the same package from, say, Seattle."[xxxv]  It also has been reported that "[n]early 40% of eBay sellers in China are using the ePacket service to ship to the U.S., with over 80% of items delivered in five to 10 days. Upon arrival in the U.S., these shipments are processed as domestic First-Class Mail, with a one to three-day delivery standard."[xxxvi]

58.    eBay's Asian Exporter Index is a report that looks at the top eBay sellers across Asia. Most of these sellers are based in China and Hong Kong and sell their items on various eBay sites, the top sites being eBay's U.S., U.K., Australian and German marketplaces.  "The eBay Asian Exporters' Index looks at some of the most successful businesses selling on eBay from across Asia. These businesses are exporters with a global customer base.  The information in the Index is based on internal eBay data and the results of a Nielsen online survey conducted among eBay sellers with annual sales over US$100,000 based in China and Hong Kong."[xxxvii]  The Index looks at sellers and trends from around Asia including China and Hong Kong.[xxxviii]

59.    "eBay has played a big role in Asia's economy, says Jay Lee, managing director of eBay Asia Pacific, adding that the average Asian merchant gets 71 percent of his or her total sales through eBay and employs 10 people.  'The Asian Exporters' Index demonstrates the important role eBay plays in the development of e-commerce in Asia, providing a source of job and wealth creation,' he says.  eBay, which has a reported 97 million active users, has allowed sellers in Asia to market themselves directly to millions of shoppers around the world, adds Jeff Liao, CEO of eBay Greater China and Asian cross-border trade. The top eBay categories for Asian sellers included Clothing & Accessories, Jewelry & Watches, Computers and Cell Phones & PDAs."[xxxix]

60.    According to Mr. Liao, "eBay enables savvy brands and manufacturers to market directly to consumers around the globe. Combine that with Asia's status as the world's manufacturing engine room and you have a powerful opportunity to create a very efficient market connecting consumers directly to the source." [xl]   Cell phones and accessories, such as cellphone cases, are among the top five "categories in which Asian exporters sell on eBay."[xli]

61.    Since at least February 2013, Plaintiff has incurred substantial costs actively monitoring listings on ebay.com and uncovered evidence that one or more listings that infringe on Plaintiff's Marks appear on eBay.com almost daily. Plaintiff's conclusions are consistent with the reported results of a nine-month investigation by The Counterfeit Report.

62.    Since at least February 2013, Plaintiff has sent eBay thousands of notices that listings on ebay.com by Unauthorized Sellers display counterfeit marks that infringe on Plaintiff's Marks in connection with the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products in violation of the Lanham Act, as amended.   At least 20% of those NOCIs involved sellers identified on ebay.com as located in Hong Kong or China.  Plaintiff's Marks appear on the products and packaging described in paragraphs 16 through 28 above.

63.    Plaintiff and others have repeatedly placed eBay on notice that many of its Unauthorized Sellers are repeat infringers.  Nevertheless, eBay has taken no effective steps, such as de-listing the Unauthorized Sellers, to prevent these recidivist Unauthorized Sellers from continuing to operate on eBay and infringing on Plaintiff's Marks.

1                             **<u>Unauthorized Use of Plaintiff's Marks By Seller 1</u>**

2         64.     Set forth below is a listing that appeared on ebay.com in or about 2014,

3 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in

4 connection with an offer for the sale of a Fake Lunatik iPhone case by Defendant

5 Kang. EBay identifies on Kang's listing that Kang has sold 9,971 units of the Fake

6 Lunatik iPhone cases described therein to the public. The listing advertises an

7 "Aluminum Gorilla Metal Cover Case iPhone Case" for $10.99 in colors never

8 offered by Lunatik.



24         65.     In or about 2014, The Counterfeit Report made several purchases from

25 Defendant Kang in response to the listing above and was shipped by Defendant Kang

26 four iPhone 6 models and three iPhone 5 models in three separate purchases. All of

the Fake Products shipped by Defendant Kang are aluminum knockoffs absent the LUNATIK name or logo mark.

66.    The Fake Lunatik Product advertised mimics the design of the authentic TAKTIK® Extreme for iPhone 5 with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bears an exact copy of Lunatik's federally registered logo mark.  The listing images are all linked to the eBay listing by the product ID in the URL at the top of the image.  The listing was intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

67.    The Counterfeit Report put eBay on notice that the product being sold by Defendant Kang was a counterfeit of Plaintiff's iPhone case.  "Lunatik does not make red cases."   Further, the Counterfeit Report informed eBay that "[t]he product is evidence of a crime and WILL NOT be returned.  Returning counterfeit products is against eBay policy and unlawful."  eBay customer support reviewed The Counterfeit Report's request for a refund and declined the request for a refund.

68.    Though eBay's policy is not to return counterfeit products[xlii], upon information and belief, this is exactly what eBay requires for a consumer to receive a refund.  Fake Products are evidence of a crime.  *See* 18 U.S.C.A. § 2320.  Contrary to law, upon reporting a purchased item as counterfeit, the eBay customer is instructed to return the product.  Instead of taking any action against the Unauthorized Seller, eBay facilitates the Seller's receipt back of the Fake Products, which are likely then resold to another unsuspecting eBay customer.  Plaintiff is informed and believes that PayPal provides buyers with the same or a similar instruction.

69. On May 27, 2015, Plaintiff transmitted a NOCI to eBay in response to a listing on ebay.com of Seller 1 with, among other things, Plaintiff's logo mark on an image of a counterfeit aluminum TAKTIK® phone case ("Seller 1 NOCI"). The listing also displays a counterfeit aluminum TAKTIK® phone case in yellow. The listing reports "400 sold." The listing also reports "credit cards are processed by PayPal" and that buyers can also apply and use purchase "PayPal Credit." Buyers applying for PayPal Credit are eligible to receive $10 back on their first purchase. Shown below is an image of the Seller 1 listing that is the subject of Plaintiff's May 27, 2015 NOCI to eBay.



70. Lunatik makes its TAKTIK® phone cases in two colors: white and black. It has repeatedly made this fact known to eBay, and advised it that phone cases offered under the TAKTIK® mark in other colors such as yellow or red are counterfeit goods.

71. Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters. It does not and has never used Aluminum, and has repeatedly made eBay aware of this fact, and advised it that phone cases offered under the TAKTIK® mark as aluminum are counterfeit.

72. Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit

and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 1 NOCIs, that the iPhone cases advertised by Seller 1 were Fake Lunatik Products.

73.    As evidenced by the July 23, 2015 listing below, eBay has continued to allow Seller 1 to sell obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.



**<u>Unauthorized Use of Plaintiff's Marks By Seller 2</u>**

74.    Set forth below is a listing that appeared on ebay.com in or about 2014 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in connection with an offer for the sale of Fake Lunatik iPhone cases by Seller 2. It was

reported on ebay.com that 2,705 units of the Fake Lunatik iPhone case described in Seller 2's listing were sold to the public.  The listing advertises an "Aluminum Metal Temptered Gorilla Glass Film Case For An iPhone 5C 4/4S 5/S 6" for $11.53 in colors never offered by Lunatik.  The listing also reports "credit cards are processed by PayPal" and that buyers can also apply and use purchase "PayPal Credit."  Buyers applying for PayPal Credit are eligible to receive $10 back on their first purchase.



75.    Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraph 74, it is evident that the Fake Lunatik Products advertised by Seller 2 mimic the design of the authentic TAKTIK® Extreme with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The listing images are all linked to the eBay listing by the product ID in the URL at the top of the image.  The listing was

intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

76.     The Counterfeit Report made several purchases from Seller 2 in response to the listing and was shipped by Seller 2 two silver, two red and two yellow aluminum knockoffs absent the LUNATIK name or design.  Plaintiff is informed and believes that The Counterfeit Report put eBay on notice that the iPhone cases being listed by Seller 2 were counterfeits of Plaintiff's iPhone cases.

77.     Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods.

78.     Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

79.     On July 13, 2015, Plaintiff transmitted a NOCI to eBay in response to listings on ebay.com of Seller 2 for the sale of obvious counterfeit Lunatik products as described more particularly herein ("Seller 2 NOCI").

80.     Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 2 NOCIs, that the iPhone cases advertised by Seller 2 were Fake Lunatik Products.

81.     As evidenced by the July 28, 2015 listing below, eBay has continued to allow Seller 2 to sell obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.



82.     Set forth below is a listing that appeared on ebay.com on July 15, 2014 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in connection with an offer for the sale of Fake Lunatik iPhone cases by Seller 2 (previously identified as Seller 4).  It was reported on ebay.com that eight units of the Fake Lunatik iPhone case described in the listing of Seller 2 (previously identified as Seller 4) were sold to the public.  The listing advertises an "Aluminum Gorilla Glass Metal Cover Case for iPhone 5s 5 Water Shock DUST Proof" for $15.68 in gold, silver, red and yellow, colors never offered by Lunatik.

83.     On July 15, 2014, Plaintiff transmitted multiple NOCIs to eBay in response to listings on ebay.com of Seller 2 (previously identified as Seller 4) for the

sale of obvious counterfeit Lunatik products as described more particularly herein ("Seller 2(4) NOCIs").   As evidenced by the July 28, 2015 listing below, eBay continues to allow Seller 2 (previously identified as Seller 4) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.





84.   Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 81 and 83, it is evident that the Fake Lunatik Products

advertised by Seller 2 (previously identified as Seller 4) mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

85.    Lunatik makes its TAKTIK® iPhone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods.

86.    Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

87.    Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 2(4) NOCIs, that the iPhone cases advertised by Seller 2 (previously identified as Seller 4) were Fake Lunatik Products.

88.    Seller 2 (previously identified as Seller 6) has had multiple listings on ebay.com which display one or more counterfeit marks that infringe on Plaintiff's Marks in connection with an offer for the sale of an obvious Fake Lunatik iPhone case by Seller 2 (previously identified as Seller 6).

89.    Set forth below is a listing that appeared on ebay.com on or about July 15, 2014 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in connection with an offer for the sale of Fake Lunatik iPhone cases

by Seller 2 (previously identified as Seller 6).  It was reported on ebay.com that seventeen units of the Fake Lunatik iPhone case described in the listing of Seller 2 (previously identified as Seller 6) were sold to the public.  The listing advertises the "NEWEST Lunatik Waterproof Shockproof Aluminum Gorilla Cover Case For iPhone 4 4s" for $13.59. The listing offers iPhone cases for other iPhone models in gold, silver, red and yellow, colors never offered by Lunatik



90.    On or about July 15, 2014 and June 10, 2015, Plaintiff transmitted NOCIs to eBay in response to Seller 2 (previously identified as Seller 6)  listings on ebay.com offering for sale obvious counterfeit Lunatik iPhone cases ("Seller 2(6) NOCIs").  As evidenced by the listing below, as of July 16, 2015, eBay has continued to allow Seller 2 (previously identified as Seller 6) to sell obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

91.    Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 89 and 90, it is evident that the Fake Lunatik Products advertised by Seller 2 (previously identified as Seller 6) mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

92.    Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods.

93.    Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay

aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

94.    Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 2(60 NOCIs, that the iPhone cases advertised by Seller 2 (previously identified as Seller 6) were Fake Lunatik Products.

95.    Seller 2 (previously identified as Seller 7) has had multiple listings on ebay.com which display one or more counterfeit marks that infringe on Plaintiff's Marks in connection with an offer for the sale of an obvious Fake Lunatik iPhone case by Seller 2 (previously identified as Seller 7).

96.    Set forth below is a listing that appeared on ebay.com on or about July 15, 2014 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in connection with an offer for the sale of Fake Lunatik iPhone cases by Seller 2 (previously identified as Seller 7).  It was reported on ebay.com that two units of the Fake Lunatik iPhone case described in the listing of Seller 2 (previously identified as Seller 7) were sold to the public.  The listing advertises a "Shock/Dust/WaterProof Aluminum Metal Case with Gorilla Glass For Apple iPhone4s" for $13.58.  The listing offers iPhone cases for other iPhone models in silver, red and yellow, colors never offered by Lunatik.  The listing also reports payment to PayPal.



97.    On or about July 15, 2014, Plaintiff transmitted NOCIs to eBay in response to Seller 7 listings on ebay.com offering for sale obvious counterfeit Lunatik iPhone cases ("Seller 2(7) NOCIs").  As evidenced by the listing below, as of July 15, 2015, eBay continues to allow Seller 2 (previously identified as Seller 7) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

98.    Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 96 and 97, it is evident that the Fake Lunatik Products advertised by Seller 2 (previously identified as Seller 7) mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

99.    Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods

100.   Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay

aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

101. Given that eBay repeatedly has been informed by Lunatik and the Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 2(7) NOCIs, that the iPhone cases advertised by Seller 2 (previously identified as Seller 7) were Fake Lunatik Products.

102. Seller 2 (previously identified as Seller 8) has had multiple listings on ebay.com which display one or more counterfeit marks that infringe on Plaintiff's Marks in connection with an offer for the sale of an obvious Fake Lunatik iPhone case by Seller 2 (previously identified as Seller 8).

103. Set forth below is a listing that appeared on ebay.com on or about July 15, 2014 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in connection with an offer for the sale of a Fake Lunatik iPhone case by Seller 2 (previously identified as Seller 8). The listing advertises a "Lunatik Shockproof Aluminum Metal Case Gorilla Glass Cover for iPhone 5C Red" for $7.99. The listing offers iPhone cases for iPhone models either not manufactured by Plaintiff and/or in colors never offered by Lunatik. The listing also reports "credit cards are processed by PayPal."

1
2
3
4
5
6
7
8
9
10
11
12



13

14      104.  On or about July 15, 2014, Plaintiff transmitted NOCIs to eBay in

15 response to Seller 8 listings on ebay.com offering for sale obvious counterfeit Lunatik

16 iPhone cases ("Seller 2(8) NOCIs").  As evidenced by the listing below, as of July 13,

17 2015, eBay continues to allow Seller 2 (previously identified as Seller 8) to list for

18 sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on

19 Plaintiff's Marks.

20
21
22
23
24
25
26
27
28



105.   Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 103 and 104, it is evident that the Fake Lunatik Products advertised by Seller 2 (previously identified as Seller 8) mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.   The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

106.   Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods.

107.   Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

108.   Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 2(8) NOCIs, that the iPhone cases advertised by Seller 2 (previously identified as Seller 8) were Fake Lunatik Products.

109.   Set forth below is a July 2014 listing for the sale of Fake Lunatik iPhone cases to the public on ebay.com by Defendant Here-Buy, Seller 2 (previously identified as Seller 9).  As of July 15, 2014, it was reported on ebay.com that Defendant Here-Buy sold 141 units of the advertised Fake Lunatik iPhone case based on this listing.  The listing advertises "Lunatik For Apple iPhone 5c Glass Metal Cover Case Aluminum Gorilla Waterproof" cases for $15.56 with the LUNATIK design mark in colors never offered by Lunatik.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11



12     110.   Set forth below is another listing for the sale of Fake Lunatik iPhone

13   cases to the public on ebay.com by Seller 2 (previously identified as Seller 9).  As of

14   June 1, 2015, it was reported on ebay.com that Seller 2 (previously identified as Seller

15   9) sold 325 units of the advertised Fake Lunatik iPhone case based on this listing.

16   The listing advertises a "Shockproof Waterproof Gorilla Glass Metal Aluminum Case

17   Cover For iPhone 4 4S" for $11.89 in yellow with the LUNATIK design mark in

18   silver, red, and yellow, colors never offered by Lunatik.

19

20

21

22

23

24

25

26

27

28

111.   Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 109 and 110, it is evident that the Fake Lunatik Products advertised by Seller 2 (previously identified as Seller 9) mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

112.   Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow, silver, gold or red are counterfeit goods.

113.   Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay

40
COMPLAINT

aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

114. On July 14, 2014, June 1, 2015, and July 15, 2014 Plaintiff transmitted NOCIs to eBay in response to listings on ebay.com of Seller 2 (previously identified as Seller 9) for the sale of obvious counterfeit Lunatik products as described more particularly herein ("Seller 2(9) NOCIs").

115. Given that eBay repeatedly has been informed by Lunatik and the Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® iPhone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 9 NOCIs, that the iPhone cases advertised by Seller 2 (previously identified as Seller 9) were Fake Lunatik Products.

116. Seller 2 (previously identified as Seller 10) has had multiple listings on ebay.com which display one or more counterfeit marks that infringe on Plaintiff's Marks in connection with an offer for the sale of an obvious Fake Lunatik iPhone case by Seller 2 (previously identified as Seller 10).

117. Set forth below is a listing that appeared on ebay.com on or about July 15, 2014 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in connection with an offer for the sale of Fake Lunatik iPhone cases by Seller 2 (previously identified as Seller 10). The listing advertises a "Water-Resistant-Anti-Shock-Aluminum-Gorilla-Glass-Metal-Case-for-iPhone-5-5S-NEW" for $15.59. The listing offers iPhone cases in gold, silver, red and yellow, colors never offered by Lunatik. The listing also reports payment through PayPal.

118.    On or about July 15, 2014, Plaintiff transmitted NOCIs to eBay in response to Seller 2 (previously identified as Seller 10) listings on ebay.com offering for sale obvious counterfeit Lunatik iPhone cases ("Seller 2(10) NOCIs").    As evidenced by the listing below, as of July 29, 2015, eBay continues to allow Seller 2 (previously identified as Seller 10) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.



119. Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 117 and 118, it is evident that the Fake Lunatik Products advertised by Seller 2 (previously identified as Seller 10) mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

120. Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods.

43

121.   Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

122.   Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 2(10) NOCIs, that the iPhone cases advertised by Seller 2 (previously identified as Seller 10) were Fake Lunatik Products

123.   Seller 2 (previously identified as Seller 11) has had multiple listings on ebay.com which display one or more counterfeit marks that infringe on Plaintiff's Marks in connection with an offer for the sale of an obvious Fake Lunatik iPhone case by Seller 2 (previously identified as Seller 11).

124.   Set forth below is a listing that appeared on ebay.com on or about July 15, 2014 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in connection with an offer for the sale of Fake Lunatik iPhone cases by Seller 2 (previously identified as Seller 11).  It was reported on ebay.com that 12 units of the Fake Lunatik iPhone case described in the listing of Seller 2 (previously identified as Seller 11) were sold to the public.  The listing advertises an "Authentic Lunatik Aluminum Metal Case Waterproof Shockproof For iPhone 5 5S 100% High quality metal material #5 colours Reals!!!!" for $15.53. The listing offers iPhone cases for other iPhone models either not manufactured by Plaintiff and/or in colors never offered by Lunatik.

1
2
3
4
5
6
7
8
9
10
11
12



13   125. On or about July 15, 2014, Plaintiff transmitted NOCIs to eBay in

14   response to Seller 11 listings on ebay.com offering for sale obvious counterfeit

15   Lunatik iPhone cases ("Seller 2(11) NOCIs").  As evidenced by the listing below, as

16   of July 29, 2015, eBay continues to allow Seller 2 (previously identified as Seller 11)

17   to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe

18   on Plaintiff's Marks.

19
20
21
22
23
24
25
26
27
28



126.  Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 124 and 125, it is evident that the Fake Lunatik Products advertised by Seller 2 (previously identified as Seller 11) mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

127.   Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods.

128.   Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

129.   Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 2(11) NOCIs, that the iPhone cases advertised by Seller 2 (previously identified as Seller 11) were Fake Lunatik Products.

**Unauthorized Use of Plaintiff's Marks By Seller 3**

130.   Set forth below is a listing that appeared on eBay in or about 2014 for the sale of Fake Lunatik iPhone cases to the public by Defendant Chen.  As reported by ebay.com, Defendant Chen, Seller 3, sold 23,726 units of the advertised Fake Lunatik iPhone case based on this listing.  The listing advertises "Aluminum Gorilla Metal Cover Case iPhone Case" for $15.99, uses the LUNATIK logo mark, and shows a counterfeit red TAKTIK® model case, a color never offered by Lunatik for that model.



131.    The Counterfeit Report made several purchases from Seller 3 in response to the listing and was shipped by Seller 3 iPhone 5 & 6 models in red, yellow, rose and white.    All of the Fake Products shipped by Defendant Chen are aluminum knockoffs absent the LUNATIK name or logo mark.

132.  On May 19 and 27, 2015, Plaintiff transmitted NOCIs to eBay in response to listings on ebay.com of Seller 3 which display, among other things, images of a counterfeit aluminum TAKTIK® phone case displaying Plaintiff's logo mark ("Seller 3 NOCIs").  In one listing shown below, the counterfeit iPhone case is displayed is red.  One listing reports "23,952 sold."  The listings also report that "credit cards processed by PayPal" and that buyers can apply and use purchase "PayPal Credit."  Buyers applying for PayPal Credit are eligible to receive $10 back on their first purchase.





133.  Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 130 and 132, it is evident that the Fake Lunatik Products

advertised by Seller 3 mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product

134.  Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow, or red are counterfeit goods.

135.  Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

136.  Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 3 NOCIs, that the iPhone cases advertised by Seller 3 were Fake Lunatik Products.

137.   As evidenced by the July 23, 2015 listing below that unlawfully infringes on Plaintiff's Marks, eBay has continued to allow Seller 3 to list obvious counterfeit iPhone cases on ebay.com.



138.   Seller 3 (previously identified as Seller 5) has had multiple listings on ebay.com which display one or more counterfeit marks that infringe on Plaintiff's Marks in connection with an offer for the sale of obvious Fake Lunatik iPhone cases by Seller 3 (previously identified as Seller 5).  According to The Counterfeit Report, Seller 3 (previously identified as Seller 5) sold The Counterfeit Report three iPhone cases "listed with the LUNATIK design logo" but sent to The Counterfeit Report

three counterfeit iPhone cases.  As reported on ebay.com, as of May 29, 2015, Seller 3 (previously identified as Seller 5) had sold 8,208 units of the Fake Lunatik iPhone cases described in the listings of Seller 3 (previously identified as Seller 5) on ebay.com.  Plaintiff is informed and believes that The Counterfeit Report put eBay on notice that the iPhone cases being sold by Seller 3 (previously identified as Seller 5) were counterfeits of Plaintiff's iPhone cases.

139.   Set forth below is a listing that appeared on ebay.com on July 18, 2015 which displays one or more counterfeit marks that infringe on Plaintiff's Mark in connection with an offer for the sale of Fake Lunatik iPhone cases by Seller 3 (previously identified as Seller 5).  It was reported on ebay.com that 58 units of the Fake Lunatik iPhone case described in the listing of Seller 3 (previously identified as Seller 5) were sold to the public.  The listing advertises a "Waterproof Shockproof Aluminum Gorilla Metal Cover Case For iPhone Models.  Available for iPhone 6 + 6PLUS + 4/4S/5/5S/5C" for $10.59.  As of the date of the listing, Plaintiff's iPhone case for iPhone 6 and 6Plus was not available for sale; it could only be pre-ordered.  The listing offers iPhone cases for other iPhone models either not manufactured by Plaintiff and/or in colors never offered by Lunatik.  The listing also reports "credit cards are processed by PayPal" and that buyers can also apply and use purchase "PayPal Credit."  Buyers applying for PayPal Credit are eligible to receive $10 back on their first purchase.

140.   On or about July 17, 2015, Plaintiff transmitted NOCI to eBay in response to Seller 3 (previously identified as Seller 5) listings 252029571090 and 261912044349 on ebay.com offering for sale obvious counterfeit Lunatik iPhone cases.  In response, ebay.com reported on July 17, 2015 "[w]e are pleased to inform you that [listings 252029571090 and 261912044349] you reported have been removed from eBay in response to the Notice of Claimed Infringement you recently sent.  Days later, on or about July 20, 2015, Plaintiff transmitted NOCI to eBay in

response to Seller 3 (previously identified as Seller 5) listings 261896177346, 261705267694 and 261706158253 on ebay.com offering for sale obvious counterfeit Lunatik iPhone cases.  In response, ebay.com reported on July 20, 2015 "[w]e are pleased to inform you that [listings 261896177346, 261705267694 and 261706158253] you reported have been removed from eBay in response to the Notice of Claimed Infringement you recently sent.  Plaintiff is informed and believes that as of July 27, 2015, eBay was allowing Seller 3 (previously identified as Seller 5) to continue to sell obvious counterfeit iPhone cases that unlawfully infringe on Plaintiff's Marks using the name ledno8.

141.  As evidenced by the listing below, as of July 19, 2015, eBay has continued to allow Seller 3 (previously identified as Seller 5) to sell obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.



142.   Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 137 and 141, it is evident that the Fake Lunatik Products advertised by Seller 3 (previously identified as Seller 5) mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark.  The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

143.   Lunatik makes its TAKTIK® phone cases in two colors:  white and black.  It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods.

144.   Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters.  It does not and has never used Aluminum, and has repeatedly made eBay aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit..

145.   Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in the listings that were the subject of the Seller 3(5) NOCIs described above, that the iPhone cases advertised by Seller 3 (previously identified as Seller 5) were Fake Lunatik Products.

### Unauthorized Use of Plaintiff's Marks By eBay

146.   eBay aggressively supports its business model by mining the data it collects on ebay.com, including, but not limited to, data relating to purchases, sales, current bidding, failed bids, watch list activity and wish list activity.  eBay uses this data in connection with its direct marketing of products listed on ebay.com.  Specifically, eBay causes the transmittal via email of listings of products listed on ebay.com ("eBay Marketing Email"), including listings for Fake Lunatik products that infringe on Plaintiff's marks.

147.   For example, on or about July 25, 2015, eBay caused a Marketing Email to be transmitted to a prospective eBay buyer informing the prospective buyer "Great news: 2 other items you're interested in are ALSO discounted for a limited time. Thank you for shopping on eBay."  The products listed on ebay.com that were the subject of the Marketing Email were Fake Lunatik iPhone cases listed for sale by Seller 2.  The listings that eBay caused to be forwarded to the prospective buyer infringe on Plaintiff's Marks.  eBay's final message of the Marketing eMail is "WATCH WHAT YOU WANT. WE'LL SEND YOU DISCOUNTS!".

148.   Plaintiff is informed and believes that Marketing Emails are highly tailored email notification recommendations that are an integral part of eBay's marketing strategy, created by eBay using complex algorithms which are the result of

eBay's substantial investment in, among other things, what at the time was a New York start-up that eBay acquired, "Hunch".

149.   At or about the time eBay acquired Hunch on or about November 21, 2011, it was publicly reported that "Hunch will enable eBay to move beyond standard item-to-item recommendations and use a broader variety of members' online tastes and interests to suggest new and interesting items for them to browse and buy on eBay, the online auctioneer said. Hunch's ability to tailor data to meet customer needs can also be used in other areas at eBay including search and advertising, it added. powerful software programs, highly trained software engineers and programmers." [xliii]

150.   eBay also publicly reported on November 21, 2011 that  "Hunch's technology talent and its deep expertise in areas like machine learning, data mining and predictive modeling are expected to help eBay expand and grow merchandising and relevance capabilities to further improve the shopping and selling experience for eBay customers. For example, eBay buyers are expected to benefit from Hunch's predictive ability to generate meaningful, yet often non-obvious, recommendations for items available on eBay based on their specific tastes." [xliv]

151.   Further, acknowledging that its acquisition of Hunch was to enhance eBay's marketing function, eBay publicly stated:  "We are engaging consumers in innovative ways and attracting top technologists to shape the future of commerce," said Mark Carges, Chief Technology Officer and Senior Vice President, Global Products, Marketplaces. "With Hunch, we're adding new capabilities to personalizing the shopping experience on eBay to the individual relevant tastes and interests of our customers. We expect Hunch's technologies to benefit eBay shoppers as they browse and buy, and to bring sellers on eBay new ways to connect the right products with the right customers." [xlv]

152.   Using this technology, eBay has designed and implemented computer algorithms that can (and on information, do) identify a user's proclivity toward

infringing/Fake Products. For example, such algorithms specifically operate to identify users based on the user's (1) interest in items offered too far under retail price to reasonably be expected to be legitimate, (2) interest in items offered by storefronts known by eBay to have a past history selling counterfeit goods, or (3) interest in, or willingness to purchase, name-brand products shipped directly from China. Once the algorithms identify such users, the users are then targeted with offers to purchase fake products, or directed to listings for such products by eBay.

153. Further, Plaintiff is informed and believes that eBay, using Hunch or a similar technology, on a regular and continuous basis promotes the sale of obvious counterfeit Lunatik Products that infringe on Plaintiff's Marks by Unauthorized Sellers by, among other things, the transmittal of automated emails to eBay buyers who have "browsed" similar items.

154. For example, set forth below is an email transmitted to an eBay buyer on July 25, 2015, offering to sell counterfeit Lunatik iPhone cases described as "Waterproof Shockproof Aluminum Grilla [sic] Glass Metal Case Cover for Apple iPhone @@" for $9.23.



155.   In response to eBay's email solicitation, the aforementioned eBay buyer purchased four cases from Seller 2 in black, red, yellow, and silver in iPhone sizes 4, 4S, 5, and 6, respectively.  The images below depict the Fake Lunatik Products sent to that eBay buyer.  None of the Fake Lunatik Products sent to the buyer had any of Plaintiff's Marks as advertised by eBay's email.



156. Comparing the images in paragraphs 16, 20, 22, 24, 26 and 30 with the images in paragraphs 154 and 155, it is evident that the Fake Lunatik Products advertised by eBay mimic the design of the authentic TAKTIK® Extreme for iPhone with the Corning® Gorilla® Glass Impact Lens For Screen Protection and bear an exact copy of Lunatik's federally registered design mark. The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

157. Lunatik makes its TAKTIK® phone cases in two colors: white and black. It has repeatedly made this fact known to eBay, and advised it that TAKTIK® phone cases offered in other colors such as yellow or red are counterfeit goods.

158. Lunatik uses a poly-carbonate plastic material for its TAKTIK® phone perimeters. It does not and has never used Aluminum, and has repeatedly made eBay

aware of this fact, and advised it that TAKTIK® phones offered as aluminum are counterfeit.

159.    Given that eBay repeatedly has been informed by Lunatik and The Counterfeit Report that TAKTIK® phone cases offered as aluminum are counterfeit and that TAKTIK® phone cases offered in colors such as yellow, silver, gold or red are counterfeit, eBay knew, or willfully ignored, that, based on the price, material and color of the iPhone cases advertised in its July 25, 2014 email were Fake Lunatik Products.

**The Counterfeit Report Confirms Unauthorized Use of Plaintiff's Marks by eBay Sellers and Knowing Contribution by eBay.**

160.    During the period November 2014 through June 2014, The Counterfeit Report responded to infringing listings on ebay.com offered by seventy-three eBay sellers and received from those sellers, including at least Seller Defendants 1, 2 and 3, 121 Fake Lunatik Cases.  Seventy-one of the 121 Fake Lunatik Cases bore Lunatik Marks on the product and/or packaging.  These Fake Lunatik Cases were received from fifty-one eBay sellers.  The remaining fifty cases shipped by twenty-two eBay sellers to The Counterfeit Report were identified in eBay listings showing the Lunatik word mark or logo mark, but no Lunatik Mark was on the product shipped to The Counterfeit Report.



161.    The Counterfeit Report performed a similar study with Lunatik products on www.amazon.com, and brought the results to Amazon's attention.  Specifically, The Counterfeit Report identified to Amazon that Lunatik does not sell TAKTIK® brand phone cases in colors other than white and black, and does not make them using aluminum.  Using this information, Amazon was able to clear away nearly 7,000

counterfeit listings in a single day using a simply search algorithm to identify and remove TAKTIK® brand cases of the wrong color or material.

162.   Not only has eBay refused to take such a proactive and simple step, it intentionally acquires companies, such as Hunch, so that it is able to use similar algorithms to aggressively advertise to help consumers find these off-color and wrong-material Fake Lunatik Products on ebay.com.  For example, a user can go on to ebay.com, search "lunatik taktik" and select "yellow" or "red" and will either be directed by eBay to such counterfeit products or receive an alert from eBay when an Unauthorized Seller offers such a counterfeit product.

163.   Thus, on information and belief, eBay has the same search and isolation capability as Amazon, but has used it to directly and indirectly traffic in and profit from the sale of Fake Lunatik profits rather than to remove such fake products from ebay.com.

### Unauthorized Use of Plaintiff's Marks In Connection with Listings for LUNATIK® EPIK.

164.   Set forth below is a listing dated May 28, 2015 for the sale of a Fake Lunatik iWatch case to the public on ebay.com by a seller listed on ebay.com.  The listing advertises a "Luxury Full Metal Aluminum Wrist watch bands Strap Case for



Apple Watch iWatch" for $36.89 with the LUNATIK logo mark on the power button.  The listings also report that "credit cards [are] processed by PayPal" and that buyers can apply and use purchase "PayPal Credit." Buyers applying for PaylPal Credit are eligible to receive $10 back on their first purchase.

165.   On May 15, 2015, Plaintiff transmitted a NOCI to vero@eBay.com in response to the listing described in paragraph 154 above.   In the NOCI, Plaintiff informed eBay "[s]eller has [Plaintiff's] registered trademark on the watch power button.   [Plaintiff] just launched this watch case [on May 15, 2015] at Apple stores only."   EBay effectively ignored Plaintiff's NOCI.   Fifteen minutes after Plaintiff's NOCI was sent, vero@ebay.com responded as follows:   "If you feel that these listings do infringe on your intellectual property rights, please respond to this message and provide us with a more detailed explanation."   Since May 15, 2015, multiple listings have appeared to ebay.com for the sale of Fake Lunatik iWatch cases by Unauthorized Sellers.

166.   Comparing the image in paragraph 36 with the image in paragraph 164, it is evident that the Fake Lunatik Products advertised on ebay.com mimic the design of the authentic LUNATIK® EPIK and bear an exact copy of Lunatik's federally registered design mark.   The Fake Products were intended to confuse both the ultimate retail consumer and persons observing the ultimate consumer into believing that it is a genuine Lunatik product.

**G.    PayPal's Processing of Counterfeit Sales Through ebay.com**

167.   eBay sold the Fake Lunatik Products through its online retail marketplaces with the payment processing services of its wholly-owned subsidiary, PayPal.   In 2014, PayPal moved $228 billion in 26 currencies across more than 190 nations, generating a total revenue of $7.9 billion (44% of eBay's total profits). The same year, eBay announced plans to spin-off PayPal into an independent company the following year.[xlvi]

168.   eBay reports that "PayPal connects with financial institutions around the world, and allows consumers to make purchases using a broad range of payment methods, regardless of where a seller is located.   Users of our PayPal payments solutions can engage in cross-border shopping, which can help merchants to increase

sales volume by allowing them to sell to a global base of consumers, who can make payments in a wide range of currencies."[xlvii]

169. eBay reports that the Company "had 162 million active registered accounts as of December 31, 2014."  The term "active registered accounts" means, as of a given date, all registered accounts that successfully sent or received at least one payment or payment reversal through PayPal payments networks, including PayPal Credit, within the last 12 months and which are currently able to transact.  Users may have more than one account with PayPal or PayPal Credit and therefore the number of active registered accounts may be greater than the number of underlying users.[xlviii]

170. "PayPal started as a payment solution for online transactions between consumers and merchants through a traditional online experience (i.e., an Internet-connected computer). As a result of being simple and secure for consumers, PayPal can help merchants to increase conversion of online traffic to sales. An online merchant can typically open a standard PayPal account and begin accepting payments through PayPal within a few minutes. Most online or mobile merchants are approved instantly. Processing online with PayPal does not require a merchant to invest in new or specialized hardware. PayPal's technology platform supports growth with a variety of value-added services. This is designed to help businesses of all sizes manage their cash flow, invoice clients and pay bills, and to reduce the need for merchants to receive and store sensitive customer financial information, enabling Payment Card Industry, or PCI, compliant transactions. PayPal does not charge merchants any setup fees and offers a standard service with no recurring monthly fees."[xlix]

171. PayPal facilitates transactions on ebay.com through its payment processing services, which "enable payments in the online and physical worlds" and "offer consumers choice by providing a variety of funding mechanisms." "Consumers can typically fund their PayPal accounts in a variety of ways, including by credit card, debit card, electronic funds transfers from their bank account and

through a PayPal account balance if the consumer has previously received payments through PayPal or chosen to pre-fund their PayPal account." eBay refers to the allocation of funding sources used by PayPal consumers as its "funding mix."[l]

172.  eBay also provides "credit products through [its] PayPal Credit service. Currently, when a consumer funds a purchase using PayPal Credit, a chartered financial institution extends credit to the consumer, funds the extension of credit at the point of sale and advances funds to the merchant. PayPal Credit is neither a chartered financial institution nor is it licensed to make loans in any state. Accordingly, PayPal Credit must rely on a bank or other licensed lender to issue credit products and extend credit to customers. Although the chartered financial institution continues to own each of the customer accounts, [eBay] subsequently purchase[s] and retain[s] most of the consumer receivables related to the consumer loans made by the chartered financial institution and [is] also responsible for servicing functions related to the customer account."[li]

173.  "PayPal has obtained licenses to operate as a money transmitter (or its equivalent) in the United States, in the states where it is required, and the District of Columbia, the U.S. Virgin Islands and Puerto Rico. PayPal's subsidiary, Venmo, is also licensed as a money transmitter in certain U.S. states."[lii]

174.  "PayPal is subject to various anti-money laundering and counter-terrorist financing laws and regulations around the world that prohibit, among other things, its involvement in transferring the proceeds of criminal activities. PayPal has programs designed to comply with new and existing legal and regulatory requirements."[liii]

175.  eBay publicly acknowledges that "PayPal's payment system is susceptible to potentially illegal or improper uses, including . . . piracy of software, movies, music, and other copyrighted or trademarked goods . . . and encouraging, promoting, facilitating or instructing others to engage in illegal activities." eBay further reports that "[t]here has been an increased focus by intellectual property rights

owners and government officials on the role that payments systems play in the sale of, and payment for, pirated digital goods on the Internet, primarily through file sharing services.  Changes in law have increased the penalties for intermediaries providing payment services for certain illegal activities and additional payments-related proposals are under active consideration by government authorities. Intellectual property rights owners may seek to bring legal action against payment companies such as PayPal and other entities that are peripherally involved in the sale of infringing items. Rights owners have also increasingly gone into U.S. courts and obtained injunctions requiring PayPal to cease handling transactions for named websites and third parties (in most cases located outside the United States) and to hold the funds of such parties pending judicial resolution of the rights owners' claims, which disrupts the relationship between PayPal and such parties."[liv]

176.  PayPal is subject to regulation as a money transmitter by the Financial Crimes Enforcement Network ("FinCEN").[lv]  "Money transmitters must make extensive reporting to FinCEN concerning the personal information of their customers as well as transactional data, sometimes outright deny service to certain customers, and even continue servicing customers while permitting government agencies to monitor each of the transactions.  Suspicious transactions – or even transactions in due course over a certain dollar amount – must be reported to FinCEN.  In effect, the Bank Secrecy Act deputizes financial institutions, requiring them to act as the government's foot soldiers in its war on money laundering and illicit finance.  In the cases of international or otherwise 'high risk' clients, the business must take even more stringent identification measures."[lvi]

177.  As a regulated entity, PayPal has an affirmative obligation to perform the appropriate level of diligence on its merchants that would entail determining whether a merchant is selling counterfeit or other illegal goods.[lvii]

178.  At all relevant times, eBay and PayPal, variously, had the ability to exercise control over the means of any eBay's seller's infringement and the offer and sale of Fake Products on ebay.com by adopting Best Practices for Voluntary Measures in Addressing the Sale of Counterfeits on the Internet by Payment Service Providers ("PSPs") promulgated by the International Trademark Association.  Best Practices include, but are not limited to, the following:  (i) PSPs should have policies in place prohibiting the use of their services for the purchase and sale of goods that are determined to be counterfeit under applicable law; (ii) PSPs should have procedures for trademark owners to report websites that use a PSP's network to process payments for the unlawful sales; and (iii) if a PSP observes repeated violations of the PSP's policies and applicable trademark laws through the use of its payment service, PSPs may choose to impose appropriate remedies in accordance with their own internal procedures, including, for example, termination of service.

179.  As a result of, *inter alia*, PayPal's extensive knowledge of its online sales transactions, buyer feedback and the diligence PayPal is required to perform on its merchants, and as publicly admitted by PayPal and eBay, both Defendants have actual knowledge that they are providing payment processing services to merchants selling infringing products. In addition, at all relevant times, PayPal and eBay, variously, have been and are in a position to exercise control over the means of any eBay seller's infringement and based on that control could impose appropriate remedies in accordance with their own internal procedures, including, termination of service. Plaintiff is informed and believes that the most successful avenue for shutting down the Unauthorized Sellers and other counterfeiters who display products in listings on ebay.com that infringe on one or more of Plaintiff's Marks, is to cut off the flow of funding to such sellers, working with credit card companies and banks.

180.  EBay and PayPal refuse to take such reasonable remedial action and instead promote the unlawful activities of the Unauthorized Sellers, as described more

particularly hereinafter, and/or manufacture the false optic that they have no knowledge or reason to suspect that users of its services are infringing on Plaintiff's protected marks.

### H.    eBay Is an Indispensable Part of the Enterprise that Sells Obvious Counterfeit Products that Infringe on Plaintiff's Trademarks, Resulting in Consumer Confusion and Harm to Plaintiff

181.    The Seller Defendants could not have sold Fake Lunatik Products through ebay.com but for eBay's operation of ebay.com as well as eBay's role enabling the relationship between online consumers to online merchants selling obvious counterfeit products that infringe on Plaintiff's Marks.

182.    eBay has provided and continues to provide essential services to its online sellers who display listings with counterfeit Lunatik Products that infringe on Plaintiff's Marks.

183.    eBay offers "Market Data Services" to sellers of Fake Products to direct consumers to, among other things, Fake Lunatik Products offered.  As advertised on ebay.com "[t]he eBay Market Data Program offers rich consumer insight data about what is purchased on eBay and who is purchasing it. Access to this business intelligence can help [sellers] make effective buying and selling decisions for [their] business, regardless of whether you do business on eBay or outside of the eBay Marketplace."[lviii]

184.    eBay has been an indispensable participant in the sale of the Seller Defendants' Fake Lunatik Products. eBay provided ebay.com for sales of Fake Lunatik Products and facilitated the financing and commercial operations of the merchants selling Fake Lunatik Products by providing marketing and key word and search engine optimization services that direct buyers to Fake Lunatik Products and by facilitating the processing of online payment transactions for the Fake Lunatik Products through its wholly-owned subsidiary, PayPal.  eBay's Enterprise segment

includes its Magento business and provides commerce technologies, omnichannel operations and marketing solutions for merchants of all sizes that operate in general merchandise categories, including, but not limited to, categories that include products that infringe on Plaintiff's trademarks.

185.    In addition, and demonstrated herein, eBay actively promotes the illegal activity of its Unauthorized Sellers by, among other things, soliciting buyers to purchase Fake Lunatik Products using advertising that eBay has been informed by at least Plaintiff and the Counterfeit Report that unlawfully infringes on Plaintiff's Marks.

186.    eBay knew or should have known that it was facilitating the sale of Lunatik Fake Products by the Seller Defendants and more than 2,000 other sellers who are registered and approved as sellers on ebay.com.

187.    eBay has derived substantial profits from the sale of Fake Products, including the sale of Fake Products that infringe on Plaintiff's trademarks on ebay.com, including, but not limited to, revenue derived from each payment transaction for which it provides processing services, through its wholly-owned subsidiary, PayPal.

**I.    eBay's Unwillingness to Refrain from Trademark Infringement**

188.    Readily identifiable infringements, listings that display Fake Lunatik Products, are easily found on ebay.com using eBay's own search engine and email notification system. As Plaintiff has informed eBay, these products, such as red and yellow TAKTIK® brand phone cases, or EPIK brand watch cases, have never been (or at least have not yet been) offered in the Lunatik product line.

189.    Under the heading "What are we doing to prevent counterfeit listings?" eBay states on ebay.com that it is "constantly working to make its site safer by doing the following: (i) proactively removing suspicious items; (ii) removing items reported as counterfeit by brand owners; (iii) working closely with law enforcement to

prosecute offenders; (iv) providing free tools for rights owners to efficiently identify and report items to us for immediate removal; and (v) partnering with brand owners and industry initiatives to bring attention to and combat the issue worldwide." eBay's statements about what it is doing to prevent counterfeit listings are materially false and misleading. [lix]

190. For example, Lunatik has sent eBay more than 5,557 NOCIs since February 2013, broken down by product and location of product. So that Lunatik can take prophylactic and other action against, *inter alia*, Unauthorized Sellers continuing trademark infringements, the Lunatik NOCIs request eBay's "cooperation in identifying to Lunatik [eBay's] source for the infringing products." Notwithstanding Plaintiff's repeated NOCI to eBay frequently identifying the same eBay sellers as engaged in the offer and sale of Fake Lunatik Products on ebay.com, eBay has not proactively removed obvious Fake Lunatik Products from eBay.com notwithstanding that infringing products offered by the Unauthorized Sellers are easily found on ebay.com using ebay's own search engine and notification system. Instead, it requires Lunatik to search for and isolate infringing sales and identify them specifically each time, despite the fact that eBay is well aware that recidivist Unauthorized Sellers continue to use ebay.com to list obvious counterfeit Lunatik products that infringe on Plaintiff's Marks.

191. That eBay's statements about what it is doing to prevent counterfeit listings are false and misleading is also evidenced by the results of an investigation conducted by an independent third party. Commencing in or about March 2013, The Counterfeit Report conducted an investigation of over 250 counterfeit products that were purchased from eBay sellers and promptly attempted to report the results of its investigation to eBay. eBay's negative response to this third party initiative cannot be reconciled with its promise to constantly work to make its site safer for legitimate brand owners. [According to] The Counterfeit Report, "[i]nstead of adhering to their

own standards, embracing the results and protecting the eBay community, eBay retaliated by blocking The Counterfeit Report's corporate eBay accounts.    eBay altered feedback, changed resolved case dispositions and removed counterfeit comments and warnings protecting consumers and legitimate trademark owners such as Plaintiff.   In contrast, the sellers of counterfeit products remained on eBay, and transaction fees continued.   [eBay] Management did not respond to The Counterfeit Report's request for comment.   The confirmed counterfeit and fake products included over-the-counter (OTC) drugs, sporting goods, fragrances, auto accessories, phone chargers and more."[lx]

192.   "The Counterfeit Report reported the offending sellers to eBay, the manufacturer and the FBI's Internet Crime Complaint Center (IC3), or US customs for non-US eBay sellers. Disputes on the counterfeit purchases were initiated, and following eBay's [stated] counterfeit policy, the counterfeit products were not returned. Trafficking in counterfeits is a crime, and while eBay sellers conceded to the dispute claims, occasionally admitted to the fakes, and refunded the purchase amounts, eBay allowed counterfeit sellers and listings to remain on eBay.   Even sellers admitting to selling counterfeits were allowed to remain on the eBay website. eBay states they do not notify the prior buyers of identified counterfeit sellers, which may be thousands, that they may have received a counterfeit product."[lxi]

193.   According to The Counterfeit Report, "eBay's [blocking] practices are not unprecedented. Early in the investigation, eBay blocked consumer protection Counterfeit Product Alert® tips published by The Counterfeit Report [on ebay.com] to help consumers identify and avoid fake products listed on eBay. An eBay Office-of-the-President spokesperson stated the alerts didn't violate eBay policy, but claimed they 'violated the spirit of eBay'."[lxii]

194.   The free tool that rights owners, such as Plaintiff, can use to report Fake Products listed on ebay.com to eBay is described as follows on ebay.com under the heading "How eBay protects intellectual property (VeRO)."

> We're committed to protecting the intellectual property rights of third parties and to providing our members with a safe place to buy and sell. We created the Verified Rights Owner (VeRO) Program so that intellectual property owners can easily report listings that infringe their rights.

> We require that a rights owner be registered through VeRO before reporting items to us. Rights owners sign legally binding documents when reporting items to eBay.[lxiii]

195.   As demonstrated herein, The VeRO program is a sham because, among other things:  (1) eBay promotes the unlawful activities of its Unauthorized Sellers by soliciting eBay buyers to purchase obvious counterfeit products; (2) eBay takes no action to remove or block sellers that it knows or should know are repeat infringers; and (3) eBay takes no proactive steps to identify, isolate, and remove infringement despite being on notice that certain types and descriptions of items are ipso facto infringing because they are not offered by the rights holder.  eBay routinely allows its sellers to provide incomplete and/or false "eBay User Personal Information" so that it is impossible for a trademark owner, such as Plaintiff, to correctly identify the sellers of Fake Lunatik Products and take action against the many sellers who use eBay to offer and sell Fake Lunatik Products.

196.   Plaintiff, as the trademark holder for the Lunatik and TAKTIK® brands has been signed up on eBay's VERO program as "Lunatik" since at least March 4, 2013.   A true and correct copy of the EBAY VERO REPORTING TOOL USER AGREEMENT between eBay and Plaintiff is annexed hereto as Exhibit 2.

197.   The responses that Plaintiff has received from eBay in connection with the VERO program are designed by eBay to create the false optic that, *inter alia*, it

has no knowledge or reason to suspect eBay received multiple NOCIs from Plaintiff regarding repeated sale by the same ebay sellers identified of products that infringe on Plaintiff's Marks. Virtually identical obvious infringing products continue to be listed on ebay.com in July 2015 for Sellers 1, 2 and 3. If eBay and PayPal, in fact, were working to make ebay.com safer, at a minimum, (i) each would mandate that every seller provide complete and current contact information, consistent with the requirements of [FinCEN]; and (ii) they would agree to adopt the best practices for voluntary measures in addressing the sale of counterfeit products on the Internet, described herein.

198.  An eBay spokesperson is reported to have informed Julie Bort of the Business Insider on or about November 11, 2014 that eBay takes accusations of counterfeits seriously and is quoted as stating "eBay runs several anti-counterfeit initiatives including the Verified Rights Owner Program, and is continually introducing new proactive measures to combat the global trade in counterfeits."[lxiv] But, Plaintiff is not aware of any new proactive measures to combat the rampant offer and/or sale of Fake Products by eBay or PayPal since November 2014.

199.  Rather, consistent with the disclosures in eBay's Annual Report, eBay is unwilling to refrain from trademark infringement. Specifically, eBay publicly admits that it has resisted modifying its business practices in response to claims involving trademark infringement because such changes allegedly could/would increase cost, lower revenue, make eBay's websites and mobile platforms less convenient to customers, and require eBay to spend substantial resources to take additional protective measures or discontinue certain service offerings in order to combat these known and acknowledged illegal user practices.

**J.**      **The Financial Services Provided by eBay's Partner, PayPal, to Unauthorized Sellers Materially Aid and Abet the Enterprise that Traffics In The Sale of Counterfeit Goods**

263.  eBay and PayPal hold themselves out as "two great businesses" with "leading global positions in commerce and payments, respectively." eBay publicly reports that for more than a decade, eBay and PayPal have mutually benefited from being part of one company.  Until September 2014, the combination of the two businesses and the synergies and benefits they offered to each other were so valuable that the eBay board determined that separation of the two companies was not appropriate.[lxv]

264.  In September 2014, eBay's board decided to separate eBay and PayPal. According to eBay, as independent companies, it is expected that "eBay and PayPal will be sharper and stronger, and more focused and competitive as leading, standalone companies in their respective markets.  eBay and PayPal also will benefit from additional flexibility and agility to pursue new market and partnership opportunities." [lxvi]

265.  PayPal's reported mission post spin-off is to increase its relevance for merchants, such as the Seller Defendants, and "move their money anywhere in the world, anytime, on any platform and through any device (e.g., mobile, tablets, personal computers or wearables)." To that end, PayPal operates a proprietary global technology platform that enables merchants and consumers around the globe to connect. In 2014, approximately162 million active customer accounts processed payments on the PayPal platform. Total payment volume in or about 2014 increased by 26% to $235 billion, as more consumers and merchants trusted PayPal to pay and get paid. PayPal has significant global reach, processing transactions in more than 200 markets, allowing PayPal merchants, including the Seller Defendants, to receive

payments in more than 100 currencies, withdraw funds to their bank accounts in 57currencies and hold balances in their PayPal accounts in 26 currencies.  PayPal holds itself out as "a leader in mobile payments and processed nearly 1 billion mobile transactions in 2014 for [its] customers."[lxvii]

266.   That PayPal and eBay have been and post spin-off will continue to be related parties, partners and joint venturers is admitted by both.  Specifically, material related party transactions between eBay and PayPal before the PayPal spin-off are described in eBay's publicly filed documents, including but not limited to in the notes to the PayPal audited financial statements (opinion dated 2/25/15) included in the PayPal Holdings, Inc. Registration Statement filed on or about February 2, 2015.

267.   eBay and PayPal have also publicly reported that in connection with the spin-off, PayPal will enter into various material agreements to effect the separation and provide a framework for the continuing relationship between eBay and PayPal post spin-off.  Those material agreements include, but are not limited to, an operating agreement, a transition services agreement, a tax matters agreement, an employee matters agreement, an intellectual property matters agreement, an information technology services agreement, data sharing agreements and a joint development agreement. These agreements will provide for the allocation between PayPal and eBay of eBay's assets, employees, liabilities and obligations (including its investments, property and employee benefits, indemnification obligations and tax liabilities) attributable to periods prior to, at and after PayPal's separation from eBay and will govern certain relationships between PayPal and eBay after the spin-off.

268.   Under the parties' 5-year operating agreement, eBay is contractually bound to maintain the majority of its GMV (the total volume in dollars of sales on eBay) to be processed through PayPal. Specifically, eBay has guaranteed that 80% of GMV is paid via PayPal, otherwise it will have to pay PayPal "restitution."

269.    Plaintiff is informed and believes that in furtherance of the eBay-PayPal 5-year operating agreement, on or about August 28, 2015, eBay announced that it is now banning sellers from offering PayPal rivals ProPay and Skrill as payment methods on its marketplace. The move comes the same day PayPal raised fees for merchants processing over $3,000/month in payments - a 32% increase for higher volume sellers.

270.    In doing the acts herein alleged, eBay and PayPal each were acting within the scope and course of their authority as such partners and joint venturers and were acting with the permission and consent of each other Defendant.  Moreover, by operating a proprietary global technology platform that enables consumers around the globe and merchants, such as the Seller Defendants, to connect, PayPal has materially aided and abetted and will continue to materially aid and abet the Enterprise described herein.

## FIRST CAUSE OF ACTION AGAINST eBAY AND THE SELLER DEFENDANTS

### (Trademark Infringement Under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a))

271.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

272.    Plaintiff's Marks are valid, federally registered trademarks entitled to protection under the Lanham Act.

273.    Plaintiff's Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of great and significant value, are highly distinctive and the public and industry associate Plaintiff's Products with high quality materials, style, and functionality.

274.   eBay and the Seller Defendants and each of them are engaging in intentional illegal conduct including but not necessarily limited to, the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products in violation of the Lanham Act, as amended.

275.   As alleged more particularly herein, Plaintiff is informed and believes that eBay on a regular and continuous basis promotes the sale of obvious counterfeit Lunatik Products that infringe on Plaintiff's Marks by Unauthorized Sellers by, among other things, the transmittal of automated emails to eBay buyers who have "browsed" similar items.

276.   According to eBay, in response to the Plaintiff's NOCIs, each of the Seller Defendants should have been made aware that the Seller Defendant was engaged in the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik Products that infringed on Plaintiff's Marks.   Also according to eBay, each of the Seller Defendants should have been instructed to cease and desist from such conduct.   In response, the Seller Defendants and each of them did not refrain from the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products, as alleged more particularly herein.   As of July 2015, at least nine of the Seller Defendants continue to sell obvious counterfeit Lunatik Products on ebay.com.

277.   eBay's and the Seller Defendants' offering of counterfeit Lunatik products bearing Lunatik registered trademarks is likely to cause consumer confusion in violation of 15 U.S.C. §1114 by, among other things, selling products of inferior quality under the brand.   eBay's and the Seller Defendants' actions also constitute unfair competition under 15 U.S.C. §1125(a) by, for example, eliminating Lunatik's ability to excite the market with new colors of TAKTIK® model phone cases other than those it legitimately has offered.   eBay and the Seller Defendants' actions are

willful and purposeful, in violation of 15 U.S.C. §1117, entitling Lunatik to attorney's fees and enhanced damages.

278.    Plaintiff has been damaged by each of eBay's and the Seller Defendants' infringement in an amount to be determined at trial.    For example and without limitation, eBay and the Seller Defendants and each of them have been unjustly enriched through their intentional unlawful and unauthorized sales of Fake Lunatik Products.

279.    Plaintiff has been, and absent injunctive relief will continue to be, irreparably harmed by the actions of eBay and the Seller Defendants and each of them.

280.    Plaintiff has no adequate remedy at law for the foregoing wrongful conduct.

## SECOND CAUSE OF ACTION AGAINST eBAY

### (Contributory Trademark Infringement and Counterfeiting Under the Lanham Act)

281.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

282.    Plaintiff's Marks are valid, federally registered trademarks entitled to protection under the Lanham Act.

283.    Plaintiff's Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of great and significant value, are highly distinctive and the public and industry associate Plaintiff's Products with high quality materials, style, and functionality.

284.    The Seller Defendants are engaging in intentional illegal conduct including but not necessarily limited to the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products in violation of the Lanham Act, as amended.    Defendant eBay has actual knowledge of the Seller

Defendants illegal activities from, among other things, written notification by Plaintiff to eBay and feedback that eBay collects from buyers.

285.   eBay, by offering online marketing, financing, shipping, and/or payment processing to the Seller Defendants that allowed the Seller Defendants to infringe upon Plaintiff's Marks, aided, facilitated, participated in, and materially contributed to the sale of Fake Products in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), 1117(b)-(c), and 1125(a).   For example and without limitation, Defendant eBay, through PayPal participated in the sales of Fake Lunatik Products by accepting the credit card numbers for the sales transactions of Fake Lunatik Products through its wholly-owned subsidiary PayPal, processing the transactions and paying the proceeds of the sales of the Fake Lunatik Products to the Seller Defendants.   Further, and without limitation, eBay participated in the sales of Fake Lunatik Products by knowingly allowing Internet merchants to offer Fake Lunatik Products for sale to consumers, including the use of marketing techniques that infringed upon Plaintiff's Marks.

286.   eBay has materially encouraged, enabled and contributed to the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products on ebay.com by, among other things, providing critical online marketing, financing and/or payment processing to the Seller Defendants, eBay supplied the necessary marketplace for the sale of Fake Lunatik Products, and eBay received a direct financial benefit for providing such services.

287.   eBay exercised control over the means of the infringement, including, the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products on ebay.com, described above.   eBay maintains direct control and monitoring of ebay.com, the instrumentality used by the third party Seller Defendants to infringe on the plaintiff's mark.   eBay knowingly provided essential services to the Seller Defendants and other Unauthorized Sellers engaged in the promotion,

advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products in violation of the Lanham Act, as amended.  For example and without limitation:

> a.    Defendant PayPal handled the payment transactions for many of the infringing sales, including sales by the Seller Defendants.  Knowing that sellers used PayPal's payment processing and payment services to facilitate the sale of Fake Lunatik Products through ebay.com, eBay nonetheless continued to provide such sellers with PayPal's services.

> b.    ebay.com provided the marketplace for the sales of Fake Lunatik Products and facilitated the financing and commercial operations of the Seller Defendants and other eBay sellers involved in the offer and sale of Fake Lunatik Products by providing marketing and search optimization services that direct buyers to the Fake Lunatik Products, including the knowing use of federally-registered marks as keywords in order to attract consumers to Fake Lunatik Products offered for sale by the Seller Defendants, processing online payment transactions for the Fake Lunatik Products, and shipping the Fake Lunatik Products to consumers.

> c.    ebay.com provided online marketing services to the Seller Defendants and other eBay sellers whom eBay knew and had reason to know were selling Fake Lunatik Products based on, *inter alia*, their alleged proactive monitoring of counterfeit listings and proactive measures to combat the global trade in counterfeits.

> d.    eBay controls who may sell products on their platforms, and online sellers are required to "verify" their identity before they are allowed to list their products and services on ebay.com.  eBay routinely protects and conceals the identity of its sellers who are engaged in the offer and/or sale of Fake Products

e.    eBay facilitates the continued operation of known infringers by allowing them to continue selling infringing products through similar listings or replacement listings after being placed on notice that a particular listing infringes and removing it.  It further facilitates this continued operation by returning counterfeit products to the sellers, only for them to be resold through infringing listings.

f.    eBay offers search options that help lead consumers to items that eBay knows or should know are infringing because the brand owner does not make items of the variety sought by the consumer.  Indeed, eBay even sends alerts to consumers when infringing products become available if none of the type desired are available when a search is performed.

288.   The Seller Defendants and other Unauthorized Sellers, with the intent to pass off or borrow from Plaintiff's established good will, have displayed and in some instances continue to display Plaintiff's Marks on obvious counterfeit Lunatik Products in violation of the Lanham Act, as amended.

289.   The intent of the Unauthorized Sellers to cause confusion, as described herein, coupled with the use by the Unauthorized Sellers of counterfeit marks that infringe on Plaintiff's Marks, gives rise to a presumption of the likelihood of confusion.

290.   eBay's actions described above have caused and are likely to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of the Fake Lunatik Products, and are likely to deceive the public into believing that the Fake Lunatik Products that are the subject of promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products by Unauthorized Sellers are associated with, or are otherwise authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill, and sales.

291.  eBay is aware of the infringing activities of its sellers on ebay.com as alleged herein or has attempted to manufacture the false optic that it is not "willfully blind" to such unlawful activity.  eBay through PayPal investigates chargebacks and chargeback disputes involving the sale of products of obvious counterfeit Lunatik products and received documentation that provided eBay with notice that ebay.com was being used by thousands of sellers in connection with the promotion and sale  of counterfeit iPhone cases that infringe on Plaintiff's Marks.  In addition, eBay was made aware of such activities on or about November 14 2014, when consumer watchdog organization, The Counterfeit Report, "alerted eBay that it had found hundreds of counterfeits on the site, including obvious counterfeit Lunatik Product." In response, "eBay blocked the whistleblower's accounts and removed its comments warning people about fake products.  eBay did this instead of removing the fake products and blocking the sellers of them."[lxviii]

292.  Given that eBay had received thousands of NOCIs from Lunatik by November 2014, eBay was already on notice when it received information about the results of The Counterfeit Report's investigation, of the rampant infringement of Plaintiff's Marks occurring through ebay.com.  eBay should have investigated further, but instead chose to ignore the obvious trademark infringements detailed in The Counterfeit Report investigative report.  eBay's acts and omissions constitute willful blindness to the rampant infringing activities of its sellers who promote and sell counterfeit products on ebay.com

293.  eBay therefore bears contributory liability for the infringement and counterfeit use of Plaintiff's Marks by the Seller Defendants and other Unauthorized Sellers, and each of them in violation of 15 U.S.C. § 1051, et seq.

294.  Plaintiff has been damaged by eBay's contributory infringement in an amount to be determined at trial and no less than the statutory damages to which Plaintiff is entitled pursuant to 15 U.S.C. § 1117(c)(2).  For example and without

limitation, eBay has been unjustly enriched through the ebay.com sellers' unlawful and unauthorized sales of Fake Lunatik Products, for which eBay receives income and/or transaction fees.   Further, the Seller Defendants' actions are willful and purposeful, in violation of 15 U.S.C. §1117, entitling Lunatik to attorney's fees and enhanced damages.

295.   Plaintiff has been, and absent injunctive relief will continue to be, irreparably harmed by eBay's actions.

296.   Plaintiff has no adequate remedy at law for the foregoing wrongful conduct.

## THIRD CAUSE OF ACTION AGAINST eBAY AND THE SELLER DEFENDANTS

### (Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

297.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

298.   Plaintiff's Marks have become famous marks within the meaning of the Trademark Dilution Revision Act of 2006, and are immediately recognizable to the relevant public as being associated with Lunatik. Plaintiff's Marks are the subject of valid and subsisting registrations under the Lanham Act.

299.   Because Plaintiff's Products have gained a reputation for superior quality and excellence, Plaintiff's Marks have gained substantial renown and reputation.

300.   Defendants' use of Plaintiff's Marks is likely to cause blurring to and of Plaintiff's Marks and impair the distinctiveness of Plaintiff's Marks.   Consumers are likely to associate Defendants' uses of Plaintiff's Marks with the Plaintiff's Marks themselves because of the similarity between Defendants' use of Plaintiff's Marks and Plaintiff's Marks themselves.   In particular, the following factors make dilution by blurring likely:  (1) Defendants are making uses of Plaintiff's Marks themselves;

(2) Plaintiff's Marks have acquired tremendous distinctiveness through Plaintiff's continuous promotion and uses of Plaintiffs' Marks; (3) Plaintiff's Marks have become famous and achieved a high level of recognition among the consuming public; (4) Plaintiff's commercial use of its Marks is substantially exclusive to Plaintiff and its agents and licensees; (5) Defendants intend to create an association between Defendants' uses of Plaintiff's Marks and Plaintiff's Marks themselves; and (6) on information and belief, many consumers actually associate Defendants' uses of Plaintiff's Marks confusingly similar thereto with Plaintiff's Marks themselves.

301. Defendants' conduct as alleged above is also likely to cause tarnishment among Plaintiff's Marks that harms the reputation of Plaintiff because of the similarity between Defendants' uses of Plaintiff's Marks and Plaintiff's Marks themselves. In particular, the Fake Lunatik Products sold, offered for sale, and/or distributed by Defendants, which are of notoriously bad quality and made with cheap materials, display Plaintiff's Marks in a manner that is confusingly similar to Plaintiff's Products and therefore mislead consumers to believe that Plaintiff's Products are of low quality.

302. Defendants' conduct described above dilutes, blurs, tarnishes, and whittles away at the distinctiveness of Plaintiff's Marks, and has caused actual dilution and has detracted from the distinctiveness of the famous Plaintiff's Marks with consequent damage to Plaintiff and to the substantial business and goodwill symbolized by Plaintiff' Marks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

303. Defendants' acts of trademark dilution have caused and, unless restrained will continue to cause, great and irreparable injury to Plaintiff, to Plaintiff's Marks, and to the substantial business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving Plaintiff with no adequate remedy at law.

304.   Defendants' conduct has been undertaken with a willful intent to trade on the reputation of Plaintiff and to cause dilution of the famous Plaintiff's Marks, and this conduct entitles Plaintiff to damages and the other remedies available pursuant to 15 U.S.C. § 1125(c)(2).

## FOURTH CAUSE OF ACTION AGAINST eBAY

### (Direct Trademark Infringement Through Initial Interest Confusion)

305.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

306.   Plaintiff's Marks are valid, federally registered trademarks entitled to protection under the Lanham Act.

307.   Plaintiff's Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of great and significant value, are highly distinctive and the public and industry associate Plaintiff's Products with high quality materials, style, and functionality.

308.   Lunatik does not sell on ebay.com, and does not authorize any of its distributors to sell on ebay.com.

309.   Since at least February 2013, obvious counterfeit Lunatik products bearing Lunatik marks and mirroring Lunatik designs, represented as being "new" have been the subject of listings on ebay.com.  In addition, at all relevant times, a search for the words "Lunatik" or "Taktik" – Plaintiff's federally registered trademarks – produces lists of products that directly compete with Lunatik's products and in many cases infringe patents and trademarks covering them.

310.   These products are often designed to look like Lunatik products, and are advertised to make a consumer believe they are Lunatik products.  In many cases the advertisements associated with the listings are lifted from advertisements created by and used by Lunatik.

311.   There is no statement on ebay.com advising consumers that Lunatik does not offer or sell its new products through ebay.com.

312.   By producing images of products designed to look like legitimate Lunatik products, some even using Lunatik registered trademarks, in response to a search using Lunatik's registered LUNATIK and TAKTIK® trademarks, and without identifying that said images are of products NOT made or endorsed by Lunatik, eBay is causing initial interest confusion that detracts from the possibility of a consumer finding and purchasing a legitimate Lunatik product..

313.   Plaintiff has been damaged by eBay's infringement in an amount to be determined at trial.   For example and without limitation, eBay has been unjustly enriched through the unlawful and unauthorized sales of Fake Lunatik Products.

314.   Plaintiff has been, and absent injunctive relief will continue to be, irreparably harmed by eBay's actions.

315.   Plaintiff has no adequate remedy at law for the foregoing wrongful conduct.

**FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**(Violations of Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c))**

316.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

317.   At all relevant times, Plaintiff is a person within the meaning of 18 U.S.C. §§1961(3) and 1962(c).

318.   At all relevant times, each Defendant is a person within the meaning of 18 U.S.C. §§1961(3) and 1962(c).

**The RICO Enterprise**

319.   The Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), referred to

herein as the "Enterprise." Each of the Defendants participated in the operation or management of the Enterprise because they engaged in acts that they knew would further the scheme to sell and profit from the sale of obvious Fake Lunatik Products, and that they further intended to further that scheme, and exercised substantial discretion in doing so.

320. The Enterprise consists of eBay, PayPal, the Seller Defendants, and other Unauthorized Sellers, some of whom are unidentified co-conspirators, using eBay.com and PayPal's proprietary global technology platform to effect the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products in violation of the Lanham Act, who have joined together to form an enterprise in fact whose purpose is to sell and profit from the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products. The Unauthorized Sellers knowingly have engaged in the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products, using eBay.com and the services of eBay and PayPal to effect such activities. eBay knowingly provided the Seller Defendants with the online marketplace and other services to facilitate the activities of the Unauthorized Sellers, including marketing, shipping and/or financing services that allowed the Seller Defendants to transact their illegal sales of the Fake Lunatik Products, and from which Defendants eBay and PayPal derived substantial profits. PayPal knowing provided the Seller Defendants with its proprietary global technology platform to facilitate the activities of the Unauthorized Sellers.

321. Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint; namely, through a systematized operation to sell and profit from the sale of obvious counterfeit goods including obvious Fake Lunatik Products that infringe on one or

more of Plaintiff's Marks.  These Defendants and their co-conspirators have organized their activities into a cohesive group with specific and assigned responsibilities and division of tasks, operating in the United States, China, and elsewhere.  Merchants including the Unauthorized Sellers have engaged in the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products through ebay.com.  While Plaintiff is informed and believes that the membership of this Enterprise has changed over time and its members may have held different roles at different times, the Enterprise has generally been structured to operate as a unit in order to accomplish the goals of the criminal scheme, profiting from the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products in violation of the Lanham Act, as amended, including through the following acts:

     a.    eBay and PayPal have participated in the operation and management of the Enterprise by knowingly facilitating the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products, including, *inter alia*, Fake Products that bear Plaintiff's Marks and copy the designs and packaging associated with Plaintiff's Products, through ebay.com.  Specifically, eBay knowingly provides sellers of Fake Lunatik Products with storefronts on ebay.com and (i) permits them to list their Fake Lunatik Products for sale, (ii) permits known sellers of obvious Fake Lunatik Products to continue selling obvious Fake Lunatik Products on ebay.com, (iii) provides marketing and search optimization services that solicits and direct buyers to the Fake Lunatik Products, which use federally-registered marks as keywords in order to attract consumers to Fake Lunatik Products offered for sale by the Unauthorized Sellers, and insert additional terms and phrases into the metadata for searches performed on ebay.com in order to direct consumers to particular Fake Lunatik Products offered for sale.  In addition,

eBay has directed and/or contracted with other conspirators, including PayPal, to take actions necessary to accomplish the overall aims of the criminal enterprise—namely, processing payments for the sale of Fake Lunatik Products, and providing shipping and delivery services for Fake Lunatik Products purchased through eBay.com. There can be no doubt that this is willful and intentional. eBay's knowledge is demonstrated by at least the following (i) the fact that the Fake Lunatik Products sold on ebay.com obviously infringe on Plaintiff's Marks because the Fake Lunatik Products that bear Plaintiff's Marks, identified in the listings, are not in Plaintiff's product line; (ii) Plaintiff's repeated notifications to eBay regarding the presence of Fake Lunatik Products on ebay.com: (iii) eBay's ineffective takedown procedures; (iv) eBay's aggressive solicitation to attract consumers to Fake Lunatik Products offered for sale by the Seller Defendants; (vi) the association of specific metadata with keywords to direct prospective purchasers to storefronts selling Fake Lunatik Products; and (vii) eBay's failure to adopt recognized best practices for voluntary measures in addressing the sale of counterfeit products on the Internet for either eBay or PayPal.

b.    Defendant PayPal has also participated in the operation and management of the Enterprise by, among other things, its operation of a proprietary global technology platform that enables merchants, including the Seller Defendants, and consumers around the globe to connect, processing the transactions for the sale of Fake Lunatik Products and conducting online payment processing for counterfeit goods purchased through ebay.com, including Fake Lunatik Products that infringe on one or more of Plaintiff's Trademarks. PayPal admits in publicly filed reports with the SEC that it knowingly allows its services to be used by Unauthorized Sellers in connection

with Unauthorized Sellers trafficking in counterfeit products being sold on ebay.com.

        c.    The Seller Defendants have also participated in the operation and management of the Enterprise by the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products on ebay.com. The Seller Defendants' knowledge and intent is demonstrated by their knowing and conscious promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products on ebay.com, and their repeated shipment of such goods to the United States and elsewhere.

        d.    Unidentified co-conspirators have been integrally involved in various stages of the Defendants' criminal enterprise, directing, controlling, ratifying, facilitating, or otherwise participating in the manufacture, distribution, sale, and advertisement of Fake Lunatik Products through ebay.com.

322. At all relevant times, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c), because Defendants have sold and continue to sell a substantial volume of Fake Lunatik Products into the United States, causing harm to Plaintiff in their business and property.

**Pattern of Racketeering Activity**

323. The Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c). This pattern included multiple instances of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a)(1), and wire fraud in violation of 18 U.S.C. §§ 1341, 1343. These predicate acts are all related to each other and to the Enterprise's purpose of selling and profiting from the sale of counterfeit goods.

Moreover, this pattern has been ongoing and will likely continue into the future. Indeed, Plaintiff is informed and believes that there are at least fifty storefronts on ebay.com now involved in the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products on ebay.com.  Each sale of Fake Lunatik Products, and each transfer of funds in payment for the purchase of Fake Lunatik Products using services offered by PayPal, causes new injury to Plaintiff in the form of brand dilution, loss of goodwill and lost sales, as set forth below, injuries that Plaintiff would not have suffered but for the conduct of the Enterprise.

## Pattern of Racketeering Activity:

### Numerous Instances of Trafficking in Counterfeit Goods

### In Violation of 18 U.S.C. § 2320(a)(1)

324.  At all times material to this Complaint, Plaintiff was engaged in interstate commerce and in an industry that affects interstate commerce.

325.  As described herein, Defendants have engineered an organized operation to offer, sell and profit from the sale of counterfeit goods through ebay.com by, and among other things, the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products which in listings on ebay.com bear marks that are identical to, or substantially indistinguishable from, Plaintiff's federally registered marks, the use of which is likely to cause confusion, mistake, or to deceive— are used.

326.  In furtherance of their scheme, and as described herein, Defendants transported, transferred, or otherwise disposed of—and attempted to transport, transfer, or otherwise dispose of—counterfeit goods sold on ebay.com to their online purchasers in exchange for money, and/or made or obtained control of the counterfeit goods with intent to so transport, transfer, or dispose of. Such counterfeit goods that Defendants transported, transferred, or otherwise disposed of, or made or obtained control of with intent to so transport, transfer, or dispose of, include, but are not

limited to, Fake Products that infringe on one or more of Plaintiff's Trademarks by copying the designs and packaging associated with Plaintiff's Products.    While Plaintiff contends that Defendants' sale and transport of such Fake Lunatik Products is vast in volume and will be revealed by discovery in this action, such sales and transport to the United States include at least the following instances:

> a.    On or about May 27, 2015, Seller 1 caused a listing to be posted on ebay.com for the sale of obvious Fake Lunatik iPhone cases for iPhone 6.  It has been reported on ebay.com that Seller 1 has sold at least 10,520 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 1 to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

> b.    On or about July 27, 2015, Seller 2 caused a listing to be posted on ebay.com for the of the following obvious Fake Lunatik iPhone cases: "Waterproof Shockproof Aluminum Grilla Glass Metal Case Cover For Apple iPhone @@."  It has been reported on ebay.com that Seller 2 has sold at least 2,711 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

> c.    On or about May 19, 2015, Seller 3 caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik iPhone cases for iPhone 5.  It has been reported on ebay.com that Seller 3 has sold at least 25,069 counterfeit Lunatik iPhone cases.

> d.    On or about May 27, 2015, Seller 3 caused at least two listings to be posted on ebay.com for the sale of obvious Fake Lunatik iPhone cases for iPhone 5.  As alleged more particularly herein, eBay continues to allow Seller 3 to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

e.    On or about July 15, 2014, Seller 2 (previously identified as Seller 4) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.   It has been reported on ebay.com that Seller 2 (previously identified as Seller 4) has sold at least 4,088 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 4) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

f.    On or about July 18, 2015, Seller 3 (previously identified as Seller 5) caused a listing to be posted on ebay.com for sale of the following obvious Fake Lunatik iPhone cases:   "Waterproof Shockproof Aluminum Gorilla Metal Cover Case For iPhone Models.  Available for iPhone 6 + 6PLUS + 4/4S/5/5S/5C."  It has been reported on ebay.com that Seller 3 (previously identified as Seller 5) has sold at least 10,448 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 3 (previously identified as Seller 5) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

g.    On or about July 15, 2014, Seller 2 (previously identified as Seller 6) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.   It has been reported on ebay.com that Seller 2 (previously identified as Seller 6) has sold at least 299 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 6) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

h.    On or about July 15, 2014, Seller 2 (previously identified as Seller 7) caused multiple listings to be posted on ebay.com for the sale of

obvious Fake Lunatik TAKTIK iPhone cases.  It has been reported on ebay.com that Seller 2 (previously identified as Seller 7) has sold at least 337 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 7) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

i.     On or about July 15, 2014, Seller 2 (previously identified as Seller 8) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.  It has been reported on ebay.com that Seller 2 (previously identified as Seller 8) has sold at least 586 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 8) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

j.     On or about July 15, 2014, Seller 2 (previously identified as Seller 9) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.

k.     On or about June 1, 2015, Seller 2 (previously identified as Seller 9) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik iPhone cases for iPhone 5 and iPhone 6.  It has been reported on ebay.com that Seller 2 (previously identified as Seller 9)  sold at least 787 counterfeit Lunatik iPhone cases.   As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 9) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

l.     On or about July 15, 2014, Seller 2 (previously identified as Seller 10)  caused multiple listings to be posted on ebay.com for the sale of

obvious Fake Lunatik TAKTIK iPhone cases.  It has been reported on ebay.com that Seller 2 (previously identified as Seller 10) has sold at least 288 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 10)  to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

m.    On or about July 15, 2014, Seller 2 (previously identified as Seller 11) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.  It has been reported on ebay.com that Seller 2 (previously identified as Seller 11) has sold at least 54 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 11) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

n.    On or about July 25, 2015, eBay transmitted an email to an eBay buyer offering to sell counterfeit Lunatik iPhone cases described as "Waterproof Shockproof Aluminum Grilla [sic] Glass Metal Case Cover for Apple iPhone @@" for $9.23.  Days later, on July 30, 2015, the same eBay buyer was directly solicited by eBay to purchase obvious counterfeit Lunatik iPhone cases.

o.    Plaintiff is informed and believe that eBay directly solicited a buyer to purchase some or all of the following Fake Lunatik Products on or about the dated indicated:

(i)    On or about June 24, 2015, eBay directly solicited a buyer to purchase a counterfeit yellow aluminum LUNATIK branded iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "firsttopmall2013 (7892)."

(ii)     On or about June 24, 2015, eBay directly solicited a buyer to purchase a counterfeit red aluminum LUNATIK branded iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "misskiss6699 (729)."

(iii)     On or about June 24, 2015, eBay directly solicited a buyer to purchase a counterfeit black aluminum LUNATIK branded iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "max-access (799)."

(iv)     On or about June 4, 2015, eBay directly solicited a buyer to purchase counterfeit gold plated and yellow aluminum LUNATIK branded and boxed TakTik iPhone 4 Cell Phone Cases listed on ebay.com by eBay seller "et8shop_hy (20731)"

(v)     On or about May 15, 2015, eBay directly a buyer to purchase a counterfeit black aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "9hkk0432 (152)."

(vi)     On or about January 15, 2015, eBay directly solicited a buyer to purchase a counterfeit gold aluminum LUNATIK branded iPhone 5 Cell Phone Case listed on ebay.com by eBay seller "uncletommall (11661).

(vii)     On or about November 30, 2014, eBay directly solicited a buyer to purchase a counterfeit yellow aluminum LUNATIK branded iPhone 5 Cell Phone Case listed on ebay.com by eBay seller "slysky6688 (3493).

(viii)     On or about November 30, 2014, eBay directly solicited a buyer to purchase a counterfeit red aluminum LUNATIK branded iPhone 5 Cell Phone Case listed on ebay.com by eBay seller "sohishopping525 (8380).

95
COMPLAINT

(ix)    On or about May 15, 2015, eBay directly solicited a buyer to purchase a counterfeit white aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "Casemasterelite (136)."

(x)    On or about May 15, 2015, eBay directly solicited a buyer to purchase a white counterfeit aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "ultradeal2013 (2566).

(xi)    On or about May 12, 2015, eBay directly solicited a buyer to purchase a black counterfeit aluminum LUNATIK branded and packaged TakTik Extreme iPhone 5 Cell Phone Case listed on ebay.com by eBay seller "alanw (22).

(xii)    On or about May 12, 2015, eBay directly solicited a buyer to purchase a silver counterfeit aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "nysltd (9530)."

(xiii)   On or about February 16, 2015, eBay directly solicited a buyer to purchase a counterfeit aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "b4sos (266)."

327.   Defendants participated in the scheme knowing full well that the goods they were (1) transporting, transferring, or otherwise disposing of; (2) attempting to transport, transfer, or otherwise dispose of; and/or (3) making or obtaining control of with intent to so transport, transfer, or dispose of, were counterfeit.  Defendants are engaged in a wide-ranging scheme to sell and profit from the sale of goods upon which or in connection with which counterfeit marks are knowingly used.

328.    Moreover, Defendants participation in the scheme was intentional—Defendants intended to (1) transport, transfer, or otherwise dispose of; (2) attempt to transport, transfer, or otherwise dispose of; and/or (3) make or control goods known by them to be counterfeit.

329.    Accordingly, Defendants have unlawfully trafficked, attempted to traffic and aided and abetted the trafficking, as that term is defined in 18 U.S.C. § 2320(e)(2), of goods upon which or in connection with which counterfeit marks, as that term is defined in 18 U.S.C. § 2320(f)(1), were used, in violation of 18 U.S.C. § 2320(a)(1).

**Pattern of Racketeering Activity: Multiple Instances of Wire Fraud**
**In Violation of 18 U.S.C. § 1343**

330.    As described herein, utilizing the proprietary global online technology platform operated by Defendant PayPal that enables merchants and consumers around the globe to connect, the Enterprise has engaged in a scheme to sell and profit from the sale of counterfeit goods through ebay.com by, among other things, the promotion, advertisement, offer for sale, sale, financing and distribution of obvious counterfeit Lunatik products. In furtherance of this scheme, the Enterprise has engaged in multiple counts of wire fraud in violation of 18 U.S.C. § 1343. Specifically, Defendants' misappropriation of Plaintiff's intellectual property through the promotion, sale, and shipment of Fake Lunatik Products for profit, constitutes a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," within the meaning of Section 1343, and Defendants have knowingly transmitted or caused to be transmitted by means of wire communication in interstate and foreign commerce multiple communications for the purpose of executing this scheme, specifically through the operation of interactive websites used to promote and sell Fake Lunatik Products, including specifically targeting consumers in the United States, and by means of

electronic communications used to facilitate and complete such sales with consumers in the United States and elsewhere.  By means of this scheme, Defendants have (1) obtained money from consumers purchasing Fake Lunatik Products because of their misappropriation of Plaintiff's Marks; and (2) wrongfully obtained the value of Plaintiff's intellectual property through the sale of Fake Lunatik Products.  This conduct has directly harmed both consumers and Plaintiff by sowing confusion among consumers seeking authentic Plaintiff's Products and post-sale confusion among consumers who come in contact with the Fake Products and associate their inferior quality with Plaintiff's Marks.

331.  As evidenced by the routine nature of Defendants' promotion and sale of counterfeit items and the volume of traffic experienced by ebay.com, Plaintiff believes that the actual volume of Defendants' use of the sales and shipments of Fake Lunatik Products to customers in the United States and elsewhere is vast and will be revealed in discovery in this action, but such sales and shipments include at least the following specific instances:

a.    On or about May 27, 2015, Seller 1 caused a listing to be posted on ebay.com for the sale of obvious Fake Lunatik iPhone cases for iPhone 6.  It has been reported on ebay.com that Seller 1 has sold at least 10,520 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 1 to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

b.    On or about July 27, 2015, Seller 2 caused a listing to be posted on ebay.com for the of the following obvious Fake Lunatik iPhone cases: "Waterproof Shockproof Aluminum Grilla Glass Metal Case Cover For Apple iPhone @@."  It has been reported on ebay.com that Seller 2 has sold at least 2,711 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 to list for sale obvious counterfeit iPhone

cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

c.    On or about May 19, 2015, Seller 3 caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik iPhone cases for iPhone 5.  It has been reported on ebay.com that Seller 3 has sold at least 25,069 counterfeit Lunatik iPhone cases.

d.    On or about May 27, 2015, Seller 3 caused at least two listings to be posted on ebay.com for the sale of obvious Fake Lunatik iPhone cases for iPhone 5.  As alleged more particularly herein, eBay continues to allow Seller 3 to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

e.    On or about July 15, 2014, Seller 2 (previously identified as Seller 4)  caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.  It has been reported on ebay.com that Seller 2 (previously identified as Seller 4) has sold at least 4,088 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 4)  to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

f.    On or about July 18, 2015, Seller 3 (previously identified as Seller 5)  caused a listing to be posted on ebay.com for sale of the following obvious Fake Lunatik iPhone cases:   "Waterproof Shockproof Aluminum Gorilla Metal Cover Case For iPhone Models.   Available for iPhone 6 + 6PLUS + 4/4S/5/5S/5C."   It has been reported on ebay.com that Seller 3 (previously identified as Seller 5) has sold at least 10,448 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 3 (previously identified as Seller 5) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

g.    On or about July 15, 2014, Seller 2 (previously identified as Seller 6) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases. It has been reported on ebay.com that Seller 2 (previously identified as Seller 6) has sold at least 299 counterfeit Lunatik iPhone cases. As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 6) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

h.    On or about July 15, 2014, Seller 2 (previously identified as Seller 7) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases. It has been reported on ebay.com that Seller 2 (previously identified as Seller 7) has sold at least 337 counterfeit Lunatik iPhone cases. As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 7) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

i.    On or about July 15, 2014, Seller 2 (previously identified as Seller 8) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases. It has been reported on ebay.com that Seller 2 (previously identified as Seller 8) has sold at least 586 counterfeit Lunatik iPhone cases. As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 8) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

j.    On or about July 15, 2014, Seller 2 (previously identified as Seller 9) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.

k.   On or about June 1, 2015, Seller 2 (previously identified as Seller 9) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik iPhone cases Seller 2 (previously identified as Seller 9) sold at least 787 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 9) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

l.   On or about July 15, 2014, Seller 2 (previously identified as Seller 10) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.  It has been reported on ebay.com that Seller 2 (previously identified as Seller 10) has sold at least 288 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 10) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

m.   On or about July 15, 2014, Seller 2 (previously identified as Seller 11) caused multiple listings to be posted on ebay.com for the sale of obvious Fake Lunatik TAKTIK iPhone cases.  It has been reported on ebay.com that Seller 2 (previously identified as Seller 10) has sold at least 54 counterfeit Lunatik iPhone cases.  As alleged more particularly herein, eBay continues to allow Seller 2 (previously identified as Seller 11) to list for sale obvious counterfeit iPhone cases on ebay.com that unlawfully infringe on Plaintiff's Marks.

n.   On or about July 25, 2015, eBay transmitted an email to an eBay buyer offering to sell counterfeit Lunatik iPhone cases described as "Waterproof Shockproof Aluminum Grilla [sic] Glass Metal Case Cover for Apple iPhone @@" for $9.23.  Days later, on July 30, 2015, the same eBay

buyer was directly solicited by eBay to purchase obvious counterfeit Lunatik iPhone cases.

       o.    Plaintiff is informed and believe that eBay directly solicited a buyer to purchase some or all of the following Fake Lunatik Products on or about the dated indicated:

       (i)    On or about June 24, 2015, eBay directly solicited a buyer to purchase a counterfeit yellow aluminum LUNATIK branded iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "firsttopmall2013 (7892)."

       (ii)    On or about June 24, 2015, eBay directly solicited a buyer to purchase a counterfeit red aluminum LUNATIK branded iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "misskiss6699 (729)."

       (iii)    On or about June 24, 2015, eBay directly solicited a buyer to purchase a counterfeit black aluminum LUNATIK branded iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "max-access (799)."

       (iv)    On or about June 4, 2015, eBay directly solicited a buyer to purchase counterfeit gold plated and yellow aluminum LUNATIK branded and boxed TakTik iPhone 4 Cell Phone Cases listed on ebay.com by eBay seller "et8shop_hy (20731)"

       (v)    On or about May 15, 2015, eBay directly a buyer to purchase a counterfeit black aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "9hkk0432 (152)."

       (vi)    On or about January 15, 2015, eBay directly solicited a buyer to purchase a counterfeit gold aluminum LUNATIK branded

iPhone 5 Cell Phone Case listed on ebay.com by eBay seller "uncletommall (11661).

(vii)   On or about November 30, 2014, eBay directly solicited a buyer to purchase a counterfeit yellow aluminum LUNATIK branded iPhone 5 Cell Phone Case listed on ebay.com by eBay seller "slysky6688 (3493).

(viii)  On or about November 30, 2014, eBay directly solicited a buyer to purchase a counterfeit red aluminum LUNATIK branded iPhone 5 Cell Phone Case listed on ebay.com by eBay seller "sohishopping525 (8380).

(ix)   On or about May 15, 2015, eBay directly solicited a buyer to purchase a counterfeit white aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "Casemasterelite (136)."

(x)    On or about May 15, 2015, eBay directly solicited a buyer to purchase a white counterfeit aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "ultradeal2013 (2566).

(xi)   On or about May 12, 2015, eBay directly solicited a buyer to purchase a black counterfeit aluminum LUNATIK branded and packaged TakTik Extreme iPhone 5 Cell Phone Case listed on ebay.com by eBay seller "alanw (22).

(xii)  On or about May 12, 2015, eBay directly solicited a buyer to purchase a silver counterfeit aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "nysltd (9530)."

(xiii) On or about February 16, 2015, eBay directly solicited a buyer to purchase a counterfeit aluminum LUNATIK branded and packaged TakTik Extreme iPhone 6 Cell Phone Case listed on ebay.com by eBay seller "b4sos (266)."

### Summary of the Pattern of Racketeering Activity Alleged Against Each RICO Defendant

332.  eBay has committed numerous counterfeiting violations—intentionally trafficking or causing to traffic counterfeit goods, conspiring to traffic counterfeit goods, and aiding and abetting the trafficking of counterfeit goods—all in furtherance of Defendants' organized operation to sell and profit from the sale of obvious counterfeit goods, including Fake Lunatik Products bearing Plaintiff's Marks.  eBay has also committed numerous mail and wire fraud violations, in which eBay used or caused to be used the mail or wires in furtherance of Defendants' widespread scheme to sell and profit from the sale of Fake Lunatik Products

333.  Using its proprietary global online technology platform that enables merchants and consumers around the globe to connect, Defendant PayPal has committed numerous predicate acts, including mail and wire fraud and trafficking in counterfeit goods.  PayPal used or caused to be used the mail or wires in furtherance of Defendants' wide-spread scheme to sell and profit from the sale of counterfeit goods, including the Fake Products bearing Plaintiff' Marks.  In addition, PayPal has both conspired to traffic in counterfeit goods and aided and abetted the trafficking of counterfeit goods in furtherance of Defendants' organized operation to sell and profit from the sale of counterfeit goods.

334.  The Seller Defendants have committed numerous counterfeiting violations—intentionally trafficking or causing to traffic counterfeit goods, conspiring to traffic counterfeit goods, and aiding and abetting the trafficking of counterfeit goods, including the Fake Products bearing Plaintiff's Marks, all in furtherance of

Defendants' organized operation to sell and profit from the sale of Fake Products. The Seller Defendants have also committed numerous mail and wire fraud violations, including without limitation website postings and online advertising of Fake Lunatik Products for sale, in which the Seller Defendants used or caused to be used the mail or wires in furtherance of Defendants' widespread scheme to sell and profit from the sale of Fake Lunatik Products.

335.   Each of the Defendants has engaged in multiple predicate acts, including trafficking in Fake Lunatik Products, and engaging in mail and wire fraud in order to effectuate such sales, as described in the foregoing paragraphs.  The conduct of each of the Defendants described in the foregoing paragraphs constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

336.   Plaintiff has been injured in their businesses and property by reason of Defendants' violations of 18 U.S.C. § 1962(c).  The injuries to Plaintiff caused by reason of the violations of 18 U.S.C. § 1962(c) include but are not limited to damage to the value of Plaintiff's intellectual property and other assets, lost sales, and direct expenses from Plaintiff's efforts to stop the sale of Fake Lunatik Products through eBay's ineffective takedown procedures. More specifically, Defendants' racketeering activities have caused damage to Plaintiff's reputation, goodwill, and sales, including but not limited to lost sales from customers that would have purchased Plaintiff's Authentic Products but for the availability of inexpensive Fake Lunatik Products, and prospective customers who choose not to purchase Plaintiff's Authentic Products because of the availability of inferior inexpensive Fake Lunatik Products.  Further, these injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. § 1962(c), and Defendants' conduct is the direct and but for cause of these injuries.  Furthermore, each new sale of Fake Lunatik Products, and each new commission of one of the predicate acts identified above, causes new injuries to Plaintiff.

337.   Given the organized and pervasive nature of the Enterprise's promotion and sale of Fake Lunatik Products, and the Enterprise's continued and ongoing operations, which are likely to extend into the future, Plaintiff has been and will continue to be injured in its business and property in an amount to be determined at trial.

338.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

339.   Plaintiff is further entitled to, and should be awarded, a permanent injunction that enjoins Defendants, their assignees, and anyone else acting in concert with them from directly or indirectly contributing to, aiding, or abetting the marketing, promotion, or sale of Fake Lunatik Products or any unauthorized or counterfeit products that bear, contain, display, or utilize any of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiff's Marks.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1.   Permanently enjoin eBay, PayPal and the Seller Defendants and their respective officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from, with respect to any products offered as "new":

(a)   manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling, or otherwise offering for sale Fake Lunatik Products or any other products confusingly similar to Plaintiff's Authentic Products, or that otherwise bear, contain, display, or utilize any of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(b)    processing credit card transactions or otherwise facilitating the sales of Fake Lunatik Products or any other products confusingly similar to Plaintiffs' Authentic Products, or that otherwise bear, contain, display, or utilize any of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Marks;

(c)    making or employing any other commercial use of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Marks;

(d)    using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities in connection with the offer and/or sale of Fake Lunatik Products are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiff; and

(e)    doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendants come from Plaintiff or its licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiff; and

(f)    moving, returning, or otherwise disposing of, in any manner, any Fake Lunatik Products or any other products confusingly similar to Plaintiff's Products, or that otherwise bear, contain, display, or utilize any of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Marks; and (g) secreting, destroying, altering, removing, or otherwise dealing with the

unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all unauthorized products which infringe Plaintiff's Marks; and

(h)     further diluting and infringing all Plaintiff's Marks and damaging Plaintiff's goodwill;

(i)     otherwise competing unfairly with Plaintiff in any manner; and

(j)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (i), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (i).

2.     Exercise the Court's inherent equitable authority and its statutory equitable authority under 15 U.S.C. § 1116 to direct Defendants to account to Plaintiffs for the profits obtained through the unlawful activities alleged herein and unjust enrichment obtained through the unauthorized use of Plaintiff's Marks.

3.     Order that the Plaintiffs recover their damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117(a) and (b);

4.     Award Plaintiffs statutory damages in an amount to be determined representing $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

5.     Award Plaintiffs treble damages in an amount to be determined plus costs and attorneys' fees from Defendants pursuant to 18 U.S.C. § 1964(c).

6.     Direct Defendants to recall and remove from all websites, online markets, or other channels of commerce any Fake Lunatik Products or any other

products confusingly similar to Plaintiff's Authentic Products, or that otherwise bear, contain, display, or utilize any of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Marks, that are in Defendants' possession or control, and all means of making the same;

7.    Direct Defendants to deliver up for destruction all Fake Lunatik Products or any other products confusingly similar to Plaintiff's Products, or that otherwise bear, contain, display or utilize any of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Marks, that are in Defendants' possession or control, and all means of making the same, in accordance with 15 U.S.C. § 1118;

8.    Direct Defendants to deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of Defendants bearing any of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiffs' Marks, in accordance with 15 U.S.C. § 1118;

9.    Direct Defendants to supply Plaintiff with a complete list of entities from whom they collected and to whom they distributed and/or sold Fake Lunatik Products or any other products confusingly similar to Plaintiff's' Products, or that otherwise bear, contain, display or utilize any of Plaintiff's Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiff's' Marks, and to provide documentation of the manner through which the Fake Lunatik Products or other products were paid, including any bank accounts to, through or from which funds were wired;

10.    Direct Defendants to file with the Court and serve on counsel for Plaintiffs within thirty (30) days after entry of any injunction issued by the Court in

1  this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in

2  detail the manner and form in which Defendants have complied with any injunction

3  which the Court may enter in this action;

4      11.    Award Plaintiffs their reasonable attorneys' fees along with the costs and

5  disbursements incurred herein as a result of Defendants' intentional and willful

6  infringement, pursuant to 15 U.S.C. § 1117;

7      12.    Award Plaintiffs such other and further relief as the Court deems just and

8  proper.

9                          **DEMAND FOR JURY TRIAL**

10     13.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs

11  demand a jury trial on all issues so triable.

12  Dated:   November 20, 2015

13                                              Respectfully submitted,
                                                R. REX PARRIS LAW FIRM
14

15

16                                  By:      */s/ R. Rex Parris*
                                             R. REX PARRIS, ESQ.
17                                           DEBORAH A. KLAR, ESQ.
                                             Attorneys for Plaintiff
18                                           WIMO LABS, LLC

19

20

21  _____
    i      www.thecounterfeitreport.com

22  ii     U.S. Department of Homeland Security, Intellectual Property Rights Seizures
23         Statistics, Intellectual Property Rights Seizures Statistics, Fiscal Year 2013.

    iii    As used herein, the term "Unauthorized Sellers" refers to every person or entity
24         who has infringed on Plaintiff's Marks in connection with the promotion,
           advertisement, offer for sale, sale and distribution of obvious counterfeit
25         Lunatik products in violation of the Lanham Act, as amended, and includes the
           "Seller Defendants" identified in paragraphs 10 through 20 of the Complaint.
26

27

28                                   110
                                 COMPLAINT

iv   http://www.ebay.com/gds/Top-5-most-durable-smartphone-cases-/10000000178519568/g.html

v   S. Rep. No. 104-177, at 2 (1995) (quoting H.R. Rep. 98-997, at 5–6 (1984)).39.

vi   *Tiffany, Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2009) ("*Tiffany*").

vii   *Id.*

viii   About eBay, EBAY PARTNER NETWORK, https://ebaypartnernetwork.com/files/hub/en-US/aboutEbay.html (last visited Jul. 23, 2015).

ix   *See* www.stock-analysis-on.net/NASDAQ/Company/eBay-Inc/Ratios/Profitability#Operating-Profit-Margin

x   2015 eBay ANN. REP. at 4.

xi   *Id.*

xii   *Id.*

xiii   Supra at 5.

xiv   Supra at 5-6.

xv   Supra at 6-8.

xvi   Supra at 4.

xvii   Supra at 5-6.

xviii   http://pages.ebay.com/help/sell/promoting_ov.html

xix   *Tiffany* at 97.

xx   2015 eBay ANN. REP. at 6.

xxi   Supra at 5.

xxii   *Id.*

xxiii   *See* http://www.ecommercebytes.com/cab/abn/y15/m08/i28/s02

xxiv   2015 eBay ANN. REP. at 11.

xxv   Supra at 26.

xxvi   *Id.*

xxvii   *Id.*

xxviii   ebay.com/help/policies/replica counterfeit.html.

xxix    2015 eBay ANN. REP. at 26.

xxx    See http://about.usps.com/news/national-releases/2010/pr10_058.htm

xxxi    See http://www.sellertools.org/epacket/#sthash.VifI2f7M.dpuf

xxxii    See http://about.usps.com/news/national-releases/2010/pr10_058.htm

xxxiii    *Id.*

xxxiv    *Id.*

xxxv    https://www.washingtonpost.com/news/storyline/wp/2014/09/12/the-postal-service-is-losing-millions-a-year-to-help-you-buy-cheap-stuff-from-china/

xxxvi    http://www.ecommercebytes.com/cab/abn/y11/m08/i31/s02 USPS Deal with eBay Helps Expedite Chinese Imports

xxxvii    https://www.ebayinc.com, Aug 30, 2011 "eBay Asian Exporters Drive Global Trade and Ecommerce Growth."

xxxviii    *Id.*

xxxix    http://au.andale.com/edu/entry.aspx?id=Asian-Exporters-Thrive-on-eBay (Sept. 1, 2011.)

xl    *Id.*

xli    *Id.*

xlii    http://pages.ebay.com/help/policies/money-back-guarantee.html

xliii    http://www.pcworld.com/article/244493/ebay_buys_ecommerce_recommendations_service_hunch.html

xliv    http://www.businesswire.com/news/home/20111121005831/en/eBay-Acquires-Recommendation-Engine-Hunch.com

xlv    *Id.*

xlvi    "PayPal Q4 2014 Fast Facts" (PDF). eBay Inc. Retrieved 22 June 2015

xlvii    2015 eBay ANN. REP. at 7.

xlviii    *Id.*

xlix    2015 eBay ANN. REP. at 7.

l    *Supra* at 7-8.

li    2015 eBay ANN. REP. at 8.

1   lii   2015 eBay ANN. REP. at 20.

2   liii  2015 eBay ANN. REP. at 22.

3   liv   2015 eBay ANN. REP. at 26.

4   lv    *See* http://www.treasury.gov/resource-
        center/sanctions/CivPen/Documents/20150325_paypal_settlement.pdf
5         ("PayPal Settlement")

6   lvi   https://coincenter.org/2015/04/what-is-money-transmission-and-why-does-it-
        matter.
7

8   lvii  *See, e.g.,* PayPal Settlement

    lviii https://go.developer.ebay.com/ebay-market-data
9
    lix   https://pages.ebay.com/againstcounterfeits/
10
    lx    https://thecounterfeitreport.com/press_release_details.php?date=2014-11-
11        10&id=443

12  lxi   *Id.*

13  lxii  *Id.*

14  lxiii http://pages.ebay.com/help/policies/programs-vero-ov.html

15  lxiv  http://finance.yahoo.com/news/ebay-admits-banned-whistleblower-warning-
        032449045.html
16
    lxv   PAYPAL HOLDINGS, INC. FORM 10-12B (Registration Statement) Filed
17        02/25/15, Exhibit 99.1

18  lxvi  PAYPAL HOLDINGS, INC. FORM 10-12B (Registration Statement) Filed
        02/25/15, Exhibit 99.1
19
    lxvii PAYPAL HOLDINGS, INC. FORM 10-12B (Registration Statement) Filed
20        02/25/15, Exhibit 99.1

21  lxviii
        http://www.businessinsider.com/ebay-admits-it-banned-a-whistleblower-2014-
22        11.

23

24

25

26

27

28
COMPLAINT