ANNETTE L. HURST (STATE BAR NO. 148738)
ahurst@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

MARK P. WINE (STATE BAR NO. 189897)
mwine@orrick.com
KHAI LEQUANG (STATE BAR NO. 202922)
klequang@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, California 92614-8255
Telephone: +1-949-567-6700
Facsimile: +1-949-567-6710

Attorneys for Defendant
PayPal Holdings, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| Wimo Labs, LLC,<br><br>Plaintiff,<br><br>v.<br><br>eBay, Inc., a Delaware Corporation; PayPal Holdings, Inc., a Delaware Corporation; Hoonie S. Kang, an individual; D.I.R. Enterprises, Inc., a California Corporation; Simon Chen, an individual,<br><br>Defendants. | Case No. 8:15-cv-01330-JLS (KESx)<br><br>**DEFENDANT PAYPAL HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Josephine L. Staton<br><br>Hearing Date: January 29, 2016<br>Time: 2:30 p.m.<br>Place: Courtroom 10A<br>Complaint: August 20, 2015 |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on January 29, 2016, at 2:30 p.m., or as soon thereafter as this matter can be heard before the Honorable Josephine L. Staton, in Courtroom 10A of the United States Courthouse for the Central District of California, Southern Division, 411 West Fourth Street, Santa Ana, 92701, Defendant PayPal Holdings, Inc. ("PayPal") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the First Amended Complaint against it with prejudice.

This Motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) on the ground that Plaintiff's Fifth Cause of Action against PayPal under 18 U.S.C. § 1962(c), the only claim interposed against PayPal, fails to state a claim upon which relief can be granted.  As Plaintiff had two prior opportunities to plead this claim, the second with the benefit of a full motion to dismiss already filed, it is apparent that Plaintiff cannot cure the deficiencies of its claim against PayPal and that no further leave to amend should therefore be granted.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which commenced on December 1, 2015 and continued thereafter.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, the First Amended Complaint (ECF No. 58), the Request for Judicial Notice filed herewith, the Complaint and PayPal's Motion to Dismiss Complaint, and such other and further papers and argument as may be offered prior to or at the time of the hearing of this Motion.

1 | Dated:          December 15, 2015

2

ANNETTE L. HURST
MARK P. WINE
KHAI LEQUANG
Orrick, Herrington & Sutcliffe LLP

By: /s/ Annette L. Hurst
ANNETTE L. HURST
Attorneys for Defendant
PayPal Holdings, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

ALLEGATIONS OF THE FIRST AMENDED COMPLAINT..................................3

ARGUMENT .........................................................................................................5

I.    THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THE EXISTENCE OF AN ASSOCIATION-IN-FACT RICO ENTERPRISE. ..........................................................................................7

    A.    PayPal's Nonexistent Duty To Police IP Infringement Cannot Establish A RICO Enterprise. ..............................................8

    B.    Courts Have Consistently Held That Payment Processing Alone Does Not Support A RICO Enterprise...................................11

II.    THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THAT PAYPAL CONDUCTED THE AFFAIRS OF THE ENTERPRISE. ..........14

III.    THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THAT PAYPAL COMMITTED ANY PREDICATE ACTS. ...............................17

    A.    18 U.S.C. § 2320(a)(1):  Trafficking in Counterfeit Goods ...............17

    B.    18 U.S.C. § 1343: Wire fraud ...........................................................21

IV.    THE FIRST AMENDED COMPLAINT DOES NOT ESTABLISH THAT WIMO SUFFERED ANY RICO INJURY. .....................................22

CONCLUSION...................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ................................................................. 12

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ................................................................................... 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 5, 8, 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................*passim*

*Boyle v. United States*,
  556 U.S. 938 (2009) ........................................................................... 2, 7, 8

*City of N.Y. v. Smokes-Spirits.com, Inc.*,
  541 F.3d 425 (2d Cir. 2008), overruled on other grounds by *Hemi
  Group, LLC v. City of New York*, 559 U.S. 1 (2010) ................................... 15, 16

*Conte v. Newsday, Inc.*,
  703 F.Supp.2d 126 (E.D.N.Y. 2010) ............................................................ 8

*In re Countrywide Financial Corp. Mortgage Marketing and Sales
  Practices Litigation*,
  601 F.Supp.2d 1201 (S.D. Cal. 2015) ........................................................ 15, 19

*Diaz v. Gates*,
  380 F.3d 480 (9th Cir. 2004) ...................................................................... 23

*Dunmore v. Dunmore*,
  2013 WL 5569979 (E.D.Cal. Oct. 9, 2013) ................................................ 25

*Elsevier Inc. v. WHPR, Inc.*,
  692 F.Supp.2d 297 (S.D.N.Y. 2010) ............................................................ 8

*Hollander v. Flash Dancers Topless*,
  173 Fed. Appx. 15 (2d Cir. 2006) .............................................................. 25

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992) ............................................................................... 22, 23

*Imagineering, Inc. v. Kiewit Pac. Co.*,
  976 F.2d 1303 (9th Cir. 1992) ......................................................................24

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d. Cir. 2010) .................................................................... 8, 12

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982) ................................................................................... 9, 10

*Jubelirer v. MasterCard Int'l, Inc.*,
  68 F.Supp.2d 1049 (W.D. Wis. 1999) ................................................... 13, 14

*Knit With v. Knitting Fever, Inc.*,
  2012 WL 2938992 (E.D. Pa. Jul. 19, 2012) ................................................25

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 1991) ................................................................. 20, 24

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
  194 F.3d 980 (9th Cir. 1999) .........................................................................9

*In re Lupron Mktg. and Sales Practices Litig.*,
  295 F.Supp.2d 148 (D. Mass. 2003) ...............................................................7

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ................................................................... 6, 21

*Moss v. United States Secret Service*,
  572 F.3d 962 (9th Cir. 2009) .........................................................................5

*Orr v. Bank of Am.*,
  285 F.3d 764 (9th Cir. 2002) .......................................................................21

*Oscar v. Univ. Students Co-op Ass'n*,
  965 F.2d 783 (9th Cir. 1992) .......................................................................24

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) .............................................................. 1, 9, 20

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*,
  2008 WL 269080 (E.D.Cal. Jan. 29, 2008) ..................................................23

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ........................................................................... 14, 15, 16

iii

*Rezner v. Bayerische Hypo–Und Vereinsbank AG*,
  630 F.3d 866 (9th Cir. 2010) ................................................................. 23

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998) ........................................................ 15, 19

*Rosner v. Bank of China*,
  528 F.Supp.2d 419 (S.D.N.Y. 2007) ................................................... 13

*Rylewicz v. Beaton Serv., Ltd.*,
  698 F.Supp. 1391 (N.D. Ill. 1988) ...................................................... 25

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985) .......................................................... 6, 20, 23

*Sheperd v. Am. Honda Motor Co. Inc.*,
  822 F.Supp. 625 (N.D. Cal. 1993) ...................................................... 24

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .............................................................. 5

*Steele v. Hosp. Corp. of Am.*,
  36 F.3d 69 (9th Cir. 1994) ................................................................ 23

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .............................................................. 21

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ............................................................. 24

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  576 F.Supp. 2d 463 (S.D.N.Y. 2008) ................................................... 10

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) .............................................................. 6

*U.S. v. Disla*,
  805 F.2d 1340 (9th Cir. 1986) ............................................................. 20

*U.S. v. Gaskins*,
  849 F.2d 454 (9th Cir. 1988) .............................................................. 19

*U.S. v. Reese*,
  775 F.2d 1066 (9th Cir. 1985) ............................................................. 19

iv

*United Food & Commercial Workers Unions v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013)............................................................14, 16

*United States v. Hutchinson*,
573 F.3d 1011 (10th Cir. 2009)..............................................................7

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987) . While Wimo's Fifth Cause of Action...........17, 18

*United States v. Turkette*,
452 U.S. 576 (1981) ...................................................................................7

*Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*,
996 F.2d 1534 (3d Cir. 1993) ...............................................................16

*Vess v. Ciba-Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003) .................................................................6

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008).........................................................15, 16

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
865 F.Supp.2d 1002 (C.D. Cal. 2011)..................................................17

*Westways World Travel v. AMR Corp.*,
182 F.Supp.2d 952 ...............................................................................15

**Statutes**

18 U.S.C. § 1343...........................................................................17, 21, 22

18 U.S.C. § 1961................................................................................6, 7

18 U.S.C. § 1962.....................................................................*passim*

18 U.S.C. § 1964................................................................................6, 22

18 U.S.C. § 2320.........................................................................2, 17-19

Racketeer Influenced and Corrupt Organization Act .......................*passim*

**Other Authorities**

Fed. R. Civ. Proc. Rule 9(b) ...........................................................2, 6, 21

DEFENDANT PAYPAL HOLDINGS, INC.'S
NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

## INTRODUCTION AND SUMMARY OF ARGUMENT

In the Ninth Circuit, it has long been the law that attenuated theories of secondary liability for copyright and trademark infringement cannot be used to extend liability to payment processors that simply provide buyers and sellers a means for transferring funds when they have agreed upon a transaction.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007).  Payment processors like PayPal Holdings, Inc. ("PayPal") have no obligation to affirmatively police for infringing activity and may not be held liable for secondary infringement absent an allegation of specific, concerted efforts to induce such infringement.  *Id*.

Wimo Labs, LLC's ("Wimo") First Amended Complaint ("FAC"), like its original complaint, comes nowhere near establishing that PayPal has engaged in specific efforts to induce infringement using PayPal's payment processing system, let alone that PayPal has masterminded a corrupt RICO enterprise for doing so.  Rather, the FAC merely establishes that PayPal is a technology platform company that enables online payment processing on behalf of consumers and merchants, which (1) was formed in 1998; (2) was a wholly owned subsidiary of eBay from 2002 until July 2015; (3) processed payment transactions for eBay sellers and buyers; and (4) in 2014, processed $228 billion in payments in 26 currencies across 190 countries around the world, generating revenue of $7.9 billion.

Wimo then advances the legally unsupported position that PayPal's alleged failure to use "reasonable efforts" to root out illegality constitutes "turning a blind eye" to intellectual property rights such that PayPal may be deemed liable as a RICO conspirator.  These colorful but conclusionary assertions are directly contrary to law and do nothing more than transform a defective theory of secondary trademark liability into an equally flawed RICO claim.  In the absence of facts demonstrating that PayPal has conducted the affairs of a criminal enterprise to traffic in counterfeit goods, Wimo cannot state a RICO claim.  Its legally deficient and misguided lawsuit against PayPal should be dismissed with prejudice.

DEFENDANT PAYPAL HOLDINGS, INC.'S
NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

Specifically, Wimo's RICO claim against PayPal fails for the following independent reasons.

*First*, Wimo fails to adequately allege the existence of an association-in-fact "enterprise," which the Supreme Court has held requires "both interpersonal relationships and a common interest." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Wimo's bare allegation that the Defendants "joined together to form an enterprise in fact whose purpose is to sell and profit from counterfeit Lunatik products" (FAC ¶ 320) is not enough, because Wimo must plead facts establishing that PayPal had interpersonal relationships and a common interest with each of the other defendants beyond merely providing them with its routine payment processing services. No such facts have been alleged. Part I, *infra*.

*Second*, Wimo fails to adequately allege that PayPal conducted the affairs of the enterprise. Wimo's allegation that PayPal has processed payments for the sale of counterfeit Lunatik goods (FAC ¶ 321(b)) does not suffice, as such routine business activities do not establish control over an enterprise's affairs. Part II, *infra*.

*Third*, Wimo fails to allege that PayPal committed any predicate acts of trafficking in counterfeit goods or mail or wire fraud. While the FAC alleges that the defendants "trafficked" counterfeit goods in violation of 18 U.S.C. § 2320 (FAC ¶ 326-327), Wimo pleads no facts explaining how PayPal trafficked in counterfeit Lunatik goods. Nor could it. "Trafficking" means "to transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of." 18 U.S.C. § 2320(f)(5). PayPal processes payments. It does not possess or transport goods. Nor does Wimo allege that PayPal committed mail or wire fraud, much less do so with the particularity that Rule 9(b) demands. While the FAC purports to describe in detail 27 eBay listings for allegedly counterfeit goods, none of these allegations even mentions PayPal or describes the time, place or manner of any fraudulent statements that PayPal made

1    through the mail or wires.  Part III, *infra*.

2         *Fourth*, Wimo fails to allege that it suffered injury to its business or property

3    as a result of the commission of the alleged predicate acts or that any harm was

4    suffered by Wimo, as opposed to consumers.  Part IV, *infra*.

5         For each and all of these reasons, the FAC should be dismissed against PayPal

6    with prejudice.  Wimo amended its Complaint once already with the benefit of

7    PayPal's motion to dismiss and failed to plead any material new facts against PayPal.

8    If Wimo had any additional facts to plead to substantiate its claims against PayPal, it

9    presumably would have done so in amending its complaint, particularly in light of

10    the arguments PayPal made in its original motion to dismiss.  Wimo should not be

11    given further leave to amend.  The governing authorities on secondary infringement

12    make clear that Wimo's claim against PayPal borders on the frivolous, and PayPal

13    should not be put to the task and expense of any further motion practice.

14           **ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

15         PayPal is named in only one claim in the FAC, which alleges that PayPal

16    violated the Racketeer Influenced and Corrupt Organization Act by conducting a

17    RICO enterprise through a pattern of racketeering activity.  *See* FAC ¶¶ 316-339.

18         Although the FAC is over 113 pages long, the allegations against PayPal are

19    scant.  Wimo alleges that three identified Seller Defendants and thousands of

20    unnamed Unauthorized Sellers have used eBay to sell counterfeit products bearing

21    Wimo's "Lunatik" marks ("Fake Lunatik Products").  *See generally* FAC ¶¶ 1-6.

22    PayPal's role in this alleged scheme is limited to having processed payments made

23    by buyers for the purchase of allegedly counterfeit goods.  *See, e.g.*, FAC ¶¶ 69, 74,

24    96, 103, 117, 285, 287, 291.  Later, Wimo lifts statements from eBay's 2015 Annual

25    Report, a public PayPal settlement agreement, and other public sources to allege:  (1)

26    the annual amount of transactions PayPal processed in 2014; (2) its revenue in 2014;

27    (3) its merchant services; (4) its availability on eBay; (5) the existence of the PayPal

28    Credit product; and, (6) the fact that PayPal is subject to laws and regulations.  FAC

¶¶ 167-177.  Wimo then asserts that PayPal had an "affirmative obligation to perform the appropriate level of diligence on its merchants" and supposedly had knowledge of and the ability to exercise control over infringing products, including by "terminating its services."  FAC ¶¶ 177-180.

Thereafter, and again lifting from public sources, Wimo alleges: (1) eBay and PayPal mutually benefitted from being part of one company; (2) in 2014, eBay's Board of Directors decided to separate eBay and PayPal but maintain relationships with each other; and, (3) PayPal operates a "proprietary global technology platform that enables merchants and consumers around the globe to connect."  FAC ¶¶ 263-269.  From this, Wimo asserts, without any factual support, that PayPal "has materially aided and abetted and will continue to materially aid and abet the Enterprise."  FAC ¶ 270.

Wimo then alleges, again in conclusory fashion, that PayPal joined a RICO enterprise (comprised of it, eBay, the three Seller Defendants and more than two thousand unnamed Unauthorized Sellers) (FAC ¶¶ 2, 319-320), and participated in the operation and management of a RICO enterprise through (a) "knowingly facilitating the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products" (FAC ¶ 321(a)), and (b) "its operation of a proprietary global technology platform that enables merchants, including the Seller Defendants, and consumers around the globe to connect, processing the transactions for the sale of Fake Lunatik Products and conducting online payment processing for counterfeit goods purchased through ebay.com, including Fake Lunatik Products that infringe on one or more of Plaintiff's Trademarks."  FAC ¶ 321(b).  Elsewhere, Wimo advances naked conclusions that PayPal "has both conspired to traffic in counterfeit goods and aided and abetted the trafficking of counterfeit goods" and "used or caused to be used the mail or wires in furtherance of Defendants' widespread scheme to sell and profit from the sale of counterfeit goods."  FAC ¶ 333.

What is missing from the FAC, however, are *facts* that show the formation of

1    an enterprise, *facts* that show that PayPal conducted the affairs of the enterprise, *facts*

2    that show that PayPal itself committed at least two predicate acts, and *facts* that show

3    that anything PayPal did was a cause of direct harm to Wimo.[1]

4    <center>**ARGUMENT**</center>

5         To survive a motion to dismiss, a complaint must contain sufficient factual

6    matter, accepted as true, to state a claim to relief that is plausible on its face.

7    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must do more than allege

8    mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

9    (2007).  The complaint must include sufficient "factual enhancement" to cross "the

10    line between possibility and plausibility."  *Id.* at 557.  "[W]here the well-pleaded

11    facts do not permit the court to infer more than the mere possibility of misconduct,"

12    the court must dismiss the claim because "the complaint has alleged—but it has not

13    "show[n]"—"that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.

14         Thus, a complaint may not merely "recite the elements of a cause of action."

15    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Rather it must "contain

16    sufficient allegations of underlying facts to give fair notice and to enable the

17    opposing party to defend itself effectively."  *Id.*  To survive a motion to dismiss, "the

18    non-conclusory 'factual content,' and reasonable inferences from that content, must

19    be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. United*

20    *States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  Anything less would

21    unfairly "require the opposing party to be subjected to the expense of discovery and

22    continued litigation."  *Starr*, 652 F.3d at 1216.

23

24    _____

[1] In response to the original Complaint, PayPal's counsel engaged in extensive
discussions with Wimo's counsel regarding the Complaint's deficient allegations,
25    provided substantial legal authority in support of PayPal's contentions, and then
filed its Motion to Dismiss.  After the motion was filed and Wimo's time to amend
26    as a matter of right passed, Wimo sought a stipulation to amend the Complaint.
Despite PayPal's detailed explanations as to the deficiencies in Wimo's original
27    Complaint, as discussed herein, Wimo's First Amended Complaint still does not
plead plausible facts showing the existence of a RICO enterprise, PayPal's
28    conducting an enterprise, PayPal's committing predicate acts, or Wimo's suffering
any RICO injury.

1        The pleading standard is even higher in cases where, as here, the complaint

2   sounds in fraud.  Fed. R. Civ. Proc. Rule 9(b); *see also Vess v. Ciba-Geigy Corp*.,

3   317 F.3d 1097, 1103-05 (9th Cir. 2003).  Rule 9(b)'s heightened pleading standard

4   applies specifically to Wimo's allegations of mail and wire fraud against PayPal.  *See*

5   *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 541 (9th Cir. 1989).  This

6   heightened pleading standard requires a plaintiff alleging fraud under section 1962(c)

7   to identify "the time, place, and manner of each fraud plus the role of each defendant

8   in each scheme."  *Id.* (citations and internal quotations omitted).

9        PayPal is named as a defendant only in Wimo's Fifth Cause of Action, which

10  alleges that PayPal violated RICO by engaging in a "pattern of racketeering activity"

11  in violation of 18 U.S.C. § 1962(c).[2]  To state a claim for a violation of section

12  1962(c), a complaint must allege facts establishing "(1) the conduct (2) of an

13  enterprise (3) through a pattern (4) of racketeering activity."  *Turner v. Cook*, 362

14  F.3d 1219, 1228 (9th Cir. 2004).  Section 1961(1) provides an exhaustive list of the

15  indictable federal and state criminal offenses which are the basis of "racketeering

16  activity."  18 U.S.C. § 1961(1); *see also Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S.

17  479, 495-96 (1985) ("'[R]acketeering activity' consists of no more and no less than

18  the commission of a predicate act.").  To satisfy the "pattern" requirement, a plaintiff

19  must allege the commission of at least two or more related predicate acts.  18 U.S.C.

20  § 1961(5); *Sedima*, 473 U.S. at 496.  In addition, to bring a civil RICO action, the

21  plaintiff must have suffered injury to business or property by reason of the alleged

22  violations of RICO's substantive provisions.  18 U.S.C. § 1964(c).  As described

23  below, none of these requirements are met here.

24

25

26  ───────────────────
    [2] Section 1962(c) states:  "It shall be unlawful for any person employed by or
27  associated with any enterprise engaged in, or the activities of which affect,
    interstate or foreign commerce, to conduct or participate, directly or indirectly, in
28  the conduct of such enterprise's affairs through a pattern of racketeering activity or
    collection of unlawful debt."

## I.  THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THE EXISTENCE OF AN ASSOCIATION-IN-FACT RICO ENTERPRISE.

RICO describes two kinds of associations that fall within the definition of an "enterprise." 18 U.S.C. § 1961(4); *see also United States v. Turkette*, 452 U.S. 576, 581-82 (1981).  The first encompasses organizations, such as corporations, partnerships, and other legal entities.  *Id.*  The second covers "any union or group of individuals associated in fact although not a legal entity." *Id.*  Wimo attempts to allege the latter—a so-called association-in-fact enterprise.  FAC ¶ 319.  An association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. The "association" requires "both interpersonal relationships and a common interest." *Id.*  This means the group must have "joined together" in order to advance their common purpose. *Id.*; *see also United States v. Hutchinson*, 573 F.3d 1011, 1021-22 (10th Cir. 2009) (noting that "there also must be evidence of 'interpersonal relationships' aimed at effecting that purpose") (quoting *Boyle*, 556 U.S. at 946).

Here, Wimo fails to allege any facts that plausibly suggest that PayPal, eBay, the three Seller Defendants and the more than two thousand Unauthorized Sellers[3] joined together in an association-in-fact enterprise for the purpose of selling counterfeit goods.  The very idea of such an enterprise is implausible, not least because the sellers are themselves competitors vying for the sales of their allegedly counterfeit iPhone cases.  *See, e.g., In re Lupron Mktg. and Sales Practices Litig.*, 295 F.Supp.2d 148, 173-174 (D. Mass. 2003) (rejecting enterprise theory where there were "no allegations (and it is difficult to see how there could be) that the thousands of doctors who benefitted from discounted purchases or free samples of Lupron were associated together in any meaningful sense, or were even aware of one another's

_____

[3] FAC ¶ 2 (defining "Unauthorized Sellers" as the "*more than two thousand ebay.com registered sellers*" of counterfeit products) (emphasis in original).

1    existence as participants in a scheme to defraud").

2         Thus, as an initial matter, Wimo's conclusory allegations that the defendants

3    "joined together" or acted "knowingly" (FAC ¶ 320) to form an enterprise are

4    insufficient and are exactly the kind of conclusory allegations unsupported by facts

5    that the Supreme Court disallowed in *Iqbal* and *Twombly*.  It is "clear after *Twombly*

6    that a RICO claim must plead facts plausibly implying the existence of an enterprise

7    with the structural attributes identified in *Boyle*: a shared 'purpose, [interpersonal]

8    relationships among those associated with the enterprise, and longevity sufficient to

9    permit these associates to pursue the enterprise's purpose.'"  *In re Ins. Brokerage

10   Antitrust Litig.*, 618 F.3d 300, 369-70 (3d. Cir. 2010) (quoting *Boyle*, 556 U.S. at

11   946); *see also*, *e.g.*, *Conte v. Newsday, Inc.*, 703 F.Supp.2d 126, 134 (E.D.N.Y. 2010)

12   (dismissing RICO claim where "Plaintiff has not set forth any allegations, outside of

13   conclusory statements, to support a plausible claim that defendants formed an

14   ongoing organization, formal or informal, or the various associates [of the alleged

15   enterprise] function as a continuing unit") (internal quotations omitted); *Elsevier Inc.

16   v. WHPR, Inc.*, 692 F.Supp.2d 297, 307 (S.D.N.Y. 2010) (dismissing RICO claim

17   where "not a single fact is pleaded tending to show that the various sets of named

18   defendants . . .  had any interpersonal relationships").

19       **A.**      **PayPal's Nonexistent Duty To Police IP Infringement Cannot
20                Establish A RICO Enterprise.**

21         The FAC also alleges that PayPal is generally aware that counterfeiting takes

22   place, has an "affirmative obligation" to exercise diligence to stop counterfeiting, and

23   failed to take "reasonable" steps to prevent counterfeiting.  FAC ¶¶ 6, 68, 177-179.

24   These allegations also do not permit a plausible inference that an association-in-fact

25   enterprise to traffic in counterfeit goods exists.

26         To begin with, such allegations fail to state a claim for secondary liability for

27   trademark infringement, much less permit a plausible inference of a criminal

28   enterprise.  To state a claim for secondary trademark liability, a plaintiff must allege

that the defendant either (1) intentionally induced a third party to infringe the plaintiff's mark or (2) continued to supply a product to a third party with actual or constructive knowledge that the product was being used to infringe the protected mark. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983 (9th Cir. 1999). If the defendant provides a service rather than a product, the defendant must be able to monitor and directly control "the instrumentality used by [the] third party to infringe the plaintiff's mark." *Lockheed Martin Corp.*, 194 F.3d at 984; *Perfect 10*, 494 F.3d at 807.

Here, Wimo does not allege that PayPal intentionally induced a third party to infringe Wimo's marks. And although it alleges that PayPal is "in a position to exercise control over the means of any eBay seller's infringement, and based on that control could impose appropriate remedies in accordance with [its] own internal procedures, including, termination of service" (FAC ¶ 179), the Ninth Circuit in *Perfect 10* rejected a claim for secondary liability based on these very allegations:

> Perfect 10 claims that the "product" or "instrumentality" at issue here is the credit card payment network through which Defendants process payments for infringing material. As discussed at length above, this network is not the instrument used to infringe Perfect 10's trademarks; that infringement occurs without any involvement of Defendants and their payment systems. Perfect 10 has not alleged that Defendants have the power to remove infringing material from these websites or directly stop their distribution over the Internet. At most, Perfect 10 alleges that Defendants can choose to stop processing payments to these websites, and that this refusal might have the practical effect of stopping or reducing the infringing activity. This, without more, does not constitute "direct control."

*Id.* (internal citations omitted).[4]

---

[4] In support of its allegation that PayPal has an "affirmative obligation" to exercise diligence to stop counterfeiting, Wimo cites a Settlement Agreement between PayPal and the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"). *See* FAC ¶ 177 (citing endnote lvii). The Settlement Agreement says nothing of the sort, as OFAC does not regulate trademark counterfeiting. It "enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and persons engaged in activities related to the

Likewise, Wimo's allegations that PayPal is generally aware that counterfeiting takes place on eBay and that some unspecified PayPal transactions may involve the sale of counterfeit products also do not give rise to secondary liability for infringement or a plausible inference that PayPal is part of a criminal enterprise to traffic in counterfeit goods that infringe on Wimo's alleged intellectual property rights.  That is because "[t]he law does not impose liability for contributory trademark infringement on [a company] for its refusal to take [] preemptive steps in light of . . . generalized knowledge that counterfeit goods might be sold on its website." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.Supp. 2d 463, 470 (S.D.N.Y. 2008). Such "generalized knowledge is insufficient under the *Inwood* test to impose upon [a company] an affirmative duty to remedy the problem." *Id.* at 508.  Liability for secondary infringement requires "a much higher showing that a defendant knew or had reason to know of specific instances of actual infringement." *Id.* at 510.[5]

Here, there are no allegations that PayPal processed the payments for any of the specific sales identified in the FAC, much less that PayPal knew that a particular sale involved counterfeit goods.  Nor does the FAC allege that Wimo notified PayPal about any alleged sales of counterfeit goods involving the use of PayPal's services, including any of the sales identified in the FAC.  There also is no claim for secondary infringement against PayPal, nor could there be given the authorities discussed above.  If Wimo's allegations do not give rise to a claim for contributory infringement (and they do not), they *a fortiori* do not permit a plausible inference of intentional criminal activity under RICO.

---

proliferation of mass destruction, among others."  PayPal's Request for Judicial Notice, Exh. A, § I.1.

[5] The court in *Tiffany* drew support from the analogous doctrine under copyright law, observing that "trademark infringement liability is more narrowly circumscribed than copyright infringement." *Id.* at 510 n.37 (citing *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 n.19 (1984); *Perfect 10*, 494 F.3d at 806; *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996)).

DEFENDANT PAYPAL HOLDINGS, INC.'S
NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

**B.** **Courts Have Consistently Held That Payment Processing Alone Does Not Support A RICO Enterprise.**

Putting aside the legally flawed premise that PayPal owes a general duty to police for counterfeiting, Wimo fails to allege facts that permit a plausible inference that PayPal, eBay, the three Seller Defendants and the more than two thousand Unauthorized Sellers joined together for the common purpose of selling counterfeit goods. Wimo does not allege that PayPal had any communications with any of the other defendants outside of its routine business, much less interpersonal relationships and communications about forming a criminal enterprise to sell counterfeit goods.

All Wimo can say is that PayPal operates a "proprietary global technology platform" that "enables" merchants and consumers to complete transactions for the sale of Fake Lunatik Products. FAC ¶ 321(b). But, as Wimo acknowledges, this proprietary platform does not enable solely the sale of counterfeit goods; it enables 162 million active customers (FAC ¶ 265) to complete all types of transactions, nearly all of which do not involve the sale of counterfeit goods, much less the sale of Fake Lunatik Products. Nothing about the operation of this legitimate business platform establishes the kind of interpersonal relationships required to plead an association-in-fact enterprise formed for the purpose of purveying counterfeit products. It is equally if not far more likely that PayPal operates its proprietary global technology platform to enable everyone, not counterfeiters specifically, to fund payments and that of the millions of merchants and consumers who use PayPal, there may be some who unilaterally chose to use PayPal to process their payment for a transaction involving the sale of a counterfeit product.

To state a valid claim, however, Wimo must allege facts that go beyond a mere description of routine business activity to permit a "plausible" inference that the defendant engaged in unlawful, as opposed to lawful, activity. *Twombly*, 550 U.S. at 556. Where, as here, the Court may infer from the complaint an "obvious alternative explanation" suggesting lawful conduct, a plaintiff fails to meet its burden under

*Twombly.*  550 U.S. at 567-69; *see also, e.g., Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (applying *Twombly* to RICO claim and affirming dismissal of complaint where allegations permitted an "obvious alternative explanation" suggesting lawful conduct).

*Twombly* is particularly apposite here, because the "enterprise element of RICO claims is a close analogue" to the "agreement in restraint of trade" element of the Sherman Act claim at issue in *Twombly*.  *In Re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370.  In *Twombly*, the Court had to decide whether allegations consistent with independent parallel (and lawful) conduct by the defendants crossed the line into plausible illegality in the form of an agreement to inflate prices and stay out of each other's markets.  Here, the Court must decide whether the conclusory allegation that PayPal's services "enable" the sale of some counterfeit goods makes it plausible that PayPal formed a criminal enterprise to traffic in counterfeit goods.  It does not.

Alleging behavior that is consistent with either lawful activity or an unlawful agreement is not enough to permit an inference of the latter:

> [W]e hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.

*Twombly*, 550 U.S. at 556.  Thus, in *Twombly*, the fact that several firms engaged in the same conduct was not enough to permit an inference of an *ex ante* agreement to do the same thing because the mere result (identical conduct) was not enough to sustain an allegation that it was an agreed-upon objective.

Likewise, Wimo's allegation of the supposed result (the provision of services that enable the purchase of counterfeit goods) is not enough to infer an enterprise to sell counterfeit goods.  It permits no greater inference than that PayPal provided routine business services to the general public—some of who may have innocently

DEFENDANT PAYPAL HOLDINGS, INC.'S
NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

used PayPal to purchase a counterfeit product.  *See, e.g., Rosner v. Bank of China*, 528 F.Supp.2d 419, 428-29 (S.D.N.Y. 2007); *Jubelirer v. MasterCard Int'l, Inc.*, 68 F.Supp.2d 1049, 1053 (W.D. Wis. 1999).

In *Rosner*, for example, the plaintiff, Rosner, alleged that Bank of China was part of a fraudulent scheme involving IFS Inc. ("IFS") and Sociedade Comercial Siu Lap Limitada ("Siu Lap") in which IFS and Siu Lap solicited investors in foreign currencies at inflated prices, virtually guaranteeing the investors would lose money. 528 F.Supp.2d at 422-23.  As to the Bank, Rosner alleged that once investors provided funds to IFS, IFS would transfer the funds through the Bank's New York and Macau branches to convert the funds from U.S. dollars to Hong Kong dollars. *Id.* at 422-23.  Rosner further alleged that the Bank "knew about the fraudulent scheme and its role in the fraudulent scheme, and knowingly used its correspondent relationships with United States banks to transfer the stolen funds." *Id.* at 423.  The court dismissed Rosner's RICO claim finding that he failed to adequately allege the existence of an "enterprise" because the only factual, and not conclusory, allegation supporting this claim was that the Bank provided "indispensable banking services" to IFS and Siu Lap.  *Id.* at 428.  As the court concluded, the "fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose to violate RICO." *Id.* at 428-29.

Likewise, in *Jubelirer*, the plaintiff, Jubelirer, asserted a RICO claim against MasterCard International, Inc. ("MasterCard") and MBNA America Bank ("MBNA"), alleging that they formed a RICO enterprise with an Internet casino to engage in unlawful gaming.  *See* 68 F.Supp.2d at 1051-52.  Jubelirer alleged that MasterCard provided credit card processing services and MBNA provided the credit. *Id.*  In dismissing his claim, the court found that Jubelirer failed to allege the existence of an association-in-fact enterprise because an "enterprise must be more than a routine contractual combination for the provision of financial services." *Id.* at

1053.  MasterCard, the court observed, simply operated "a computer system for processing consumer purchases," and it offered this service to "more than 10 million merchants" throughout the world.  *Id.* at 1052-53.  MBNA simply "collects the debt incurred by its customers regardless of the authorized merchant from whom the customer purchased the goods or services, no doubt giving little thought to the ten million MasterCard merchant subscribers except to the extent that the broad array of participating merchants is appealing to its customers."  *Id.* at 1053.  But, the court found, there is nothing about this arrangement that plausibly suggests the existence of an association-in-fact enterprise: "Each party conducts its own affairs which include certain contracts for services with others."  *Id.*

Here, too, the allegation that PayPal—a company in the business of facilitating millions of global payments on a daily basis— may have provided a payment processing service that "enabled" certain people to process payments online when selling purportedly counterfeit goods provides no basis for inferring an unlawful purpose or an intention to join together in an enterprise with those people for the purpose of carrying forth that unlawful objective.

## II.  THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THAT PAYPAL *CONDUCTED* THE AFFAIRS OF THE ENTERPRISE.

To state a RICO claim against PayPal, Wimo must allege not only the existence of an enterprise, it must allege that PayPal participated in the conduct of the enterprise's affairs.  18 U.S.C. § 1962(c).  "In order to 'participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' [a defendant] must have some part in *directing* those affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis added).  Thus, Wimo must plead facts sufficient to show that PayPal played some part in directing the affairs of the enterprise.  It is not enough to allege that PayPal directed its own affairs.  *Id.*; *see also, e.g., United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 853-56 (7th Cir. 2013).  "Simply alleging that certain entities provide services which are helpful to an enterprise

without any allegations that those entities exert any control over the enterprise does not sufficiently allege a claim under RICO against those entities." *City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 449 (2d Cir. 2008), overruled on other grounds by *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010); *see also Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) ("Simply performing services for the enterprise does not rise to the level of direction.").

Here, the FAC comes nowhere close to alleging facts that lead to a plausible inference that PayPal operated, managed or exerted any control over the affairs of the enterprise. Nowhere does the FAC describe how PayPal controlled or directed the Enterprise in any promotion, advertisement, or sale of counterfeit products by eBay or the Seller Defendants. It offers only a boilerplate recitation of the *Reves* operation and management requirement, asserting that "eBay and PayPal have participated in the operation and management of the Enterprise by knowingly facilitating the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products." FAC ¶ 321(a). As the Supreme Court held in *Iqbal* and *Twombly*, however, reciting legal conclusions is not enough. Wimo must plead facts that show how PayPal managed the affairs of the Enterprise, and it fails to do this.[6]

It also is not enough to allege that PayPal "participated in the operation and management of the Enterprise by [. . .] its operation of a proprietary global technology platform that enables merchants" to process transactions for the sale of

---

[6] Wimo's allegations that PayPal "materially aided and abetted and will continue to materially aid and abet the Enterprise" do not save its RICO claim or excuse Wimo from having to plead PayPal's management of the affairs of the Enterprise. FAC ¶ 270. First, nearly all of the courts that have analyzed the issue have concluded that there is no aiding and abetting liability under section 1962(c). *See, e.g., Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 657 (3d Cir. 1998); *In re Countrywide Financial Corp. Mortgage Marketing and Sales Practices Litigation*, 601 F.Supp.2d 1201, 1219 (S.D. Cal. 2015) (rejecting aiding and abetting liability for civil RICO and dismissing RICO claim). Second, even if aiding and abetting were permitted, Wimo would still have to satisfy the *Reves* operation and control requirement. *See Westways World Travel v. AMR Corp.*, 182 F.Supp.2d 952, 962 (C.D. Cal. 2001) (dismissing aiding and abetting RICO claim because plaintiff failed to plead facts establishing defendant participated in the operation or management of the RICO enterprises).

Fake Lunatik Products.  FAC ¶ 321(b).  This allegation does not support an inference of a level of cooperation beyond that "inherent in every commercial transaction" involving payment processing.  *United Food*, 719 F.3d at 856; *see also, e.g., Walter*, 538 F.3d at 1249; *Smokes-Spirits.com, Inc.*, 541 F.3d at 449.  At most, the allegation may show that PayPal operated its business to advance its own commercial interest, but it does not show "control" over the enterprise.  *See United Food*, 719 F.3d at 855 (affirming dismissal of RICO claim where "nothing in the complaint reveals how one might infer that [the defendants'] communications or actions were undertaken on behalf of the *enterprise* as opposed to on behalf of [the defendants] in their individual capacities, to advance their individual self-interests") (emphasis in original); *see also, e.g., Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539-40 (3d Cir. 1993) ("It cannot be said that by merely performing what are generic financial and related services to an insurance company, even if they are later found to be deficient, an accounting firm has opened itself to liability under the federal racketeering statute.").

Likewise, the FAC's suggestion that PayPal has an affirmative obligation to perform diligence to prevent merchants from selling counterfeit goods and that PayPal has failed to take reasonable measures to stop or restrict the sale of counterfeit goods on eBay (FAC ¶¶ 177, 180) is not enough to state a claim both because it is contrary to established law and because an alleged failure to act does not show *direction*.  Not only has the Ninth Circuit specifically held that payment processors have no affirmative obligation to police for potential intellectual property infringement, *see* Part I, *supra*, the Ninth Circuit also has held that, under RICO, to establish control over an enterprise, "[i]t is not enough that [the defendant] failed to stop illegal activity."  *Walter*, 538 F.3d at 1248.  *Reves* requires "'some degree of direction.'"  *Id*.  The purported dereliction of a nonexistent duty simply does not constitute control over the affairs of the alleged enterprise.

Accordingly, Wimo has failed to adequately allege that PayPal *conducted* the

affairs of an enterprise.

## III.  THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THAT PAYPAL COMMITTED ANY PREDICATE ACTS.

In instances where "RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal. 2011) (citations omitted, emphasis in original); *see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("[t]he focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(c)."). While Wimo's Fifth Cause of Action for violation of RICO (1962(c)) relies upon the predicate acts of Trafficking in Counterfeit Goods (18 U.S.C. § 2320) and Wire Fraud (18 U.S.C. § 1343), the FAC does not plead facts that establish the commission of these two predicate acts by PayPal. Wimo has therefore failed to plead a pattern of racketeering activity. FAC ¶¶ 325-331.

### A.  18 U.S.C. § 2320(a)(1):  Trafficking in Counterfeit Goods

To plead the predicate act of Trafficking in Counterfeit Goods, Wimo must allege that PayPal intentionally trafficked in goods and knowingly used a counterfeit mark on or in connection with those goods. 18 U.S.C. § 2320(a)(1). Trafficking is defined to mean "to transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of." 18 U.S.C. § 2320(f)(5).

While the FAC contains a long list of instances where the allegedly infringing products were offered for sale, Wimo fails to allege any facts that plausibly suggest that PayPal engaged in trafficking. *See* FAC ¶¶ 326(a)-(o). In the twenty-seven instances identified in the FAC, Wimo identifies:  (1) the date of the listing; (2) who was selling the product on eBay; and, (3) whether the seller caused the listing to be

1    posted or whether eBay solicited a buyer.  Nowhere is PayPal mentioned or alleged

2    to have taken possession of or to have engaged in "transporting, transferring or

3    otherwise disposing of" counterfeit goods.  Nor could Wimo ever make such

4    allegations, given the nature of PayPal's business.  Indeed, throughout the FAC,

5    PayPal is only generally alleged to have processed payments and conducted online

6    payment processing.  FAC ¶¶ 39, 321(b).

7         Wimo's FAC also fails to include any allegations showing that PayPal

8    knowingly used a counterfeit mark and intentionally trafficked in counterfeit goods.

9    Indeed, Wimo does not even allege that it informed PayPal of the allegedly

10   infringing activity despite the thousands of sales alleged in the FAC.  Instead, Wimo

11   offers only conclusory allegations that the "[d]efendants participated in the scheme

12   knowing full well that the goods" were counterfeit, and that the "[d]efendants'

13   participation in the scheme was intentional."  FAC ¶¶ 327, 328.

14        The remaining trafficking allegations fare no better.  Wimo lumps PayPal with

15   the other defendants and simply recites the definition of trafficking found in section

16   2320(f)(5) without alleging any facts that show that PayPal took actions that meet

17   this definition.  *See e.g.*, FAC ¶ 326 ("Defendants transported, transferred, or

18   otherwise disposed of – and attempted to transport, transfer, or otherwise disposed of

19   – counterfeit goods"); FAC ¶ 327 ("Defendants participated in the scheme knowing

20   full well that the goods they were (1) transporting, transferring, or otherwise

21   disposing of; (2) attempting to transport, transfer, or otherwise dispose of; and/or (3)

22   making or obtaining control of with intent to so transport, transfer, or dispose of,

23   were counterfeit."); FAC ¶ 328 (same).  Even if the recitation of the elements of

24   trafficking were sufficient to state a claim – it is not – Wimo cannot avoid its

25   pleading requirements by lumping all of the defendants together.  *See Persico*, 832

26   F.2d at 714 ("[t]he focus of  section 1962(c) is on the individual patterns of

27   racketeering engaged in by a defendant, rather than the collective activities of the

28   members of the enterprise, which are proscribed by section 1962(c).")

18

Wimo's conclusory allegations that "PayPal has both conspired to traffic in counterfeit goods and aided and abetted the trafficking of counterfeit goods," FAC ¶ 333, also do not save Wimo's RICO claim.  First, Wimo has not alleged any facts that support the allegation that PayPal entered into a conspiracy to violate section 2320.  To plead a conspiracy, Wimo must allege (1) an agreement between parties to accomplish an illegal objective; (2) one or more overt acts in furtherance of that illegal purpose committed by any of the parties; and, (3) intent necessary to commit the underlying offense (*i.e.*, that defendant had knowledge of the conspiracy's illegal objective and agreed to pursue it)).  *See U.S. v. Reese*, 775 F.2d 1066, 1071 (9th Cir. 1985).  Nowhere does Wimo plead PayPal's agreement with eBay, the three Seller Defendants, or the thousands of unnamed Unauthorized Sellers to traffic in counterfeit goods, PayPal's overt acts in furtherance of trafficking in counterfeit goods, or facts plausibly suggesting PayPal's intent to traffic in counterfeit goods.  For the same reasons that its allegations regarding an enterprise fail, so too does its claim of conspiracy.

Second, Wimo's allegations that PayPal aided and abetted violations of 18 U.S.C. § 2320 fail as a matter of law and fact.  *First*, aiding and abetting a RICO violation is not a viable legal theory.  *See Rolo*, 155 F.3d at 657; *In re Countrywide Financial Corp. Mortgage Marketing and Sales Practices Litigation*, 601 F.Supp.2d at 1219 (rejecting aiding and abetting liability for civil RICO and dismissing RICO claim).  *Second*, even if aiding and abetting were a viable theory (it is not), to plead aiding and abetting liability, Wimo must allege "(1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense." *U.S. v. Gaskins*, 849 F.2d 454, 459 (9th Cir. 1988); *see also, U.S. v. Disla*, 805 F.2d 1340, 1352 (9th Cir. 1986) (aiding and abetting another to commit a crime requires showing "not only that the

defendant participated in the criminal venture, but that he intentionally assisted the venture's illegal purpose.") (citation and internal quotation marks omitted). Nowhere does Wimo plead facts that plausibly suggest PayPal specifically intended to "transport, transfer or otherwise dispose of" counterfeit goods or facilitate the twenty-seven instances of trafficking by the Seller Defendants.

Wimo's allegations that PayPal had an "affirmative obligation to perform the appropriate level of diligence on its merchants," failed to take reasonable steps to prevent counterfeiting, turned a "blind eye" to it, and thus, supposedly had knowledge of and the ability to exercise control over infringing products (FAC ¶¶ 6, 177-180) also do not establish that PayPal *knew* about the twenty-seven trafficking violations alleged in the FAC. To state a claim for RICO, a plaintiff must allege the commission of *criminal* predicate acts. *See Sedima*, 473 U.S. at 495. Allegations that a defendant failed to perform sufficient diligence, failed to take reasonable steps, or failed to exercise control are not allegations which attach criminal liability because they do not establish specific intent. *See Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991) (an element of the predicate acts is specific intent).

Indeed, as set forth in Section I, *supra*, Wimo's attempt to plead a RICO claim of trafficking based on a failure to take affirmative steps to prevent counterfeiting is nothing more than an end run around *Perfect 10*. In *Perfect 10*, the Ninth Circuit held that payment processors do not have an obligation to affirmatively police for infringing activity, and they may not be held liable for contributory infringement where they have not taken steps to foster infringement or promote their systems as a means to infringe. *Perfect 10*, 494 F.3d at 807. If such actions or omissions are not sufficient to state a claim for contributory infringement, they cannot be the basis for finding intentional criminal activity under RICO.

**B.    18 U.S.C. § 1343: Wire fraud**

To plead the predicate act of Wire Fraud, Wimo must allege that PayPal devised a scheme or artifice with the specific intent to defraud and used interstate telephone wires in furtherance of the scheme or artifice. *Orr v. Bank of Am.*, 285 F.3d 764, 782 (9th Cir. 2002). Additionally, Wimo must satisfy Rule 9(b). *Moore*, 885 F.2d at 540, 541. "[M]ere conclusory allegations of fraud are insufficient" because allegations "of fraud under section 1962(c) must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Id.* (citations and internal quotations omitted). Furthermore, in a case of multi-defendant fraud:

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.". . . In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." [Citations omitted.]

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

Wimo's FAC alleges no facts establishing that PayPal engaged in two or more instances of wire fraud. The FAC does not even plead facts suggesting that PayPal was aware that Wimo or customers were being defrauded in connection with the twenty-seven sales of counterfeit Lunatik products, let alone that PayPal intended to act in a way that would further this fraud. Again, alleging PayPal's general knowledge that the sale of counterfeit goods may be taking place among its 162 million users and that PayPal did not take "reasonable" steps to prevent them, does not rise to the level of criminal activity. Paragraphs 330 and 331 contain Wimo's allegations of "Multiple Instances of Wire Fraud" but fall far short of pleading any violation of 18 U.S.C. § 1343 against PayPal. Paragraph 330 offers only a recitation of the elements of wire fraud and improperly lumps the defendants together. *See* ¶ 330 ("Specifically, Defendants' misappropriation of Plaintiff's intellectual property

[. . .] constitutes a 'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises,' within the meaning of Section 1343, and Defendants have knowingly transmitted or caused to be transmitted by means of wire communication in interstate and foreign commerce."). And the only mention of PayPal is that the Enterprise used PayPal's "proprietary global online technology platform" which "enables merchants and consumers around the globe to connect." *Id.* But nowhere does Wimo allege *facts* that PayPal engaged in any violation of section 1343. Similarly, Paragraphs 331(a)-(o) provide detailed allegations as to which of the Seller Defendants listed Fake Lunatik Products on eBay.com, but include no mention of PayPal.

Wimo's later "Summary of Pattern of Racketeering Activity Alleged Against Each RICO Defendant" fares no better. There, Wimo merely recites the elements of wire fraud by alleging that PayPal, through "its proprietary global online technology platform that enables merchants and consumers around the globe to connect," "used or caused to be used the mail or wires in furtherance of Defendants' wide-spread scheme to sell and profit from the sale of counterfeit goods." FAC ¶ 333. Again, Wimo offers no facts to support this conclusion and the FAC's allegations of PayPal's use of a "global online technology platform" to connect merchants and consumers does nothing to satisfy Wimo's pleading burden. Wimo has simply rephrased its allegations that PayPal operated a "global technology platform," engaged in processing payments and conducted online payment processing (FAC ¶ 321(b)). None of this conduct, however, constitutes wire fraud.

## IV.   THE FIRST AMENDED COMPLAINT DOES NOT ESTABLISH THAT WIMO SUFFERED ANY RICO INJURY.

To have standing to bring a RICO claim, Wimo must have suffered (1) injury to business or property (2) "by reason of" the alleged violations of RICO's substantive provisions. 18 U.S.C. § 1964(c); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267-68 (1992). The requirement that a plaintiff have proof of injury to

business or property is of "restrictive significance." *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994).  It ensures that "RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Id*.  RICO plaintiffs must have "proof of concrete financial loss, not 'mere injury to a valuable intangible property interest.'" *Diaz v. Gates*, 380 F.3d 480, 483 (9th Cir. 2004).

RICO also imposes a strict causation requirement:  the RICO injury alleged by Wimo must "flow from the commission of the predicate acts." *Sedima,* 473 at  497; *see also Holmes*, 503 U.S. at 268 (plaintiff must show that the RICO violation "not only was a 'but for' cause of his injury, but was the proximate cause as well").  As discussed above, Wimo has failed to properly plead any predicate acts by PayPal.  In the absence of any predicate acts committed by PayPal, Wimo has not suffered any injury proximately caused by PayPal.  *See Sedima*, 473 U.S. at 497 (damages sought must "flow from the commission of the predicate acts.").  For this reason alone, Wimo lacks RICO standing.  But Wimo lacks standing for other reasons as well.

First, Wimo's allegations about harm to consumers do not establish standing. If consumers purchased counterfeit goods, and as a result failed to purchase Wimo's goods (a huge assumption), the consumers suffered the direct harm.  Any harm to Wimo would be "purely contingent" and "too remote" to satisfy RICO's direct relationship requirement.  *See Holmes*, 503 U.S. at 271; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–58 (2006) (applying *Holmes* and holding that the RICO plaintiffs' theory that defendants "harmed [them] by defrauding the New York tax authority and using the proceeds from the fraud to offer lower prices designed to attract more customers" was insufficient to confer standing because the "direct victim of this conduct was the State of New York" that lost tax revenue, not plaintiffs); *Rezner v. Bayerische Hypo–Und Vereinsbank AG*, 630 F.3d 866, 874 (9th Cir. 2010) (plaintiff failed to establish standing because he was not the direct victim of the defendant's fraudulent conduct); *Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*, 2008 WL 269080, *7 (E.D.Cal. Jan. 29, 2008)

1  (dismissing RICO counterclaim for lack of standing because "only the consumers'
2  subsequent intervening decision not to purchase defendants' products or services
3  could be construed as the 'direct cause' of defendants' injuries, as opposed to the
4  alleged RICO violation (defrauding the consumers)").

5         Second, allegations of diverted sales, loss of trademark value and loss of
6  business goodwill and reputation based on lost sales (*see* FAC ¶ 336) do not establish
7  RICO standing because they are not injuries to business or property.  To constitute
8  injury to business or property for RICO purposes, a plaintiff must be "out of pocket"
9  in some material way.  *See e.g., Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d
10 1137, 1148 (9th Cir. 2008) (affirming dismissal of RICO claim for lack of proximate
11 causation because the "court would have to engage in a speculative and complicated
12 analysis to determine what percentage of Sybersound's decreased sales" could be
13 attributed to the predicate acts of copyright infringement and fraud as opposed to the
14 defendant's competitive decisions or a customer's preferences for a competitor's
15 products); *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992)
16 (RICO injury requires proof of concrete financial loss, and not mere injury to
17 valuable intangible property interests); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976
18 F.2d 1303, 1311 (9th Cir. 1992) (complaint defective because "[i]t is impossible to
19 determine . . . whether the plaintiffs are claiming loss of opportunity to realize profits
20 or loss of specific identifiable profits"); *Lancaster Community Hosp.*, 940 F.2d at
21 406 (loss of market share is too amorphous to support a claim for RICO); *Sheperd v.
22 Am. Honda Motor Co. Inc.*, 822 F.Supp. 625, 631 (N.D. Cal. 1993) (granting motion
23 to dismiss where plaintiff failed "to allege a concrete financial loss which resulted
24 directly from the wrongful conduct of defendants").

25        Third, Wimo's allegations that it suffered injury based on the "direct expenses
26 from [its] efforts to stop the sale of Fake Lunatik Products through eBay's ineffective
27 takedown procedures" (FAC ¶ 336) and "incurred substantial costs actively
28 monitoring listings on ebay.com" to uncover evidence of infringement (FAC ¶ 61) do

not establish standing against PayPal – particularly where Wimo alleges no costs incurred in connection with any purported wrong by PayPal.  Indeed, Wimo does not allege that its investigative costs arose from the commission of the alleged predicate acts, but from its unilateral decision to begin monitoring eBay's "ineffective takedown procedures" in February 2013.  FAC ¶¶ 61, 336.  That was a year before the earliest alleged predicate act.  FAC ¶ 326(e).  One's injury, however, cannot be the result of a later act.  *See Hollander v. Flash Dancers Topless*, 173 Fed. Appx. 15, *17 (2d Cir. 2006) (rejecting RICO damage allegations based upon investigative and other costs that arose from the plaintiff's acts, not the defendants' RICO violations).  Accordingly, Wimo's allegations of "investigation expenses" do not establish standing as a matter of law because the expenses do not constitute injury to business or property and were not alleged to have been caused by the predicate acts.  *See Dunmore v. Dunmore*, 2013 WL 5569979, *6 (E.D.Cal. Oct. 9, 2013) (discussing cases where "attorneys' fees and legal expenses cannot constitute an injury sufficient to confer standing because the injury is either too remote to the alleged conduct or it fails to qualify as an injury to 'business or property.'"); *Knit With v. Knitting Fever, Inc.*, 2012 WL 2938992, *7 (E.D. Pa. Jul. 19, 2012) (costs incurred in investigating defendant's wrongdoing are not generally "deemed direct injury flowing from a defendant's illegal conduct"); *Rylewicz v. Beaton Serv., Ltd.,* 698 F.Supp. 1391 (N.D. Ill. 1988) (time, effort and money spent investigating the defendant's conduct is not an injury to "business or property").

## CONCLUSION

For the reasons stated above, PayPal respectfully requests that its motion to dismiss be granted and the claim against PayPal dismissed with prejudice.  The First Amended Complaint against PayPal lacks factual support; Wimo voluntarily amended its pleading after PayPal filed its Motion to Dismiss the Complaint; and PayPal should not be put to the task and expense of repeated motion practice.

1    Dated:        December 15, 2015              ANNETTE L. HURST
                                                  MARK P. WINE
2                                                 KHAI LEQUANG
                                                  Orrick, Herrington & Sutcliffe LLP
3

4

5                                                 By:  /s/ Annette L. Hurst
                                                      ANNETTE L. HURST
6                                                     Attorneys for Defendant
                                                      PayPal Holdings, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28