DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

JAMES A. BOWMAN (S.B. #220227)
jbowman@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

R. BRUCE RICH (*pro hac vice*)
bruce.rich@weil.com
RANDI W. SINGER (*pro hac vice*)
randi.singer@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant eBay Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WIMO LABS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EBAY, INC., et al.,<br><br>Defendants. | Case No. 8:15-cv-01330-JLS-KES<br><br>**DEFENDANT EBAY INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIFTH CAUSE OF ACTION OF THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Proposed Order, and Declaration of David R. Eberhart filed concurrently]<br><br>Hearing Date: January 29, 2016<br>Time: 2:30 p.m.<br>Judge: Hon. Josephine L. Staton<br>Dept.: Courtroom 10A<br>Am. Compl.: November 20, 2015 |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 29, 2016, at 2:30 p.m., in Courtroom 10A of the Federal District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California 92701, defendant eBay Inc. ("eBay"), by and through its counsel of record, will and hereby does move this Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Amended Fifth Cause of Action for Violations of Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c) brought by plaintiff Wimo Labs, LLC ("Wimo") with prejudice, because it fails to state any claim upon which relief can be granted. Specifically, eBay moves to dismiss this claim, on the following grounds:

- The RICO cause of action is merely an infringement claim masquerading as a RICO claim;

- The First Amended Complaint ("FAC") does not adequately plead that eBay conducted and directed the affairs of the alleged enterprise;

- The FAC does not adequately plead a RICO enterprise between the defendants;

- The FAC does not adequately plead predicate acts of trafficking in counterfeit marks and wire fraud; and

- Wimo's failure to plead any facts sufficient to support the RICO claims in the FAC demonstrates that further amendment would be futile.

This motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which took place by telephone on December 8, 2018, as well as prior telephonic meet and confers between counsel for the parties on virtually identical issues with the original complaint which were held on September 25, October 5, and October 8, 2015. Additionally, on October 1, 2015, eBay provided a brief written summary of its arguments in support of dismissing

1   the Fifth Cause of Action, including citations to key cases. A copy of that letter is

2   attached as Exhibit B to the Declaration of David R. Eberhart, concurrently filed

3   herewith.

4          This motion is based on this Notice of Motion, the following Memorandum

5   of Points and Authorities, the concurrently filed Proposed Order, the other

6   pleadings on file in this matter, the Reply that eBay intends to file, and any further

7   argument that the Court may allow.

8

9          Dated:  December 15, 2015

10                                                O'MELVENY & MYERS LLP

11                                                By:   /s/ David R. Eberhart
                                                          David R. Eberhart
12
                                                  Attorneys for Defendant
13                                                eBay Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS .................................................................. 4

LEGAL STANDARD ......................................................................... 5

ARGUMENT ........................................................................................ 6

    I.    Wimo Fails To Allege A RICO Claim Generally. ............................ 6

    II.    Wimo Fails To Allege Sufficiently Conduct Of A RICO Enterprise. ..................................................................................... 8

    III.    Wimo Fails To Allege An Enterprise Among The Defendants......... 13

    IV.    Wimo Fails To Allege RICO Predicate Acts Sufficiently.................. 18

        A.    Wimo's Allegations Cannot Support The Trafficking Claim............................................................................. 18

            1.    Wimo Concedes eBay Does Not Traffic In Counterfeits. ................................................. 19

            2.    Wimo Cannot Allege Knowing Use Of Counterfeit Marks. ................................................ 21

        B.    Wimo Cannot Allege Wire Fraud Or Mail Fraud By eBay. .... 22

            1.    Wimo Fails To Plead Knowing Participation. .................. 22

            2.    Wimo Fails To Allege Any Intent To Defraud By eBay............................................................. 24

CONCLUSION................................................................................... 25

# TABLE OF AUTHORITIES

Page

## CASES

*Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.*,
   No. CV 11–1675 CAS (PJWx), 2012 WL 1400302 (C.D. Cal. Apr. 23,
   2012) ................................................................................................. 19, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................... 5, 10, 25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 5, 10

*Boyle v. United States*,
   556 U.S. 938 (2009) .................................................................... 13, 14

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009) .......................................................... 8, 9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................ 12

*Evercrete Corp. v. H-Cap Ltd.*,
   429 F. Supp. 2d 612 (S.D.N.Y. 2006) ........................................... 7, 23

*First Nationwide Bank v. Gelt Funding Corp.*,
   820 F. Supp. 89 (S.D.N.Y. 1993) ..................................................... 17

*Gomez v. Guthy-Renker, LLC*,
   No. EDCV 14-1425-JGB, 2015 U.S. Dist. LEXIS 90725 (C.D. Cal.
   July 13, 2015) ................................................................................... 15

*Goren v. New Vision Int'l*,
   156 F.3d 721 (7th Cir. 1998) .............................................................. 8

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
   955 F.2d 1143 (7th Cir. 1992) ........................................................... 24

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
   No. 2:11-CV-7166-MRP, 2012 WL 10731957, (C.D. Cal. June 29, 2012) ....... 14

*In re Insurance Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) .............................................................. 17

*In re Jamster Mktg. Litig.*,
   MDL No. 1751, 2009 WL 1456632 (S.D. Cal. May 22, 2009) ........... 15

*In re: Mastercard Int'l Inc.*,
   132 F. Supp. 2d 468 (E.D. La. 2001) .................................................. 8

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
   98 F. Supp. 2d 480 (S.D.N.Y. 2000) ................................................... 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Jubelirer v. MasterCard Int'l, Inc.*,
  68 F. Supp. 2d 1049 (W.D. Wis. 1999) ........................................... 9, 10

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ........................................................ 12

*Md.-Nat'l Capital Park & Planning Comm'n v. Boyle*,
  203 F. Supp. 2d 468 (D. Md. 2002) ................................................. 2

*MDT Corp. v. N.Y. Stock Exch. Inc.*,
  858 F. Supp. 1028 (C.D. Cal. 1994) ............................................... 24

*Menasco, Inc. v. Wasserman*,
  886 F.2d 681 (4th Cir. 1989) ........................................................... 2

*Miranda v. Ponce Fed. Bank*,
  948 F.2d 41 (1st Cir. 1991). ............................................................ 2

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) ........................................................... 5

*Naso v. Park*,
  850 F. Supp. 264 (S.D.N.Y. 1994) ................................................... 6

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ............................................... 2, 15, 16

*Papasan v. Allain*,
  478 U.S. 265 (1986) ......................................................................... 5

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .................................................................... 8, 13

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ........................................................... 6

*Rosner v. Bank of China*,
  528 F. Supp. 2d 419 (S.D.N.Y. 2007) ...................................... 15, 16

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984) ............................................................ 6

*Slack v. Int'l Union of Operating Eng'rs*,
  No. C-13-5001 EMC, 2014 WL 4090383 (N.D. Cal. Aug. 19, 2014) ............... 10

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) ........................................................... 6

iii

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Stewart v. Wachowski*,
No. CV 03-2873 MMM (VBKx), 2005 WL 6184235 (C.D. Cal.
June 14, 2005)..................................................................................... 6

*Tiffany (NJ) Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010) ..........................................................passim

*Tiffany (NJ) Inc. v. eBay, Inc.*,
576 F. Supp. 2d 463 (S.D.N.Y. 2008) ........................................ 12, 24

*United Food & Commercial Workers Unions & Emp'rs Midwest Health*
*Benefits Fund v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) ................................................. 10, 11, 25

*United States v. Cone*,
714 F.3d 197 (4th Cir. 2013) ............................................................ 19

*United States v. Jinian*,
725 F.3d 954 (9th Cir. 2013) ............................................................ 22

*United States v. Sultan*,
115 F.3d 321 (5th Cir. 1997) ............................................................ 19

*United States v. Turkette*,
452 U.S. 576 (1981) ........................................................................... 2

*Univ. of Md. v. Peat, Marwick, Main & Co.*,
996 F.2d 1534 (3d Cir. 1993) ........................................................... 10

*Vulcan Golf, LLC v. Google Inc.*,
No. 07-3371, 2008 U.S. Dist. LEXIS 60608 (N.D. Ill. July 31, 2008).........17, 18

*Wagh v. Metris Direct, Inc.*,
363 F.3d 821 (9th Cir. 2003) ............................................................. 2

*Wallis v. Levine*,
No. 12 C 5285, 2013 WL 53896 (N.D. Ill. Jan. 2, 2013)................... 20

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) .................................................... 10, 13

*Walter v. Palisades Collection, LLC*,
480 F. Supp. 2d 797 (E.D. Pa. 2007)................................................. 6

*Wecosign, Inc. v. IFG Holdings, Inc.*,
845 F. Supp. 2d 1072 (C.D. Cal. 2012)........................................ 3, 6

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................. 4

iv

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATUTES**

15 U.S.C. § 1114.................................................................................................7

18 U.S.C. § 1343.....................................................................................3, 18, 22

18 U.S.C. § 2320............................................................................3, 18, 19, 20

**OTHER AUTHORITIES**

H.R. Rep. No. 98-997, 98th Congress (1984) ..........................................20

Ninth Circuit Model Criminal Jury Instructions, No. 8.124 (2010 ed.)...................22

S. Rep. No. 98-526, 98th Congress (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627 .................................................................................................22

## INTRODUCTION

eBay is the world's largest online marketplace, with well over 800 million active listings at any given time. Contrary to the premise of this lawsuit, eBay invests heavily in preventing counterfeiting, and courts have repeatedly endorsed eBay's effective and extensive efforts to protect users and brand owners from counterfeits. Courts have found that these diligent anti-counterfeiting efforts shield eBay from the types of claims asserted here by Plaintiff Wimo Labs, LLC ("Wimo"). *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010). Wimo's attempts to avoid *Tiffany* will fail, because the record will show that eBay responded expeditiously to Wimo's notices of claimed infringements (where Wimo sent them) and reasonably applied its repeat-infringer policy. Furthermore, eBay's anti-counterfeiting efforts are now even more extensive and more effective than those endorsed in *Tiffany*.

This motion, however, addresses Wimo's RICO claim. Even after amendment, that claim is deficient—indeed frivolous—on its face and should be dismissed as a matter of law. The claim rests on Wimo's allegation that certain sellers used eBay's service to list knockoff items that infringe on its trademarks. Contending that eBay could have done more to prevent these sellers from using its online marketplace, Wimo attempts to cast the sellers' alleged actions as part of a RICO enterprise comprising eBay, PayPal, and thousands of unnamed sellers around the globe with the objective to commit criminal counterfeiting and wire fraud. But the First Amended Complaint ("FAC") fails to plausibly allege facts demonstrating that eBay formed and conducted a RICO enterprise with PayPal and the sellers for the purpose of carrying out the claimed predicate acts of counterfeiting and wire fraud. The FAC tries, and fails, to convert eBay's everyday business activities offered to all of its users into a viable RICO conspiracy among supposed counterfeiters.

The FAC has abandoned Wimo's previously-central—but baseless—claim

eBAY'S MOTION TO DISMISS
FIFTH CAUSE OF ACTION
8:15-CV-01330-JLS-KES

that eBay treated sellers of alleged counterfeits differently by concealing their identities and contact information. *See, e.g.,* Compl. ¶ 188. In its stead, the FAC substitutes new allegations relating to various facets of eBay's business—including that eBay expanded into China, does substantial business there (like Wimo), and uses software to identify products to market to potential buyers. These new allegations—stripped of pejorative spin—concern wholly legitimate business activities undertaken by eBay to expand its business to all buyers and sellers.

Courts have expressed concerns regarding precisely such misuse of RICO. "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). Because civil RICO suits have "'[a] quasi-criminal' nature and consequent 'stigmatizing effect on those named as defendants' . . . [c]ourts should . . . 'strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 827 (9th Cir.) (citations omitted), *amended by* 348 F.3d 1102, 1108 (9th Cir. 2004), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). Congress did not intend for the RICO statutes to be used, as here, as a vehicle for civil tort claims. "[T]he legislative history forcefully supports the view that the major purpose of [RICO] is to address the infiltration of legitimate business by organized crime. The point is made time and time again during debates and in the hearings before the House and Senate." *United States v. Turkette*, 452 U.S. 576, 591 (1981). A plaintiff alleging a civil RICO claim must therefore meet strict requirements or face dismissal. These requirements are necessary protections "to insure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions." *Md.-Nat'l Capital Park & Planning Comm'n v. Boyle*, 203 F. Supp. 2d 468, 476 (D. Md. 2002) (citing *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989)). That concern is paramount here, because Wimo's RICO claim is premised on the standard services eBay provides to more than 150 million visitors to its website each year.

The RICO claim against eBay should be dismissed for four reasons:

**First,** the RICO claim is nothing more than a restyling of the trademark infringement claims that Wimo asserts against the sellers and eBay. Simply characterizing routine trademark claims as constituting "counterfeiting" or "wire fraud" is not enough to plead a viable RICO claim; as this Court has recognized, "trademark infringement and false designation of origin are not cognizable RICO predicates," even when styled as ostensible criminal activity. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1081 (C.D. Cal. 2012).

**Second,** Wimo has not adequately alleged that eBay conducted or directed the affairs of a RICO enterprise with sellers of counterfeit goods, or that eBay engaged in conduct distinct from its regular business activities to assist in the illegal goals of the purported enterprise.

**Third,** the facts alleged show no common purpose among the sellers named in the FAC ("Seller Defendants") themselves, much less among the thousands of alleged "Unauthorized Sellers" of Wimo's products on eBay. Nor is there any common purpose alleged between the sellers and eBay, which merely provided the same services to the alleged co-conspirators that it provides to millions of other sellers who use its website.

**Fourth,** Wimo has not adequately alleged RICO predicate acts of criminal counterfeiting in violation of 18 U.S.C. § 2320 or wire fraud in violation of 18 U.S.C. § 1343. For counterfeiting, the FAC fails to allege that eBay traffics in any goods and services or knowingly uses counterfeit marks. For wire fraud, the FAC fails to allege facts showing that eBay (as distinct from the sellers) knowingly made any false statement to buyers regarding the sellers' listings, or that it acted with the intent to deceive or cheat any buyers.

Having had the benefit of reviewing eBay's prior motion to dismiss and the opportunity to amend its complaint, Wimo still fails to allege facts sufficient to support its RICO claim against eBay. Accordingly, the Fifth Cause of Action

1   should be dismissed with prejudice because further amendment would be futile. *See*

2   *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

3   **STATEMENT OF FACTS**

4     eBay invests heavily in preventing counterfeiting, as shown in the materials

5   Wimo cites and in the reported cases endorsing eBay's anti-counterfeiting efforts.

6   eBay employs search and filtering technology to identify potentially infringing

7   listings and to remove suspicious items without involvement of a rights holder.

8   FAC ¶ 189 ("[We're] constantly working to make our site safer by . . . proactively

9   removing suspicious items") (citing https://pages.ebay.com/againstcounterfeits);

10  *Tiffany*, 600 F.3d at 98-100 (describing methods eBay uses to screen for counterfeit

11  items). And eBay works with intellectual property rights holders through its VeRO

12  program to identify and remove infringing listings. FAC ¶ 194; *see also id.* ¶ 189;

13  *Tiffany*, 600 F.3d at 99 (describing VeRO program). eBay also suspends sellers

14  who engage in repeated infringement. *Id.* at 100.

15    Stripped of hyperbole, and ignoring contradictions between the facts alleged

16  and the images provided in the FAC,[1] the basic allegations are simple:

17    &bull; The Seller Defendants and thousands of other "Unauthorized Sellers"

18  listed products on ebay.com that allegedly included Wimo's marks.

19    &bull; Wimo sent Notices of Claimed Infringement ("NOCIs") to eBay

20  regarding such allegedly infringing products.

21    &bull; After receiving Wimo's NOCIs, eBay removed the allegedly

22  infringing listings. However, eBay allegedly did not police future listings by the

23  accused sellers to monitor possible new listings of accused products.

24    &bull; eBay sent emails automatically generated from its users' prior search

25  histories that included links to listings for allegedly infringing products.

---

26  [1] There are significant discrepancies between the allegations regarding various
27  listings and the images allegedly related to the same. For example, the FAC
    purports to describe a listing from July 23, 2015, but the alleged image for that
28  listing offers delivery of the item on a date ***in the past.*** (FAC ¶ 73.)

4

1     •  eBay engages in ordinary business practices like expanding its

2  presence in markets across the globe, including launching eBay China to increase

3  its access to buyers and sellers in one of the world's largest economies. eBay also

4  uses common on-line marketing tools like algorithms to identify products potential

5  buyers may be interested in purchasing.

6    In sum, Wimo does not allege that eBay colluded with the PayPal, the Seller

7  Defendant, or the Unauthorized Sellers. Indeed, the FAC alleges that these sellers

8  obscured their identities by using different profiles and email addresses. Nor does

9  the FAC allege that eBay derived greater profits from the sale of the alleged Wimo

10 counterfeits—which account for only an infinitesimal fraction of the hundreds of

11 millions of listings on eBay—than it generated for other sales. Additionally, the

12 FAC does not allege that eBay provided any service to the accused sellers beyond

13 those it provides to any other user of its website. Instead, the thrust of Wimo's

14 RICO claim is the mistaken view that eBay was required to do more to police

15 Wimo's marks after it submitted NOCIs regarding the various sellers. Even if this

16 were true, it would not support a RICO claim.

17           **LEGAL STANDARD**

18   To survive a motion to dismiss, Wimo must allege "enough facts to state a

19 claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550

20 U.S. 544, 570 (2007). Mere assertions and empty rhetoric cannot "unlock the doors

21 of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Mujica v.*

22 *AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014). Even on a motion to dismiss, the

23 court is "not bound to accept as true a legal conclusion couched as a factual

24 allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

25   Further, Wimo's allegations regarding the RICO predicate acts of wire fraud

26 must satisfy the heightened pleading requirements of Rule 9(b) by "plead[ing] with

27 particularity the 'circumstances' of the alleged fraud in order to place the

28 defendants on notice of the precise misconduct with which they are charged, and to

safeguard defendants against spurious charges of immoral and fraudulent behavior." *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 802 (E.D. Pa. 2007) (dismissing RICO claim) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Heightened pleading standards "are not satisfied merely by making a complaint long." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001). Instead, Wimo must allege the specific "time, place, and manner of each act of fraud, the nature of the fraudulent scheme, and the role of each defendant in the scheme." *Stewart v. Wachowski*, No. CV 03-2873 MMM (VBKx), 2005 WL 6184235, at *7 (C.D. Cal. June 14, 2005).

## ARGUMENT

## I.    Wimo Fails To Allege A RICO Claim Generally.

The RICO claim fails because it comprises, at most, alleged trademark infringement. Courts, including this one, consistently find such RICO claims deficient. In *Wecosign*, the plaintiff based its RICO claim on the assertion that the "Defendants devised a scheme or artifice to solicit payment from others for counterfeit services through Defendants' infringing use of a counterfeit mark, which created confusion or mistake or deceived others regarding the source or origin of Defendants' purported services." 845 F. Supp. 2d at 1081. This Court found those allegations to be "simply a restyling, if not purely a reiteration, of Plaintiff's trademark infringement and false designation of origin claims" and declined to enter a default judgment on the RICO claim because "trademark infringement and false designation of origin are not cognizable RICO predicates." *Id.* (citing *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996); *Naso v. Park*, 850 F. Supp. 264, 274-75 (S.D.N.Y. 1994)). Other courts are in accord, routinely dismissing RICO claims based on trademark infringement allegations "where the plaintiffs attempted to plead the claims as mail or wire fraud." *See, e.g.*, *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 491 (S.D.N.Y. 2000) (listing cases); *see also Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612,

630-31 (S.D.N.Y. 2006) ("Plaintiffs may not reformulate garden variety trademark infringement claims into mail or wire fraud in order to state a violation of RICO").

The FAC is similarly deficient—it alleges that, as a "pattern of racketeering activity," eBay and the other defendants engaged in predicate acts of trafficking in counterfeit goods and mail/wire fraud. *See generally* FAC ¶¶ 323-39. But the supporting facts alleged are indistinguishable from those alleged to support the trademark infringement claims. For example:

| *"RICO" Allegation* | *Trademark Allegation* |
|---|---|
| ". . . Defendants have engineered an organized operation to offer, sell and profit from the sale of counterfeit goods through ebay.com by, and among other things, the *promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products* . . ." *Id.* ¶ 325 (counterfeit mark) (emphasis added). | "eBay and the Seller Defendants and each of them are engaging in intentional illegal conduct including but not necessarily limited to, the *promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products in violation of the Lanham Act*, as amended." *Id.* ¶ 274 (1st COA, Trademark Infringement) (emphasis added); *see also* ¶ 284 (2nd COA, Contributory Trademark Infringement) (same). |
| ". . . Enterprise has engaged in a scheme to sell and profit from the sale of counterfeit goods through ebay.com. . . . This conduct has directly harmed both consumers and Plaintiff *by sowing confusion among consumers seeking authentic Plaintiff's Products and post-sale confusion among consumers who come in contact with the Fake Products and associate their inferior quality with Plaintiff's Marks*." *Id.* ¶ 330 (wire fraud) (emphasis added). | "eBay's and the Seller Defendants' offering of counterfeit Lunatik products bearing Lunatik registered trademarks *is likely to cause consumer confusion in violation of 15 U.S.C. § 1114 by, among other things, selling products of inferior quality under the brand.*" ¶ 277 (1st COA, Trademark Infringement) (emphasis added); *see also* ¶ 290 (2nd COA, Contributory Trademark Infringement). |

| *"RICO" Allegation* | *Trademark Allegation* |
|---|---|
| "On or about July 25, 2015, **eBay transmitted an email to an eBay buyer offering to sell** counterfeit Lunatik iPhone cases . . . ." *Id.* ¶¶ 326(n) (counterfeit mark); 331(n) (wire fraud) (emphasis added); *see also id.* ¶¶ 326(o) and 331(o) (alleging "eBay directly solicited a buyer to purchase some or all of the following Fake Lunatik Products . . . ."). | ". . . Plaintiff is informed and believes that eBay on a regular and continuous basis promotes the sale of obvious counterfeit Lunatik Products that infringe on Plaintiff's Marks by Unauthorized Sellers by, among other things, *the transmittal of automated emails to eBay buyers who have 'browsed' similar items*." *Id.* ¶ 275 (1st COA, Trademark Infringement) (emphasis added). |

Wimo's attempt to recast its trademark infringement allegations as RICO predicate acts fails a matter of law, and the RICO claim should be dismissed.

## II.    Wimo Fails To Allege Sufficiently Conduct Of A RICO Enterprise.

Wimo has not alleged and cannot allege facts showing that eBay conducted or directed the affairs of a RICO enterprise. Merely providing services to a RICO enterprise, or even being a participant in the enterprise, is not enough. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Instead, a defendant can only be liable under RICO if it had "some part in directing the enterprise's affairs." *Id.* Thus, a plaintiff must establish that the defendant "participated in the operation or management of the enterprise itself." *Id.* at 183.

Following *Reves*, it is insufficient to allege a commercial relationship between the defendant and the enterprise, even if the defendant provided services that assisted the illegal aims of the enterprise. Simply having a business relationship with or "performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability." *Goren v. New Vision Int'l*, 156 F.3d 721, 728 (7th Cir. 1998); *see also In re: Mastercard Int'l Inc.*, 132 F. Supp. 2d 468, 488-90 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009); *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis.

1999). Further, the plaintiff must also establish that the defendant was acting to advance the interests of the RICO enterprise, rather than acting in its own interests or as part of its regular business operations. *See Crichton*, 576 F.3d at 399.

Here, Wimo does not allege that eBay planned or colluded with the Seller Defendants, much less the thousands of Unauthorized Sellers allegedly part of the racketeering enterprise, regarding their sale of the alleged counterfeit items. Nor does Wimo allege that eBay gave any instructions or directions to the Seller Defendants or Unauthorized Sellers regarding such sales. In fact, there is no allegation that eBay was even ***aware*** of any particular seller until eBay received specific complaints from Wimo or the Counterfeit Report. While these notices may have alerted eBay to the possibility that particular sellers had listed items Wimo contended infringed its marks, there is no allegation that eBay ***directed*** the Seller Defendants to so act, much less that eBay managed or oversaw their supposed counterfeiting activities. To the contrary, Wimo never alleges that eBay failed to remove any purportedly infringing listing after receiving a corresponding NOCI.

At most, the FAC alleges that the Seller Defendants and Unauthorized Sellers used the same services eBay provides to all users of its website to list allegedly infringing items. For example, the FAC alleges that eBay "participated in the operation and management of the enterprise" by: (1) providing the marketplace used by such sellers to list the alleged counterfeit items for sale; (2) providing "marketing and search optimization services," including sophisticated data mining tools that identify users' preferences and direct potential buyers to products that may interest them (including the such sellers' products); and (3) directing another "conspirator" (PayPal) to process payments for the sale of the allegedly counterfeit products. FAC ¶¶ 321(a), (b).[2] These are not services that eBay provides to

---

[2] Wimo's general allegations that eBay undertook "operation or management" of the alleged enterprise, standing alone, are not sufficient. Such generic allegations "unadorned by any factual support" are not enough to state a RICO claim. *Slack v. Int'l Union of Operating Eng'rs*, No. C-13-5001 EMC, 2014 WL 4090383, at *21-

counterfeiters; these are services that eBay provides to any user of its website, including the millions of users who post more than six million new listings every day. *Tiffany*, 600 F.3d at 97. Wimo's failure to allege that eBay did anything differently for the Seller Defendants or Unauthorized Sellers than for other users of its website is fatal. *See, e.g.*, *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.* ("*Walgreen*"), 719 F.3d 849, 856 (7th Cir. 2013) (affirming dismissal based on lack of enterprise conduct, even where the defendants cooperated to carry out potentially illegal activities, where their cooperation did not go "outside the bounds of the parties' normal commercial relationships"); *Walter v. Drayson*, 538 F.3d 1244, 1247-48 (9th Cir. 2008) (allegation that attorney defendant provided legal services to enterprise and failed to stop its alleged illegal activity not sufficient to satisfy conduct element); *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538-40 (3d Cir. 1993) (no enterprise conduct where auditor provided false audits and certifications of enterprise's financial condition, because providing regular business service is not sufficient for RICO liability); *Jubelirer*, 68 F. Supp. 2d at 1053 ("[H]aving a business relationship with and performing services for [] an enterprise . . . does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise").

  *Walgreen* is instructive. There, the plaintiff alleged that Walgreens formed a RICO enterprise with a drug manufacturer to defraud insurers by seeking reimbursements for more expensive dosages than those filled for its customers. 719 F.3d at 852-53. As factual support, the plaintiff alleged that Walgreens met with the manufacturer and discussed the idea that they could profit from reporting false dosage amounts to the plaintiff, and that Walgreens then re-programmed its

---

22 (N.D. Cal. Aug. 19, 2014) (concluding that "general allegations of 'direction,' 'counseling,' 'commanding,' 'inducing,' or 'procuring,'. . . are insufficient to state a claim sufficient to satisfy *Twombly* and *Iqbal*").

computers to substitute the more expensive dosage amounts for reimbursement. *Id.* at 854. The Seventh Circuit affirmed the dismissal of the complaint, concluding that even though there was evidence of potential illegal conduct by Walgreens, the plaintiff had not "adequately allege[d] that Walgreens and [the drug manufacturer] were conducting the affairs of this [enterprise] as opposed to their own affairs." *Id.* The court rejected the plaintiff's argument that neither Walgreens nor the manufacturer could have carried out the scheme on its own, noting that the test was not whether the two cooperated but instead whether the scheme could have been accomplished "without cooperation ***that fell outside the bounds of the parties' normal commercial relationships***." *Id.* at 856 (emphasis added).

Here, Wimo alleges that eBay somehow assisted the Seller Defendants and Unauthorized Sellers by providing a marketplace to list their counterfeit items, giving them access to search tools, and/or automatically generating solicitation emails. Such allegations show only that such sellers could accomplish their goals on their own, using services that eBay regularly provides as part of its business. Thus, as in *Walgreen*, these sellers were "perfectly capable of breaking the law on [their] own behalf," without any special cooperation or assistance from eBay. *Id.* at 855. Because Wimo fails to allege any assistance that eBay provided to such sellers "outside the bounds of the parties' normal commercial relationships," the FAC fails to meet the "conduct" element for a RICO claim. *Id.* at 856.

On amendment, Wimo also highlights eBay's efforts to expand its business operations in China—one of the world's largest economies—including launching eBay China, using non-US account managers to target potential sellers, and negotiating favorable shipping rates. FAC, ¶¶ 52-60. But these allegations demonstrate nothing about counterfeiting; instead, they show legitimate worldwide expansion of eBay's business. In fact, eBay has expanded its operations to over 203 countries, not only China, and has made successful efforts to reduce the cost of shipping in a number of those markets, including the United Kingdom and

Germany.[3] Improper facilitation of sales of counterfeits through eBay's website cannot be inferred from eBay's expansion into China, because those factual allegations "just as easily suggest rational, legitimate business behavior." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008); *see also Eclectic Props. E., LLC v. Marcus & Millichap C*o., 751 F.3d 990, 997 (9th Cir. 2014) (courts must consider obvious alternative explanations for a defendant's behavior when analyzing the plausibility of a complaint's allegations).

Finally, Wimo highlights the fact that eBay did not bar the sellers at issue from continuing to list potentially infringing phone cases after it received a NOCI from plaintiff (or complaints from the Counterfeit Report). FAC. ¶ 63. But the fact that Wimo challenged a listing does not establish that the seller had in fact infringed Wimo's marks, nor does it mean that any future listing by that seller would necessarily be a counterfeit such that the seller should be suspended or terminated. As the Second Circuit has noted, eBay's decision not to suspend a particular seller after one NOCI is not actionable, because NOCIs are not proof of infringing conduct, legitimate sellers can and do make mistakes, and eBay must strike a reasonable balance between warning and suspending potential counterfeiters:

> The district court concluded that it was understandable that eBay did not have a "hard-and-fast, one-strike rule" of suspending sellers because a NOCI "did not constitute a definitive finding that the listed item was counterfeit" and because "suspension was a very serious matter, particularly for those sellers who relied on eBay for their livelihoods."

*Tiffany*, 600 F.3d at 100 n.5 (citing *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 489 (S.D.N.Y. 2008)). Nor does Wimo allege, even on amendment, that it took the required steps (by providing multiple NOCIs for each Seller Defendant) for those sellers to have been suspended under eBay's policy, or that eBay failed to follow its policy regarding sellers accused of repeated infringement. Regardless,

---

[3] *See* 2014 Form 10-K for eBay Inc., at 6 ("In the U.S., the U.K., and Germany, over 56% of successfully closed transactions included free shipping during 2014.") (cited throughout the FAC as "2015 eBay Ann. Rep.").

eBAY'S MOTION TO DISMISS
FIFTH CAUSE OF ACTION
8:15-CV-01330-JLS-KES

1  Wimo's allegation that eBay should have done more to stop the Seller Defendants

2  from listing alleged counterfeit items is a far cry from the intentional, deliberate

3  managing of their operations that Wimo must plead to establish that eBay directed a

4  RICO enterprise. *See Drayson*, 538 F.3d at 1248 (attorney's failure to stop illegal

5  activity of the enterprise was insufficient to show "conduct" because "*Reves*

6  requires 'some degree of direction'" by defendant, rather than a failure to stop the

7  illegal activity).

8      Wimo simply has not alleged and cannot allege that eBay directed or

9  managed the operations of an illegal confederacy between itself, PayPal, the Seller

10  Defendants, and the Unauthorized Sellers to illegally traffic in counterfeit items.

11  The FAC's recitations of completely lawful and routine services that eBay provided

12  to all sellers cannot satisfy the "conduct" requirement for a civil RICO claim.

13  **III.   Wimo Fails To Allege An Enterprise Among The Defendants.**

14      Wimo fails to allege a cognizable RICO enterprise between eBay, PayPal,

15  the Seller Defendants, and the Unauthorized Sellers. To establish an "association-

16  in-fact" RICO enterprise, Wimo must allege facts showing (1) a common purpose

17  between the members of the alleged RICO enterprise, (2) a structure or

18  organization, and (3) longevity in the service of that common purpose. *See Eclectic*,

19  751 F.3d at 997 (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)). Here, the

20  complaint fails to allege facts showing that eBay deviated from its regular business

21  operations to create a cognizable RICO enterprise.

22      First, Wimo's RICO claim fails to allege facts showing any common purpose

23  among the Seller Defendants, the unnamed Unauthorized Sellers, eBay, and PayPal.

24  The only alleged "common purpose" among the various Defendants is to commit

25  the predicate acts of trafficking in supposed counterfeits:

26          Defendants and their co-conspirators are a group of persons
          associated together in fact for the common purpose of carrying
27          out an ongoing criminal enterprise . . . ; namely, through a
          systemized operation to sell and profit from the sale of obvious
28          counterfeit goods . . . .

13

FAC ¶ 321. Thus, all that Wimo has alleged is a group of entities who supposedly committed RICO predicate acts. But the RICO statute "demands much more" than mere allegations that the defendants jointly carried out predicate offenses; instead, RICO liability can be based only on "the creation of an 'enterprise,'" meaning "a group with a common purpose and course of conduct." *Boyle*, 556 U.S. at 950.

The facts alleged in the FAC instead demonstrate that the various participants have no coordination or common purpose whatsoever. With regard to the sellers, the Seller Defendants and various Unauthorized Sellers are not alleged to have any common purpose or to have coordinated their sales on ebay.com in any way; if anything, they are competitors who independently list their items and compete to sell their products. The FAC fails to allege any facts showing a common purpose between them, such as sharing profits or coordinating their listings.[4]

Nor does the FAC adequately allege that eBay or PayPal shared a common purpose with the Seller Defendants.  The FAC only describes services that eBay provides to any users of ebay.com; there are no facts alleged showing that eBay provides these services with the ***purpose*** of facilitating sales of counterfeit phone cases by the Seller Defendants or Unauthorized Sellers, any more than eBay facilitates the sale of any other goods listed using its service. Courts have consistently found no common purpose where the alleged association-in-fact consists of routine services that a business provides to all of its customers. *See, e.g., In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, No. 2:11-CV-7166-MRP, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) ("[Plaintiff] has identified exactly the type of arms-length transaction, with each party pursing its

---

[4] The FAC alleges that some of the Seller Defendants used multiple user profiles on ebay.com, such that the eleven Seller Defendants named in the original complaint have now been reduced to only three who allegedly operated multiple user profiles. *See, e.g.*, FAC ¶¶ 82-129, 138-145. Even after this amendment, however, the FAC still fails to allege any facts showing a common purpose or coordination among these three Seller Defendants, much less the thousands of alleged Unauthorized Sellers alleged to be part of the RICO enterprise.

own independent economic interests, that does not constitute a RICO enterprise");
*Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("the fact
that [Bank of China] provided general professional services to IFS and Siu Lap,
services that [Bank of China] provides to the public at large, does not provide a
basis for inferring that [Bank of China], IFS, and Siu Lap shared a common
unlawful purpose"). The failure to allege a common purpose, beyond eBay's
regular interest in providing e-commerce and marketing services to users of its
website, is fatal to Wimo's enterprise allegation. *See In re Jamster Mktg. Litig.*,
MDL No. 1751, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (dismissing
RICO claim because the plaintiffs had not met their "challenge []to set forth
sufficient allegations to distinguish ordinary business conduct from fraudulent
conduct"); *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-1425-JGB, 2015 U.S. Dist.
LEXIS 90725, at *11 (C.D. Cal. July 13, 2015) ("The consensus among courts
reflects the judgment that the statutory requirements of RICO 'cannot be
circumvented by attempting to characterize a routine contractual relationship for
services as an independent enterprise'").

Second, Wimo's RICO claim is plainly deficient because it fails to allege
facts showing any structure or organization between the alleged participants in the
enterprise. Under the Ninth Circuit's decision in *Odom*, while a plaintiff need not
allege any particular structure to allege the existence of a RICO enterprise, it must
still allege, at a minimum, facts showing an "ongoing organization" that was a
"vehicle for the commission of two or more predicate acts." *Odom*, 486 F.3d at 552.

The facts in *Odom* reflect the high level of coordination between participants
needed for a RICO claim. In *Odom*, plaintiff alleged that Microsoft and Best Buy
violated RICO by conspiring to have Best Buy gather identification and payment
information for Best Buy customers, which Microsoft would then use to activate
Microsoft accounts in the customers' names and charge them for unwanted service.
486 F.3d at 543. The plaintiff alleged that these actions were part of an arrangement

15

1    between Microsoft and Best Buy that was specific to the fraud; that arrangement

2    included a press release announcing the strategic collaboration between the

3    companies, "significant joint marketing in Best Buy's retail stores," sharing of

4    profits, and a $200 million investment by Microsoft in Best Buy. *Id*. at 543, 545.

5    The Ninth Circuit concluded that these allegations were sufficient to allege that

6    Microsoft and Best Buy had "formed a vehicle" to carry out the scheme,

7    "established mechanisms" to transfer customer information for the alleged fraud,

8    and that the organization was ongoing. *Id*. at 552.

9        Such allegations are entirely lacking here. Wimo alleges no facts showing

10   that eBay, PayPal, the Seller Defendants, and the Unauthorized Sellers did anything

11   specific to the alleged wrongful acts, let alone that they "formed a vehicle" to carry

12   out the alleged scheme or "established mechanisms" to facilitate their alleged

13   crimes. *Cf. id.* Indeed, Wimo fails to allege ***any*** actions that eBay took in

14   conjunction with any seller to facilitate the sale of the alleged counterfeits, other

15   than the services it provides as a matter of course to any user of its website. This is

16   not sufficient to allege the existence of an enterprise. *See Rosner*, 528 F. Supp. 2d at

17   428-29 ("[Plaintiff] states in conclusory fashion that [Bank of China], IFS, and Siu

18   Lap were an enterprise. The only factual allegation supporting this claim is that

19   [Bank of China] provided 'indispensable banking services' to IFS and Siu Lap. …

20   The [complaint] offers no facts relating to … the organization or hierarchy of the

21   alleged enterprise."); *Jubelirer*, 68 F. Supp. 2d at 1052 (finding organization

22   element not met where alleged enterprise "is nothing more than a simple contract

23   for services of a type entered by millions of others").

24        Finally, the "rimless hub and spoke" structure alleged by Wimo—with eBay

25   as the hub of the alleged scheme and the sellers as independent actors selling their

26   alleged counterfeit items through eBay—has repeatedly been found by courts to

27   lack the coordination and interpersonal relationships needed for a RICO enterprise.

28   *See, e.g.*, *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir.

2010) (noting that a "rimless hub-and-spoke configuration would not satisfy the 'relationships' prong of *Boyle's* structure requirement") (citation omitted); *Vulcan Golf, LLC v. Google Inc.*, No. 07-3371, 2008 U.S. Dist. LEXIS 60608, at *15 (N.D. Ill. July 31, 2008) ("[N]one of the allegations suggest that the hundreds of thousands (if not millions) of members of the alleged RICO enterprise … are specifically aware of the other members such that they are organized in any structured manner or joined in purpose"); *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (no enterprise where "several borrowers each committed a similar but independent fraud with the aid of a particular lender, and . . . each such borrower acted on a particular occasion to benefit himself or herself and not to assist any other borrower" and concluding that a "series of discontinuous independent frauds is no more an 'enterprise' than it is a single conspiracy"), *aff'd*, 27 F.3d 763 (2d Cir. 1994).

The enterprise allegation here is nearly identical to the allegation rejected in *Google*. In that case, the plaintiffs asserted RICO claims against Google and a host of defendants ("the Google Network") involved in different ways in Google's advertising network who allegedly registered, licensed, and monetized domain names that were misleadingly similar to the plaintiffs' distinctive trade names and marks. 2008 U.S. Dist. LEXIS 60608, at *3. The court concluded that the RICO enterprise allegations were insufficient because, among other things, (1) there were no allegations that the members of the Google Network had "engaged in consensual decisionmaking or were joined in purpose to further the goals of the enterprise," (2) there were no facts to suggest that the members of the alleged enterprise knew of the others' existence, and (3) there were no allegations that the members contracting with Google were "specifically aware of the other members such that they are organized in any structured manner or joined in purpose." *Id.* at *14-15.

Here, while Wimo alleges substantial detail regarding eBay's business operations and the various listings by the Seller Defendants, Wimo fails to connect

their actions or otherwise allege facts showing the existence of any organizational structure or consolidated, coordinated decision-making between them. Indeed, as in *Google*, there is no allegation that eBay was even aware of any particular seller, or that all of the various Seller Defendants and Unauthorized Sellers were aware of each other, until Wimo identified them to eBay by reporting their alleged infringement.[5] This is insufficient as a matter of law.

In short, Wimo alleges no facts showing that eBay joined together with the Seller Defendants, Unauthorized Defendants, and PayPal with the purpose of facilitating the sale of counterfeit Wimo products on its website, much less that it deviated from its regular business operations to "form a vehicle" with those thousands of parties to carry out the alleged predicate acts.

## IV.   Wimo Fails To Allege RICO Predicate Acts Sufficiently.

Wimo alleges that eBay engaged in RICO predicate acts of trafficking in counterfeit goods and wire fraud by allegedly (1) permitting the Seller Defendants to use its website to list purportedly counterfeit Wimo products (FAC ¶¶ 326(a-b, d-i, k-m), 331 (a-b, d-i, k-m)) and (2) soliciting buyers for such products (*id.* ¶¶ 326(n-o), 331 (n-o)). Even if these allegations were true (which they are not), they are insufficient to satisfy the pleading requirements for trafficking in counterfeit goods under 18 U.S.C. § 2320 and wire fraud under 18 U.S.C. § 1343.

### A.   Wimo's Allegations Cannot Support The Trafficking Claim.

Wimo cannot plausibly allege that eBay trafficked under 18 U.S.C. § 2320 because eBay's alleged acts and knowledge are insufficient to violate that section and because alleged contributory infringement cannot violate that section. The statute requires that "(1) the defendant trafficked or attempted to traffic in goods or services; (2) such trafficking, or the attempt to traffic was intentional; (3) the defendant used a counterfeit mark on or in connection with the goods or services;

---

[5] In fact, the FAC is inconsistent on whether "Unauthorized Sellers" is limited to sellers for whom eBay allegedly received notice. *Compare* FAC ¶ 2 *with* n.iii.

and (4) the defendant knew that the mark so used was counterfeit." *Arch Ins. Co. v. Allegiant Prof'l Bus. Servs.*, *Inc.*, No. CV 11–1675 CAS (PJWx), 2012 WL 1400302, at *5 (C.D. Cal. Apr. 23, 2012) (quoting *United States v. Sultan*, 115 F.3d 321, 325 (5th Cir. 1997)).

eBay's alleged wrongful conduct—providing a platform where a small fraction of its users allegedly list items with counterfeit marks to sell counterfeit (or knockoff) goods—does not satisfy Section 2320. Indeed, Wimo merely reiterates the allegations of its infringement claims. However "[a]s a number of courts have recognized, Section 2320 must be construed more narrowly than the civil law definition of counterfeit acts contained in the Lanham Act." *United States v. Cone*, 714 F.3d 197, 209 (4th Cir. 2013) (listing cases). Moreover, "[i]n the interest of providing fair warning of what the law intends to do if a certain line is passed, [this Court must] construe . . . criminal statute[s] strictly and avoid interpretations not clearly warranted by the text." *Id.* at 206 (internal citations omitted).

### 1.   Wimo Concedes eBay Does Not Traffic In Counterfeits.

eBay undertakes no act that could comprise "trafficking" in the alleged counterfeit items. Section 2320 defines "traffic" as "to ***transport, transfer, or otherwise dispose of, to another***, for purposes of commercial advantage or private financial gain, or to ***make, import, export, obtain control of, or possess***, with intent to so transport, transfer, or otherwise dispose of." 18 U.S.C. § 2320(f)(5) (emphasis added). eBay's online marketplace service ***facilitates*** transactions directly between third-party sellers and buyers, but eBay never ***participates*** in a way that could constitute trafficking. Wimo cannot and does not allege otherwise.

Wimo describes eBay as a "marketplace that allows those who register with it ***to purchase goods from and sell goods to one another.***" FAC ¶ 36 (emphasis added). eBay "connects buyers and sellers and enables transactions, ***which are carried out directly between eBay members***." *Id* (emphasis added). Thus, eBay only "'provides the venue for the sale [of goods] and support for the transaction[s],

1   [but] ***it does not itself sell the items***' listed for sale on the site . . . ***nor does it ever***

2   ***take physical possession of them*** . . . ." *Tiffany*, 600 F.3d at 97. The FAC further

3   concedes that it is the Seller Defendants, not eBay, who sell the alleged counterfeit

4   items and send them to the purchasers. *See e.g.,* FAC ¶¶ 10-12, 147, 164, 321c, 326,

5   331. Because eBay does not traffic in goods, there can be no violation of Section

6   2320. *See Wallis v. Levine*, No. 12 C 5285, 2013 WL 53896, at *14 (N.D. Ill.

7   Jan. 2, 2013) (granting motion to dismiss RICO claim because, *inter alia*, plaintiff

8   merely alleged use of its trademark but not trafficking).

9         Nor do eBay's alleged emails suffice for trafficking: those emails simply

10   provide links that lead to the page where a transaction between a buyer and seller

11   could be facilitated. The image in Paragraph 154 of the FAC demonstrates that the

12   information necessary to effectuate a sale—the seller name, the product

13   information, the terms of the sale, payment and shipping information, and the

14   "Place Bid" and/or "Buy It Now" buttons—all appear on the Seller's page. FAC

15   ¶ 154.[6] Wimo does not and cannot allege that a transaction can occur without a

16   buyer visiting that page. Wimo alleges that the emails are for "Marketing" and are

17   used to attract potential buyers to the seller's page. FAC ¶¶ 146, 147, 148, 151. 152,

18   153, 155, 156, 162. Even if true, this would not violate Section 2320 because use of

19   counterfeit marks in alleged advertising does not violate the statute:

20             Because it wishes to cover only a narrow range of conduct in
   this legislation, because of the inchoate nature of conduct

21             involving only advertising, and because of its First
   Amendment implications, the ***Committee has chosen not to***

22             ***cover use of a counterfeit mark or designation in connection***
   ***with advertising of goods or services.***

23

24   H.R. 98-997 at 10 (emphasis added).

25

26   [6] Paragraph 154's image comprises three different elements: (1) the email allegedly
   sent by eBay (left side); (2) the alleged content of the seller's page (top right); and

27   (3) a magnification of a portion of (2) (bottom right). Wimo does not allege that it
   informed eBay of the existence of this seller's allegedly infringing listing prior to

28   filing the Complaint in August 2015.

eBAY'S MOTION TO DISMISS
FIFTH CAUSE OF ACTION
8:15-CV-01330-JLS-KES

### 2.    Wimo Cannot Allege Knowing Use Of Counterfeit Marks.

Wimo cannot allege the requisite knowledge by eBay, because Wimo concedes that other parties ("Seller Defendants" and "Unauthorized Sellers") create the allegedly offending listings. *See* FAC ¶¶ 64, 69, 72, 74, 82-83, 88-89, 95-97, 104, 109-110, 114, 116-118, 123-125, 132-34, 137-38, 140, 182, 326, 331. There is no allegation that eBay knows of or participates in such acts. *Cf. Arch*, 2012 WL 1400302, at *5 (dismissing RICO claim predicated on Section 2320 because there was no allegation that defendant issued documents containing counterfeit marks). Wimo alleges eBay sends automated emails to prospective buyers that include links to potentially infringing listings. *See* FAC ¶¶ 146, 154, 196, 326(n-o). This is insufficient to allege knowing use of a counterfeit mark.

Wimo does not allege that eBay sent such emails knowing they contained counterfeit marks. To the contrary, Wimo concedes that eBay's systems generated those emails automatically—that is, without human involvement. *Id.* ¶¶ 153, 275.[7] In the absence of any allegation that that eBay received NOCIs or any other notice that the sellers referenced in eBay's automated emails (Paragraph 326(n-o)) were using counterfeit marks, eBay cannot as a matter of law be liable. *Cf. Tiffany*, 600 F.3d at 107 ("[A] service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary"). Mere "suspicion that the goods or services might be

---

[7] In an apparent attempt to allege that eBay somehow knows that its automated emails contain counterfeit marks, the FAC alleges that eBay uses "Hunch" technology and similar algorithms to track and analyze search histories to identify purchasers with an interest in counterfeit goods (including "Fake Lunatik Products") and market such goods to them. *See* FAC ¶¶ 146, 148-153; *see also* ¶ 162. Not only is this allegation utterly baseless, it also ignores the "obvious alternative explanation"—such programs and algorithms are common marketing tools used by many members of the online retail community. *Eclectic*, 751 F.3d at 996. In fact, the FAC acknowledges that technologies like Hunch "help eBay expand and grow merchandising and relevance capabilities to further improve the shopping and selling experience for eBay Customers." FAC ¶ 150.

counterfeit . . . [is] insufficient to generate a firm belief or awareness of the part of the defendant that goods were counterfeit" and thus cannot support the allegation that eBay knowingly used a counterfeit mark. S. Rep. 98-526 at *12.

### B.   Wimo Cannot Allege Wire Fraud Or Mail Fraud By eBay.[8]

Wimo fails to allege predicate acts of wire fraud because it cannot allege facts showing that eBay knowingly participated in a scheme to defraud or that it acted with intent to defraud. To allege wire fraud, Wimo must allege facts establishing that (1) eBay knowingly participated in a scheme to defraud, or a scheme to obtain money by false pretenses, representations, or promises, (2) the false statements or omissions made as part of the scheme were material, (3) eBay acted with the specific intent to defraud (meaning an intent to deceive or cheat), and (4) eBay or one of the defendants used or caused to be used an interstate wire to carry out an essential part of the scheme. *See* Ninth Circuit Model Criminal Jury Instructions, No. 8.124 (2010 ed.) (wire fraud); *see also United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013); *Eclectic*, 751 F.3d at 997 (affirming dismissal of RICO claims because plaintiffs did not adequately allege an intent to defraud). Here, Wimo fails to allege (1) and (3) as a matter of law.

### 1.   Wimo Fails To Plead Knowing Participation.

Wimo fails to allege any false statements or material omissions made as part of a scheme to defraud; instead, Wimo merely alleges that defendants committed wire fraud through their "misappropriation of Plaintiff's intellectual property through the promotion, sale, and shipment of Fake Lunatik Products for profit . . . ." *See* FAC ¶¶ 330-31. But misappropriation or use of intellectual property, standing

---

[8] Wimo refers throughout its FAC to predicate acts of "mail fraud and wire fraud," *see* FAC ¶¶ 332-35, but in its civil RICO cause of action (Fifth Cause of Action) only alleges that the defendants' conduct constituted wire fraud, *see id.* ¶ 330 ("Pattern of Racketeering Activity: Multiple Instances of Wire Fraud In Violation of 18 U.S.C. § 1343"). Because the elements of wire fraud and mail fraud are not materially different for the purposes of this motion, they are referred to interchangeably herein.

eBAY'S MOTION TO DISMISS
FIFTH CAUSE OF ACTION
8:15-CV-01330-JLS-KES

alone, is not wire fraud. *See, e.g.*, *Johnson Elec.*, 98 F. Supp. 2d at 491; *see also Evercrete*, 429 F. Supp. 2d at 630-31.

Even if trademark infringement could constitute wire fraud, Wimo cannot allege that eBay knowingly made any false statement or otherwise participated in a scheme to defraud. The cited listings do not show any statement by eBay, let alone a false statement. Indeed, the FAC concedes that the listings comprise the Seller Defendants' statements; eBay merely provides the venue for those statements. FAC ¶ 36. Nor does Wimo allege facts plausibly showing that eBay knew any listing was "false" at the time it was made. To the contrary, Wimo concedes that eBay promptly removed any listing that was the subject of a NOCI from Wimo (*see, e.g.*, *id*. ¶ 140), and does not allege a single instance where eBay refused to take down a listing that was the subject of a valid NOCI from Wimo.[9]

Nor can the alleged emails show knowingly false statements by eBay. At points, the FAC misleadingly suggests that eBay uses sophisticated data mining technology to identify a users' tastes (including their supposed "proclivity toward infringing/Fake Products"), and then sends targeted solicitation emails in a conscious effort to help identify additional buyers for the sellers' counterfeit items. *See id.* ¶¶ 146-53; 162-63; 195, 326(o), 331(o). But elsewhere, the FAC concedes the truth: the content of these emails is not dictated by eBay, much less individually crafted in an effort to promote counterfeits; instead, the email content is automatically generated based solely the user's search history. *See id.* ¶¶ 147-49, 275 (describing "automated emails to eBay buyers who have 'browsed' similar items"). In light of that automated process, eBay has no knowledge of the content of the emails at the time that they are sent. Further, although the FAC identifies a number of emails that eBay sent to buyers directing them to listings that offered

---

[9] Wimo complains that eBay "effectively ignored" a NOCI from Wimo relating to the EPIK watch case. FAC ¶ 165. But the FAC shows that eBay promptly asked Wimo to submit additional information for this new product. *Id.* The FAC fails to allege that Wimo submitted the requested information; nor did Wimo do so.

1    purportedly fake Wimo products, the FAC fails to allege that eBay ***knew*** that any of

2    these emails contained false information at the time that they were sent. *See id.*

3    ¶ 331(o) ("Plaintiff is informed and believe[s] that eBay directly solicited a buyer to

4    purchase some or all of the following Fake Lunatik Products on or about the date

5    indicated"). This is no accident. While Wimo provides specific details in the FAC

6    regarding NOCIs it sent eBay regarding the Seller Defendants, Wimo fails to allege

7    that it sent eBay any NOCIs for the sellers or listings that were the subject of the

8    specified solicitation emails. Thus, the FAC fails to allege that eBay knew that

9    these emails contained false information.

10           Wimo seems to posit that reporting a listing offering phone cases in colors

11   and materials not made by Wimo, but allegedly bearing its marks, imposed on eBay

12   a duty to police listings having similar characteristics or made by those particular

13   sellers. *See* FAC ¶¶ 72-73, 80, 87, 94, 101, 108, 115, 122, 129, 136145, 159, 165.

14   But the law imposes no such duty to monitor future listings. It is the rights holder—

15   not eBay—that is responsible for policing its mark. *See, e.g.*, *Tiffany*, 576 F. Supp.

16   2d at 518 ("rights holders bear the principal responsibility to police their

17   trademarks"); *MDT Corp. v. N.Y. Stock Exch. Inc.*, 858 F. Supp. 1028, 1034 (C.D.

18   Cal. 1994) ("The owner of a trade name must do its own police work"); *Hard Rock*

19   *Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir.

20   1992) (defendants are not required "to be more dutiful guardians of [trademark

21   plaintiffs'] commercial interests").

22                  **2.      Wimo Fails To Allege Any Intent To Defraud By eBay.**

23           The allegation that eBay acted with intent to deceive buyers into buying

24   counterfeit items is not plausibly pled. The FAC never alleges facts that might

25   support such a conclusion—*e.g.*, that eBay actively planned or colluded with the

26   Seller Defendants and Unauthorized Sellers regarding these sales, that eBay

27   obtained greater profits for these sales than it did for any of the other 800 million

28   listings on its website, or that eBay provided any assistance to these sellers beyond

24

what it provides to any user of its website. As noted above, Wimo does not allege that eBay was aware of the Seller Defendants until they were brought to eBay's attention by Wimo's NOCIs, and Wimo does not allege any facts supporting collusion thereafter.

When considering the plausibility of an alleged intent to defraud, courts must consider an "obvious alternative explanation" for the defendant's actions. *Eclectic*, 751 F.3d at 996. The explanation here is obvious: eBay provided nothing more than its regular services, and some sellers used those services to list allegedly infringing items. Because the FAC cannot contradict the obvious, non-actionable explanation, the claim fails. *See Walgreen*, 719 F.3d at 855 (allegation that Walgreens and drug manufacturer were acting in concert while maintaining the appearance of a normal commercial relationship, although "possible," was not "'plausible on its face'") (quoting *Iqbal*, 556 U.S. at 678); *Eclectic*, 751 F.3d at 1000 (dismissing civil RICO claim where the complaint's factual allegations "do not support a plausible inference that Defendants had the required specific intent to defraud").

## CONCLUSION

For the foregoing reasons, eBay respectfully requests that the Court dismiss Wimo's amended civil RICO claim against eBay with prejudice.

Dated:  December 15, 2015          O'MELVENY & MYERS LLP

                                  By:    /s/ David R. Eberhart
                                         David R. Eberhart

                                  Attorneys for Defendant eBay Inc.

25