R. Rex Parris, Esq. (SBN 96567)
rrparris@rrexparris.com
Kitty K. Szeto, Esq. (SBN 258136)
kszeto@rrexparris.com
**R. REX PARRIS LAW FIRM**
43364 10th Street West
Lancaster, CA 93534
Telephone: (661) 949-2595
Facsimile: (661) 949-7524

Deborah A. Klar, Esq. (SBN 124750)
dklar@dklarlaw.com
2934 1/2 Beverly Glen Circle
Bel Air, California 90077
Telephone: (310) 858-9500

Attorneys for Plaintiff
WIMO LABS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wimo Labs, LLC | Case No.: 8:15-cv-01330 JLS (KESx) |
| Plaintiff, | |
| v. | [Honorable Josephine L. Staton Magistrate Judge Karen E. Scott] |
| eBay, Inc., a Delaware Corporation; PayPal Holdings, Inc., a Delaware Corporation, Hoonie S. Kang, an individual; D.I.R. Enterprises, Inc., a California Corporation; Simon Chen, an individual; cyber-innovation, an entity of unknown origin; ledno3, an individual or entity of unknown origin; usa-cyberlink, an individual or entity of unknown origin; usacyber, an individual or entity of unknown origin; usgadget-tech, an individual or entity of unknown origin; here-buy, an individual or entity of unknown origin; laptop-cyber, an individual or entity of unknown origin; and bearbear-2010, an individual or entity of unknown origin, | **PLAINTIFF WIMO LABS, LLC'S OPPOSITION TO DEFENDANT PAYPAL HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIFTH CAUSE OF ACTION OF THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**<br><br>Date: January 29, 2016<br>Time: 2:30 p.m.<br>Dept.: Courtroom 10A |
| Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**PAGE**

I.  INTRODUCTION ..................................................................................1

II.  STATEMENT OF THE FACTS ...........................................................2

    A.  The Enterprise ...........................................................................2

    B.  PayPal And eBay Are Partners...................................................3

    C.  Paypal's Obligations As A FinCEN Money Transmitter..............3

    D.  Paypal's Role In The Enterprise.................................................4

    E.  Paypal's Activities Are Vital To The Success Of The Enterprise. ...............4

    F.  Paypal Is Aware Its Services Are Used On An On-Going Basis
       To  Facilitate The Transfer Of Counterfeit Lunatik Products.......................5

III.  ARGUMENT .......................................................................................6

    A.  Legal Standard...........................................................................6

    B.  The FAC Sufficiently Alleges The Existence Of An
       Association-In-Fact  RICO Enterprise. .........................................7

       1.  The "Common Purpose" RICO Element Is Adequately Pled. ............7

       2.  The Ongoing Organization RICO Element Is Adequately Pled.........8

       3.  The Continuity RICO Element Is Adequately Pled...........................9

    C.  PayPal Participated in the Affairs of the Enterprise. ...................10

    D.  The FAC Alleges That PayPal Engaged In Predicate
       Acts of Wire Fraud. ....................................................................17

    E.  The FAC Alleges That Wimo Suffered Injury Proximately
       Caused By  Defendants' Alleged Misappropriation Of Its
       Intellectual Property. ...................................................................19

IV.  CONCLUSION....................................................................................23

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

**Cases**

*Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*,
  04 Civ. 2934 (ERK), 2005 WL 3710370
  (E.D.N.Y. Feb. 22, 2005) ...................................................................15

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) .........................................................................22

*ARC Ecology v. U.S. Dep't of Air Force*,
  411 F.3d 1092 (9th Cir.2005) ..............................................................6

*Baisch v. Gallina*,
  346 F.3d 366 (2d Cir. 2003) ...............................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................6

*Boyle v. United States,*
  556 U.S. 938 (2009) .......................................................................9, 13

*Bridge v. Phoenix Bond & Indemnity Co.,*
  553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008) ........................20, 21

*Bryant v. Mattel, Inc.,*
  573 F. Supp. 2d 1254 (C.D. Cal. 2007)...........................................8, 20, 22

*Canyon County v. Syngenta Seeds, Inc.,*
  519 F.3d 969 (9th Cir.2008) ..............................................................20

*Chaset v. Fleer/Skybox Int'l,*
  300 F.3d 1083 (9th Cir.2002) .............................................................23

*Conley v. Gibson*,
  355 U.S. 41 (1957) ............................................................................6

*Corley v. Rosewood Care Ctr.*,
  388 F.3d 990 (7th Cir.2004) ...............................................................21

ii

1

# TABLE OF AUTHORITIES

2

PAGE(S)

3

**Cases**

4

*Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,

373 F. Supp. 2d 829 (S.D. Ind. 2005) ........................................................... 14

*Doe v. United States*,

419 F.3d 1058 (9th Cir.2005) ......................................................................... 6

*Dooley v. Crab Boat Owners Ass'n*,

No. 2004 WL 902361 (N.D. Cal. Apr. 26, 2004) ......................................... 18

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,

751 F.3d 990 (9th Cir.2014) ........................................................................... 7

*Edgenet, Inc. v. GS1, AISBL*,

742 F.Supp.2d 997 (E.D. Wis. 2010) ........................................................... 22

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,

385 F.3d 159 (2d Cir. 2004) ......................................................................... 15

*Friedman v. 24 Hour Fitness USA, Inc.*,

580 F. Supp. 2d 985 (C.D. Cal. 2008) ............................................................ 9

*Griggs v. Pace Am. Group, Inc.*,

170 F.3d 877 (9th Cir.1999) ......................................................................... 24

*Gutierrez v. Givens*,

1 F. Supp. 2d 1077 (S.D. Cal. 1998) ............................................................ 11

*Hemi Grp. v. City of New York*,

559 U.S. 1 (2010) ..................................................................................... 15, 22

*Holmes v. Sec. Inv'r Prot. Corp.*,

503 U.S. 258 (1992) ...................................................................................... 22

*Hopkins v. Am. Home Mortgage Servicing, Inc.*,

No. 13-4447 RS, 2014 WL 580769 (N.D. Cal. Feb. 13, 2014) .................... 23

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Imagineering, Inc. v. Kiewit Pac. Co.*,
  976 F.2d 1303 (9th Cir. 1992) .......................................................................23

*In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*,
  601 F. Supp. 2d 1201 (S.D. Cal. 2009) ...........................................................9

*In re Nat. W. Life Ins. Deferred Annuities Litig.*,
  635 F. Supp. 2d 1170 (S.D. Cal. 2009) ...........................................................8

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ..............................................11, 12, 18

*Jubelirer v. MasterCard Int'l, Inc.*,
  68 F.Supp.2d 1049 (W.D.Wis.1999) ................................................................9

*Just Film, Inc. v. Merch. Servs., Inc.*,
  2012 WL 6087210 (N.D. Cal. Dec. 6, 2012) ............................................20, 21

*Kearny v. Hudson Meadows Urban Renewal Corp.*,
  829 F.2d 1263 (3d Cir.1987) ..........................................................................22

*Marshall & Ilsley Trust Co. v. Pate*,
  819 F.2d 806 (7th Cir.1987) ......................................................................21, 22

*MCM Partners, Inc. v. Andrews–Bartlett & Associates, Inc.*,
  62 F.3d 967 (7th Cir.1995) .............................................................................14

*Mendoza v. Zirkle Fruit Co.*,
  301 F.3d 1163 (9th Cir. 2002) ........................................................................21

Moyo v. Gomez,
  32 F.3d 1382 (9th Cir.1994) .............................................................................6

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ...........................................................7, 8, 9, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Oscar v. Univ. Students Co-op Ass'n,*
   965 F.2d 783 (9th Cir. 1992) ................................................................. 23

*Owens v. Kaiser Found. Health Plan, Inc.,*
   244 F.3d 708 (9th Cir.2001) .................................................................. 24

*Price v. Benjamin,*
   2014 WL 3653440 (E.D.N.Y. July 22, 2014) ........................................... 9

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC,*
   2008WL 269080 (E.D.Cal. Jan. 29, 2008) ............................................. 23

*Resolution Trust Corp. v. Keating,*
   186 F.3d 1110 (9th Cir.1999) ................................................................ 19

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) ...................................................................... passim

*Rezner v. Bayerische Hypo–Und Vereinsbank AG,*
   630 F.3d 866 (9th Cir. 2010) ................................................................. 22

*Rosenson v. Mordowitz,*
   No. 11 CIV. 6145 JPO, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) ........ 14

*Rosner v. Bank of China,*
   528 F. Supp. 2d 419 (S.D.N.Y. 2007) ................................................. 9, 10

*Sebastian Int'l, Inc. v. Russolillo,*
   128 F. Supp. 2d 630 (C.D. Cal. 2001) .................................................... 21

*Sedima, S.P.R.L. v. Imrex Co.,*
   473 U.S. 479 (1985) ................................................................... 7, 19, 21

*Tiffany (NJ) Inc. v. eBay, Inc.,*
   576 F.Supp. 2d 463 (S.D.N.Y. 2008) ..................................................... 10

v

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*United States v. Feldman,*
  853 F.2d 648 (9th Cir.1988) ...................................................................... 8

*United States v. Oreto,*
  37 F.3d 739 (1st Cir. 1994) ...................................................................... 11

*Walter v. Drayson,*
  538 F.3d 1244 (9th Cir. 2008) ........................................................ 11, 12, 13

**Statutes**

18 U.S.C. § 1962(c) ...................................................................... 1, 6, 7

**Rules**

Fed.R.Civ.P. § 8(a)(2) ...................................................................... 6

Fed.R.Civ.P. § 2(b)(6) ...................................................................... 6

# I.    __INTRODUCTION__

Defendant PayPal, Inc.'s  ("PayPal") motion to dismiss Plaintiff Wimo Labs, LLC ("Plaintiff" or "Wimo") Fifth Cause of Action of the First Amended Complaint ("FAC") pursuant to Rule 12(b) of the Federal Rules of Civil Procedure should be denied because it has failed to demonstrate that Wimo failed to plead a claim against it for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c).  Relief therefore cannot be granted.

Contrary to PayPal's assertions, the FAC alleges all the elements of a RICO claim against PayPal including, but not limited to, (i) the existence of an associated-in-fact enterprise; (ii) PayPal's participation in the conduct of the associated-in-fact enterprise; (iii) PayPal's predicate acts of wire fraud in furtherance the fraudulent scheme alleged in the FAC; and (iv) damages suffered by Plaintiff proximately caused by Defendants' unlawful conduct.

PayPal's attempt to immunize itself from RICO liability as an outside service provider cannot be reconciled with the allegations in the FAC that establish that PayPal and its joint-venture partner, Defendant eBay, Inc. ("eBay"), are indispensable participants in and vital to the fraudulent scheme to misappropriate Plaintiff's intellectual property through the promotion, sale, and shipment of Fake Lunatik products for profit, by means of false or fraudulent pretenses, representations, or promises." eBay recognized that it and PayPal (its wholly-owned subsidiary until 2015) could reap tremendous profits from the sale of illegal Fake Products if ebay.com could provide a platform for sellers to cheaply source and distribute those products from overseas, using PayPal's services to quickly and easily facilitate the transactions.

PayPal knows these goods are largely counterfeit because, among other things, it investigates chargebacks and chargeback disputes involving the sale of products of obvious Fake Lunatik Products and receives documentation that provided eBay with notice that it was being used by thousands of sellers in connection with the promotion and sale of counterfeit iPhone cases that infringe on Plaintiff's Marks.  58 ECF 85:1–13.

It is also admitted in SEC filings that PayPal is aware that its services are being used in connection with trademark infringement which, by definition, involves the misappropriation of the trademark holder's intellectual property.  58 ECF 92:18–93:2.

PayPal's acts and omissions as a participant in the associated-in-fact Enterprise described in the FAC, in furtherance of Defendants' fraudulent scheme are properly actionable under RICO.  Accordingly, Plaintiff's Fifth Cause of Action against PayPal should not be dismissed.

II.  **STATEMENT OF THE FACTS**

   A.   **The Enterprise**

The scheme alleged in this case in support of Plaintiff's RICO claim is Defendants' misappropriation of Plaintiff's intellectual property through the promotion, sale, and shipment of Fake Lunatik Products for profit "by means of false or fraudulent pretenses, representations, or promises."  58 ECF 101:12–102:9.  The RICO Enterprise consists of eBay, PayPal, the Seller Defendants, and other Unauthorized Sellers, some of whom are unidentified co-conspirators, using eBay.com and PayPal's proprietary global technology platform to effect the promotion, advertisement, offer for sale, sale and distribution of obvious counterfeit Lunatik products for profit.  58 ECF 90:6–22. PayPal, eBay's alleged joint venture partner (*see* 58 ECF 78:5–10), knowingly provided the Enterprise with its proprietary global technology platform to facilitate the common purpose of the Enterprise's participants.  58 ECF 58:14–25.

The Defendants and Unauthorized Sellers function as a cohesive group with distinct roles and responsibilities, operating in the United States, China, and elsewhere. eBay, the Seller Defendants and Unauthorized Sellers have misappropriated Plaintiff's intellectual property through, *inter alia*, their respective promotion, advertisement and offer for sale of obvious Fake Lunatik products through ebay.com.  58 ECF 90:23–91:12.  While the members of the Enterprise have changed over time and its members may have held different roles at different times (i.e. PayPal was a wholly-owned subsidiary of eBay until recently), the Enterprise has generally been structured to operate

2

as a unit in order to accomplish the goals of Defendants' alleged scheme, profiting from the promotion, advertisement, offer for sale, sale and distribution of obvious Fake Lunatik products.  58 ECF 90:23–91:12.

**B.** __PayPal And eBay Are Partners.__

PayPal was a wholly-owned subsidiary of eBay until July 2015.  58 ECF 7:17–8:6.  Now, based on their agreements, PayPal and eBay are joint venture partners.  58 ECF 7:17–8:6.  eBay is contractually bound to maintain the majority of its GMV (the total volume in dollars of sales on eBay) to be processed through PayPal.  Specifically, eBay has guaranteed that 80% of GMV is paid via PayPal, otherwise it will have to pay PayPal "restitution."  58 ECF 18:18–22.  Based on this and other post-spin off agreements, it is alleged there will be no material change post-spin off in the nature and scope of the services that PayPal provides to the Enterprise in connection with its approval of sellers on ebay.com who are engaged in the offer and sale of Fake Lunatik Products and its continuing processing of transactions involving Fake Lunatik Products. 58 ECF 7:17–8:6.

**C.** __Paypal's Obligations As A FinCEN Money Transmitter.__

PayPal has obtained licenses to operate as a money transmitter (or its equivalent) in the United States, in the states where it is required, and the District of Columbia, the U.S. Virgin Islands and Puerto Rico.  58 ECF 68:15–18.  PayPal's subsidiary, Venmo, is also licensed as a money transmitter in certain U.S. states.  58 ECF 68:15–18.  As a result, PayPal is subject to various anti-money laundering and counter-terrorist financing laws and regulations around the world that prohibit, among other things, its involvement in transferring the proceeds of criminal activities.  58 ECF 68:19–22.

Among these requirements, PayPal is subject to regulation as a money transmitter by the Financial Crimes Enforcement Network ("FinCEN").  "Money transmitters must make extensive reporting to FinCEN concerning the personal information of their customers as well as transactional data, sometimes outright deny service to certain customers, and even continue servicing customers while permitting government agencies

PLAINTIFF'S OPPOSITION TO PAYPAL'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

to monitor each of the transactions. Suspicious transactions – or even transactions in due course over a certain dollar amount – must be reported to FinCEN.  58 ECF 69:13–23.  As a regulated entity, PayPal has an affirmative obligation to perform the appropriate level of diligence on its merchants that would entail determining whether a merchant is selling counterfeit or other illegal goods.  58 ECF 69:24–26.

### D.      Paypal's Role In The Enterprise.

PayPal participates in Defendants' fraudulent scheme as follows.  First, before a seller can effect transactions on ebay.com using PayPal's proprietary platform, a seller must be approved by PayPal.  That approval is subject to vigorous FinCEN diligence requirements that mandate PayPal obtain personal information of their customers as well as transactional data to determine whether a merchant is selling counterfeit products on ebay.com.  58 ECF 69:13–23.  Second, PayPal is regularly involved in the sales of Fake Lunatik Products by accepting the credit card numbers for transactions involving the sale of Fake Lunatik products, processing the transactions and paying the proceeds of the sales of the Fake Lunatik products to the Seller Defendants and other Unauthorized Sellers.  58 ECF 82:3–15.  It did this knowing that sellers used its payment processing and payment services to facilitate the sale of Fake Lunatik Products through ebay.com, but nonetheless continued to provide these sellers with its services.  58 ECF 83:4–8.

PayPal knows these goods are largely counterfeit because, among other things, it investigates chargebacks and chargeback disputes involving the sale of products of obvious Fake Lunatik products 58 ECF 85:1–13.  It is also admitted in SEC filings that PayPal is aware that its services are being used in connection with trademark infringement which, by definition, involves the misappropriation of the trademark holder's intellectual property.  58 ECF 92:18–93:2.

### E.      Paypal's Activities Are Vital To The Success Of The Enterprise.

PayPal's activities are vital to the success of the Enterprise.  PayPal enables individuals and businesses to securely, easily and quickly send and receive payments online and through a broad range of mobile devices.  58 ECF 17:10–17.  The *most*

4

*successful* avenue for shutting down a counterfeiter is to cut off its flow of funding—such as the flow of funding facilitated by PayPal here.  58 ECF 70:14–25.  PayPal refrains from such action because the success of the PayPal business model relies on eBay's active promotion and facilitation of the sale of an enormous number of Fake Products through ebay.com.  The acts and omissions of PayPal enable unauthorized sellers of Fake Products by providing them with credit card processing available on a global scale.  58 ECF 17:10–17.  Recognizing that the sale of Fake Products on ebay.com significantly contribute to reported profits, PayPal's policies and practices ignore evidence of the unlawful activities by its unauthorized sellers.  58 ECF 18:23–19:8.

## F.   Paypal Is Aware Its Services Are Used On An On-Going Basis To Facilitate The Transfer Of Counterfeit Lunatik Products.

PayPal exercises significant control over the unauthorized sellers' means of trademark infringement by means of its control over the transactions conducted through ebay.com.  Given this control, PayPal has the ability to, among other things, identify and take action against counterfeiters based on activities on ebay.com.  58 ECF 19:9–13.  In addition, the FAC alleges PayPal recognizes it could reap tremendous profits from the sale of Fake Products if ebay.com could provide a platform for sellers to cheaply source those products overseas.  58 ECF 21:16–19.  It is further alleged that PayPal provides buyers with the same or a similar instruction provided by eBay, i.e., it instructs customers to return counterfeit products.  58 ECF 26:16–23.  And instead of taking any action against the Unauthorized Seller, it facilitates the Seller's receipt back of the Fake Products, which are likely then resold to another unsuspecting eBay customer.  58 ECF 26:16–23.

PayPal admits it has actual knowledge that they are providing payment processing services to merchants selling infringing products.  58 ECF 70:14–25.  PayPal and eBay, variously, have been and are in a position to exercise control over the means of any eBay seller's infringement and based on that control could impose appropriate remedies in

accordance with their own internal procedures, including, termination of service. 58 ECF 70:14–25. But instead of cooperating or taking effective remedial action against the counterfeiters, eBay and PayPal do not take the reasonable means they have available to withdraw their services and continue to allow ebay.com and PayPal to be used to advertise counterfeit Lunatik products. 58 ECF 6:17–22. The FAC alleges that PayPal refuses to take actions against the counterfeiters because it cannot continue to enjoy the enormous profits derived from the proliferation of fake products sold on the eBay website if the intentional infringing unauthorized sellers are excluded. 58 ECF 6:23–7:6.

## III.   ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed.R.Civ.P. 8(a)(2)); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. *See Doe v. United States,* 419 F.3d 1058, 1062 (9th Cir.2005); *ARC Ecology v. U.S. Dep't of Air Force,* 411 F.3d 1092, 1096 (9th Cir.2005); *Moyo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir.1994).

Wimo alleges that PayPal's actions constitute racketeering under 18 U.S.C. § 1962(c) which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §

6

1962(c).  Accordingly, four elements are necessary. Plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Eclectic Properties E., LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 997 (9th Cir.2014).  For purposes of construing these elements, "RICO is to be read broadly . . . [and] is to be liberally construed to effectuate its remedial purposes." *Sedima,* at 497–98.

**B.    The FAC Sufficiently Alleges The Existence Of An Association-In-Fact RICO Enterprise.**

PayPal argues that the FAC does not allege the existence of an association-in-fact RICO enterprise because "Wimo fails to allege any facts that plausibly suggest that PayPal, eBay, the three Seller Defendants and the more than two thousand Unauthorized Sellers joined together in an association-in-fact enterprise for the purpose of selling counterfeit goods."  63 ECF 15:17–20.  Also in support of its no association-in-fact RICO enterprise argument, PayPal asserts, (i) "PayPal's nonexistent duty to police IP infringement cannot establish a RICO Enterprise;" and (ii) that "court's have consistently held that payment processing alone does not support a RICO Enterprise. PayPal's arguments, however, do not address the controlling criteria for an associated-in-fact enterprise prescribed by *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007).  Based on those criteria, PayPal's inapposite arguments should be summarily rejected.

Consistent with *Odom,* the FAC alleges the three elements essential to plead an associated in fact enterprise in the Ninth Circuit: common purpose, ongoing organization and continuing unit.  PayPal tacitly concedes that is the case as it nowhere asserts that the FAC does not satisfy those criteria.  Each *Odom* criteria is discussed below.

**1.    The "Common Purpose" RICO Element Is Adequately Pled.**

RICO's common purpose element "does not require the enterprise participants to share all of their purposes in common.  *See, e.g., Odom,* 486 F.3d at 552 (finding a single common purpose sufficient).  Nor do all members of the enterprise need to be directly

7

working with all other members of that enterprise.  *See United States v. Feldman,* 853 F.2d 648 (9th Cir.1988).

The FAC alleges that Defendants and other unauthorized sellers have formed an enterprise in fact whose purpose is to misappropriate Plaintiff's intellectual property through the promotion, sale, and shipment of Fake Lunatik Products for profit.  *See, e.g.,* 58 ECF 90:6–13; *see also* 58 ECF 90:23–91:1 (Defendants and other unauthorized sellers have formed an enterprise "for the common purpose of carrying out an ongoing criminal enterprise . . . through a systematized operation to sell and profit from the sale of obvious counterfeit goods including obvious Fake Lunatik Products that infringe on one or more of Plaintiff's Marks").  These allegations adequately plead RICO's common purpose element under *Odom.*

## 2.   The Ongoing Organization RICO Element Is Adequately Pled

Under *Odom,* "[a]n ongoing organization is 'a vehicle for the commission of two or more predicate crimes.' "  486 F.3d at 552.  In *Bryant v. Mattel, Inc.,* 573 F. Supp. 2d 1254, 1263 (C.D. Cal. 2007), plaintiffs alleged that "the counter-defendants coordinated their many efforts at depriving Mattel of its proprietary information and its intellectual property."  Specifically, the Court found that "allegations regarding common use of the 'plot04 @aol.com' email address to transfer confidential Mattel information to MGA support the finding of an 'ongoing organization.'" *Id.*  The Court should reach the same result here.  As in *Bryant,* Wimo alleges that Defendants, using the panoply of services provided by eBay and PayPal to unauthorized sellers on ebay.com, coordinated their efforts to deprive Wimo of its intellectual property.  *See* 58 ECF 90:6–22.  That the unauthorized sellers may be competitors does not mandate a finding that the FAC fails to allege an association-in-fact RICO Enterprise.  *See In re Nat. W. Life Ins. Deferred Annuities Litig.,* 635 F. Supp. 2d 1170, 1175 (S.D. Cal. 2009) (rejecting defendant's argument that "independent businesses and competitors cannot share a common purpose" in associated-in-fact enterprises (citing *In re Countrywide Fin. Corp. Mortgage*

8

*Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1211 (S.D. Cal. 2009); *Odom v. Microsoft Corp.*, 486 F.3d 541, 550 (9th Cir. 2007)).

### 3.    The Continuity RICO Element Is Adequately Pled

Under *Odom*, "[t]he continuity requirement does not, in itself, require that every member be involved in each of the underlying acts of racketeering, or that the predicate acts be interrelated in any way," only that the associate's behavior evince "ongoing rather than isolated activity." *Id.* at 552–53 (internal quotation marks and citations omitted); *see generally Boyle v. United States,* 556 U.S. 938, 951 (2009).  Here, the allegations in the FAC establish that Defendants' fraudulent scheme has been ongoing for a period of years, since at least 2013.  That time frame is sufficient to satisfy the RICO continuity element.  *See Odom,* 486 F.3d at 552–53.

PayPal's assertion that contractual relationships for financial services are insufficient to create an association in fact RICO enterprise relies on *Jubelirer v. MasterCard Int'l, Inc.,* 68 F.Supp.2d 1049, 1052-53 (W.D.Wis.1999) and *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 421 (S.D.N.Y. 2007).  PayPal's reliance on both cases is misplaced.

*Jubelirer* does not follow the standards prescribed by *Odom*.  Instead, the *Jubelirer* court applied the "ascertainable structure" requirement that the Ninth Circuit has rejected.  *See Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 993 (C.D. Cal. 2008).

*Rosner* has been cited for the proposition that plaintiffs "failed to adequately allege a RICO enterprises because no facts alleged showed how defendants 'improperly functioned as a unit.'"  *Price v. Benjamin*, 2014 WL 3653440, at *5 (E.D.N.Y. July 22, 2014) (citing *Rosner v. Bank of China,* 528 F.Supp.2d 419, 429 (S.D.N.Y.2007)).  Here, such facts are alleged in the FAC.  The facts alleged describing the pre and post spin-off relationship show how PayPal and eBay "improperly functioned as a unit" (*see*, *e.g.*, 58 ECF 78:5–79:13, 82:7–11) while sharing a common purpose to profit by the misappropriation of Plaintiff's intellectual property, a scheme which could not have been

9

successfully accomplished without an express or implied agreement between PayPal and eBay, as the FAC alleges, to refrain from exercising control over the means of any eBay's seller's infringement in connection with the offer and sale of Fake Lunatik products on ebay.com.   *See, e.g.,* 58 ECF 68:4–70:25.   Specifically, unlike the complaint in *Rosner*, the FAC alleges "EBay and PayPal refuse to take such reasonable remedial action and instead promote the unlawful activities of the Unauthorized Sellers, as described more particularly hereinafter, and/or manufacture the false optic that they have no knowledge or reason to suspect that users of its services are infringing on Plaintiff's protected marks." 58 ECF 70:26–71:3.

PayPal correctly states that the FAC alleges that as a regulated entity, PayPal has an affirmative obligation as a FinCen licensed money transmitter to perform the appropriate level of diligence on its merchants that would entail determining whether a merchant is selling counterfeit or other illegal goods.  *See* 58 ECF 69:13–26.  However, consistent with *Odom*, those allegations are not relevant, let alone dispositive, as PayPal suggests, whether the FAC fails to allege an association-in-fact RICO enterprise.  PayPal cites no authority that could lead the Court to a contrary conclusion.  The *Tiffany* decision on which PayPal relies, does not discuss the issue.  *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.Supp. 2d 463, 470 (S.D.N.Y. 2008).   Accordingly, PayPal's "nonexistent duty to police IP infringement" should be rejected.

### C.    PayPal Participated in the Affairs of the Enterprise.

Generally relying on cases analyzing whether an outsider—such as a law firm or accounting firm—conducted or participated in the conduct of an enterprise's affairs, PayPal seeks to dismiss Plaintiff's RICO claim on the grounds that the Complaint fails to sufficiently allege that PayPal participated in the conduct of a RICO Enterprise.  *See* 63 ECF 22:27–23:6.[1]  PayPal asserts, for example, that Plaintiff's RICO claim should be

---

[1]   PayPal relies on *Reves v. Ernst & Young*, 507 U.S. 170 (1993), ignoring the post-*Reves* concept of "outside" as distinct from "inside" involvement in an enterprise

---

1   dismissed because "the FAC comes nowhere close to alleging facts that lead to a
2   plausible inference that PayPal operated, managed or exerted any control over the affairs
3   of the enterprise.  Nowhere does the FAC describe how PayPal controlled or directed the
4   Enterprise in any promotion, advertisement, or sale of counterfeit products by eBay or
5   the Seller Defendants."  63 ECF 23:7–11.  PayPal's assertions cannot be reconciled with
6   the allegations in the FAC.  As a result, PayPal fails to correctly apply the law.

7        Here, the Court need not rely on inferences.  Specific facts describing PayPal's
8   participation in the conduct of the affairs of the associated-in-fact Enterprise are included
9   in the FAC.  Further, based on *Reves*, "[i]n the RICO context, 'directing' has a different
10  meaning than is commonly understood.  A defendant need not be in charge of or have
11  'significant control over or within [the] enterprise.' "  *In re WellPoint, Inc. Out-of-*
12  *Network UCR Rates Litig*., 903 F. Supp. 2d 880, 910 (C.D. Cal. 2012) (quoting *Reves,*
13  507 U.S. at 179 n. 4 (citation omitted)).

14       Consistent with the standard articulated in *Reves* and the FAC's allegations,
15  PayPal cannot credibly be characterized as an "outsider" who merely provides financial
16  services to the Enterprise.  The facts alleged describing the pre and post spin-off
17  relationship show how PayPal and eBay "improperly functioned as a unit" sharing a
18  common purpose to profit by the misappropriation of Plaintiff's intellectual profit, a
19  scheme which could not have been successfully accomplished without an express or
20  implied agreement between PayPal and eBay, as the FAC alleges, to refrain from
21  exercising control over the means of any eBay's seller's infringement in connection with
22
23

24  expressly recognized by the Ninth Circuit in *Walter v. Drayson*, 538 F.3d 1244, 1249
25  (9th Cir. 2008).  As the First Circuit explained in *United States v. Oreto*, 37 F.3d 739,
26  750 (1st Cir. 1994), "*Reves* is a case about the liability of *outsiders* who may assist in the
27  enterprise's affairs."  *See also Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1086 (S.D. Cal.
28  1998) (explaining "[t]he *Reves* test is intended to protect outsider, professional service
    providers who might assist a racketeering enterprise.")

PLAINTIFF'S OPPOSITION TO PAYPAL'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

the offer and sale of Fake Lunatik products on ebay.com.  *See, e.g.,* 58 ECF 7:17–8:6; 18:13–19:13; 68:4–70:25; 78:5–79:13; 82:7–11; 90:6–22.

In *In re WellPoint, Inc. Out-of-Network UCR Rates Litig,* where one defendant was "a wholly-owned subsidiary of [another]," the Court found that plaintiff "plausibly alleges that [the subsidiary] occupied a 'position in the chain of command' through which the affairs of [the parent], and therefore the enterprise, were conducted." 903 F. Supp. 2d at 912 (citing *Walter,* 538 F.3d at 1249; *LSJ Inv. Co. v. O.L.D., Inc.,* 167 F.3d 320, 324–25 (6th Cir.1999) ("holding allegations that first individual defendant was controlling shareholder and owner of one corporation at the time of plaintiff's dealing with defendants, and that second individual defendant was controlling shareholder and owner of second corporate defendant were sufficient to plead direction of an enterprise involving the corporations under the standard announced in *Reves*" (parenthetical in original).)  Here, the same result should obtain.

The FAC's allegations establish that PayPal, a wholly-owned subsidiary of eBay until July 2015 and now eBay's joint venture partner, knows that it is indispensable and vital to the success of Enterprise for at least the following reasons.  First, PayPal provides critical payment and financing services to Unauthorized Sellers, such as the Seller Defendants, that are also vital to the achievement of the Enterprise's primary goal and to the success of the Enterprise.  Second, as alleged, only eBay and PayPal have the ability to exercise control over eBay's and any eBay's sellers' misappropriation of Plaintiff's intellectual property for purposes of the promotion of Fake Lunatik Products for profit in connection with the regular and continuous offer and sale of Fake Products on ebay.com.  58 ECF 6:1–11 and 70:14–18.

For example, the FAC alleges that because PayPal provides critical payment and financing services, it has the ability "to exercise control over the means of any eBay's seller's infringement and the offer and sale of Fake Products on ebay.com by adopting Best Practices for Voluntary Measures in Addressing the Sale of Counterfeits on the Internet by Payment Service Providers ("PSPs") promulgated by the International

12

Trademark Association. Best Practices include, but are not limited to, the following: (i) PSPs should have policies in place prohibiting the use of their services for the purchase and sale of goods that are determined to be counterfeit under applicable law; (ii) PSPs should have procedures for trademark owners to report websites that use a PSP's network to process payments for the unlawful sales; and (iii) if a PSP observes repeated violations of the PSP's policies and applicable trademark laws through the use of its payment service, PSPs may choose to impose appropriate remedies in accordance with their own internal procedures, including, for example, termination of service.  58 ECF 70:1–13.  As alleged, the misappropriation of Plaintiff's intellectual property for purposes of the promotion of Fake Lunatik products for profit is enabled by eBay and PayPal and can only continue to proliferate because of their joint actions and intentional inaction – both of with are vital and indispensable to the successful accomplishment of the Enterprise's common goals and purpose.  58 ECF 91:13–93:2.

These allegations establish that (i) PayPal occupies a position in the "chain of command" through which the affairs of the Enterprise are conducted; (2) PayPal knowingly implemented the decisions of eBay and PayPal to continue provide services to Unauthorized Sellers and not exercise control over the means of any eBay's seller's misappropriation of Plaintiff's intellectual property by, for example, adopting PSPs promulgated by the International Trademark Association; and (iii) PayPal's participation is "vital" to the success of the Enterprise.

Consistent with the test articulated in *Reves* (*see* 507 U.S. at 179), the FAC pleads the requisite RICO Enterprise "conduct" allegations under this Circuit's prescribed standard.[2]  *See Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (finding that a

---

[2]   In light of *Boyle*'s broad and undifferentiating holding, commentators recommend that "commercial litigators defending RICO claims" should focus on RICO's conduct element.  *See* 53 No. 2 DRI For Def. 48.  "Under this element, mere association with an enterprise does not make a defendant liable under RICO."  53 No. 2 DRI For Def. 48.

---

participant who is indispensable and vital to the achievement of the enterprise's goal participates in conduct of RICO enterprise (citing *MCM Partners, Inc. v. Andrews–Bartlett & Associates, Inc.*, 62 F.3d 967, 979 (7th Cir.1995)); *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 839 (S.D. Ind. 2005) (Referring to *MCM* and stating that plaintiff had sufficiently stated a claim under § 1962(c)'s conduct requirement with respect to certain members of the alleged association-in-fact enterprise where participants were alleged to be "vital to the achievement of the enterprise's primary goal").

"It is beyond doubt that in certain circumstances the use of an enterprise's resources may be central to the commission of the racketeering activities such that the use could transform a legitimate enterprise into a RICO enterprise for the purposes of the statute." *Rosenson v. Mordowitz*, No. 11 CIV. 6145 JPO, 2012 WL 3631308, at *7 (S.D.N.Y. Aug. 23, 2012). Here, that is what the FAC's allegations, fairly construed, establish.

Specifically, the FAC alleges "PayPal could reap tremendous profits from the sale of Fake Products if ebay.com could provide a platform for sellers to cheaply source those products overseas." The FAC continues, ***to that end***, "eBay developed a business strategy that, among other things, (i) launched eBay China; (ii) used non-US eBay account managers to target sellers in foreign markets, where fake products could be cheaply manufactured, to become high volume sellers on ebay.com; and (ii) committed substantial eBay resources to the promotion and development of these sellers' business by negotiating highly favorable trilateral agreements between the US Postal Service, eBay China and the Hong Kong Post office to offer China and Hong Kong eBay sellers fast but low cost shipping options. 58 ECF 21:53–27. The FAC then details, as explained above, how and why, consistent with its business strategy, PayPal is an indispensable part of the Enterprise engaged in a scheme to sell and profit from the sale of counterfeit goods through ebay.com by, among other things, the promotion, advertisement, offer for sale, sale, financing and distribution of obvious counterfeit

Lunatik products. *See* 58 ECF 66:24–67:2 (explaining PayPal's cross-border reach allows counterfeiters to reach global base of consumers who rely on a wide range of different currencies); 58 ECF 70:1–5 (alleging that at all times, PayPal "had the ability to exercise control over the means of any eBay's seller's infringement and the offer and sale of Fake Products on ebay.com").

A complaint need only allege that a RICO defendant had "discretionary authority" in carrying out instructions from those higher up the chain of command, or "played some part in directing the affairs of the RICO enterprise." *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003) (abrogated on other grounds); *Hemi Grp. v. City of New York*, 559 U.S. 1 (2010). "[I]t is no great leap to find that one who assists in the fraud also conducts or participates in the conduct of the affairs of the enterprise." *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).

Courts have found this "low hurdle" is met where enterprise participants knowingly facilitated and encouraged the scheme by providing unique or essential services, including banking or shipping services, issuing or obtaining false certifications, concealing deceptive practices, or entering into profit sharing agreements with other participants. *See, e.g.*, *Baisch*, 346 F.3d at 376 (holding a defendant insurance broker had "demonstrated his discretionary authority and direction" of a RICO enterprise by "recruiting financing," "obtaining bonds and insurance coverage," "issuing false insurance certificates," and "concealing" the enterprise's deceptive practices).

Contrary to PayPal's argument, there is no bright line rule that a service provider cannot also "operate or manage" a RICO enterprise.  Rather, the "key question is whether the provision of these services allows the defendant to direct the affairs of the enterprise." *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, 04 Civ. 2934 (ERK), 2005 WL 3710370, at *8 (E.D.N.Y. Feb. 22, 2005) (denying physicians' motion to dismiss).

The FAC describes PayPal's central role in the Enterprise.  Without the means to finance and process transactions through PayPal—eBay's wholly-owned subsidiary and now joint venture partner—the common "for profit" goal of the Enterprise could not be

15

achieved.   PayPal operates and directs the platform on which it provides those vital services to other members of the Enterprise.   Under *Reves*, that activity, alone, should constitute "participation in the conduct" of the Enterprise for purposes of RICO.  PayPal, however, provides another vital and indispensable service to the Enterprise. Notwithstanding its diligence and other obligations as a licensed FinCEN money transmitter (which PayPal does not dispute)[3] and its admission that its platform is used to misappropriate intellectual property by persons engaged in trademark infringement, PayPal takes no action to exercise control over the means of any eBay's seller's misappropriation of Plaintiff's intellectual property in connection with the offer and sale of Fake Lunatik products on ebay.com.

Given its admitted potential exposure to claims by FinCEN and others, the reasonable inference to be drawn from PayPal's alleged inaction post spin-off, is that like eBay, PayPal has determined not to change its business practices in response to claims involving the use of its platform in connection with the sale of Fake Products because such changes would had an adverse effect on the goals and objectives of the Enterprise described in the FAC in which it participates.   An independent licensed money transmitter who was aware that its services were being used in connection with the sale of counterfeit products would fulfill (and not publicly disclaim) its FinCEN diligence obligations.   An ***independent*** PSP similarly situated to PayPal would have no reason to refrain from the adoption of the Best Practices for Voluntary Measures in Addressing the Sale of Counterfeits on the Internet by Payment Service Providers.   That PayPal has not belies its repeated assertion in its motion to dismiss that cannot be held

---

[3]  PayPal asserts Wimo alleges it has an affirmative obligation to exercise diligence to stop counterfeiting because it entered into a Settlement Agreement with the U.S. Treasury Department's Office of Foreign Assets Control.  63 ECF 17:25–28.  PayPal is mistaken. Wimo asserts PayPal's affirmative obligation to stop counterfeiting comes from its status as a "money transmitter" by FinCEN.  *See* 58 ECF 69:13–26.

1   liable under RICO as participant in the Enterprise described in the FAC as it is merely

2   providing financial services to other members of the Enterprise.

3       **D.**   **The FAC Alleges That PayPal Engaged In Predicate Acts of Wire**

4       **Fraud.**

5       PayPal seeks to dismiss Plaintiff's RICO claim because Wimo fails to allege

6   RICO predicate acts sufficiently.  Specifically, PayPal asserts the following: (i) the FAC

7   fails to plead the required facts because it is not alleged that PayPal was involved in

8   "transporting, transferring or otherwise disposing of" the fake Lunatik goods.  63 ECF

9   26:1–6; (ii) the FAC fails to include any allegations showing PayPal "intentionally

10  trafficked in counterfeit goods." 63 ECF 26:7–13; and (iii) The FAC alleges no fact

11  establishing that PayPal engaged in two or more instances of wire fraud.  63 ECF 29:17-

12  18.  Plaintiff disagrees.

13      According to the FAC, PayPal used or caused to be used the mail or wires in

14  furtherance of Defendants' wide-spread scheme to sell and profit from the sale of

15  counterfeit goods, including the Fake Products bearing Plaintiff' Marks. In addition,

16  PayPal has both conspired to traffic in counterfeit goods and aided and abetted the

17  trafficking of counterfeit goods in furtherance of Defendants' organized operation to sell

18  and profit from the sale of counterfeit goods. 58 ECF 108:15–23.  Each sale of Fake

19  Lunatik products, and each transfer of funds in payment for the purchase of Fake Lunatik

20  products using services offered by PayPal, causes new injury to Plaintiff in the form of

21  brand dilution, loss of goodwill and lost sales, as set forth below, injuries that Plaintiff

22  would not have suffered but for the conduct of the Enterprise.  58 ECF 93:21–94:8.

23      More specifically, the FAC alleges that in furtherance of Defendants' fraudulent

24  scheme, PayPal has knowingly transmitted or caused to be transmitted by means of wire

25  communication in interstate and foreign commerce multiple communications for the

26  purpose of executing this scheme, specifically through the operation of interactive

27  websites used to promote and sell Fake Lunatik Products.  58 ECF 101:12–102:9.

28  Specific facts supporting that allegation are included in the FAC.  *See, e.g.*, 58 ECF

7:17–8:6 (PayPal and eBay are joint venture partners); 58 ECF 18:18–22 (eBay has guaranteed that 80% of GMV is paid via PayPal, otherwise it will have to pay PayPal "restitution"); 58 ECF 69:13–23 (PayPal is required to obtain personal information of their customers as well as transactional data to determine whether a merchant is selling counterfeit products on ebay.com); 58 ECF 82:3–15 (PayPal is regularly involved in the sales of Fake Lunatik products by accepting the credit card numbers for transactions involving the sale of Fake Lunatik products, processing the transactions and paying the proceeds of the sales of the Fake Lunatik products to the Seller Defendants and other Unauthorized Sellers); 58 ECF 83:4–8 (It did this knowing that sellers used its payment processing and payment services to facilitate the sale of Fake Lunatik Products through ebay.com).  Accordingly, it pleads the requisite two predicate acts of wire fraud against PayPal to sustain Plaintiff's RICO claim against this Defendant.

"Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012); s*ee also Dooley v. Crab Boat Owners Ass'n*, No. 2004 WL 902361, at *5 (N.D. Cal. Apr. 26, 2004).  Here, the allegations in the FAC should be construed to satisfy that requirement.

Based on the FAC's allegations, it is evident that PayPal operates online on a regular and continuous basis, exchanging online communications with the Seller Defendants, in furtherance of the scheme alleged in the FAC.   For that reason, it is reasonable for the Court to conclude that PayPal has engaged in at least two predicate acts of wire fraud in furtherance of Defendants' fraudulent scheme.

The following allegations in the FAC evidence such online wire communications: (i) Sellers 2 and 3 have each registered multiple email addresses with Defendant PayPal. 58 ECF 8:19–9:15; (ii) PayPal "enables individuals and businesses to securely, easily and quickly send and receive payments online and through a broad range of mobile devices . . . ."  58 ECF 17:10–17; (iii) multiple listings included in the FAC which appeared on ebay.com in 2014 and 2015 state "credit cards are processed by PayPal."

*See, e.g.,* 58 ECF 17:5–6, 29:4–5; 39:20–21; 45:24; 53:5–6; 56:17–18; (iv) "eBay sold the Fake Lunatik Products through its online retail marketplaces with the payment processing services of its wholly-owned subsidiary, PayPal." 58 ECF 66:18–20; and (v) "An online merchant can typically open a standard PayPal account and begin accepting payments through PayPal within a few minutes.  Most online or mobile merchants are approved instantly." 58 ECF 67:13–15.

At a minimum, these allegations, fairly construed, evidence that Sellers 2 and 3 exchanged at least two online communications with PayPal to obtain approval to receive payments online in connection with infringing listings identified in the FAC.  Those wire communications, which were in obvious furtherance of Defendants' fraudulent scheme to misappropriate Plaintiff's intellectual property, should be found to satisfy the requirement that Plaintiff must allege at least two predicate acts by *each* defendant within a ten year period.  Neither the allegations in the FAC nor the law can be construed to support PayPal's arguments.  Accordingly, its arguments properly should be rejected.

**E.    The FAC Alleges That Wimo Suffered Injury Proximately Caused By Defendants' Alleged Misappropriation Of Its Intellectual Property.**

PayPal asserts that Plaintiff's RICO claim should be dismissed because the FAC "does not establish that Wimo suffered any injury."  In support of this assertion, PayPal makes two arguments.  First, Wimo "fail[ed] to allege that it suffered injury to its business or property as a result of the commission of the alleged predicate acts or that any harm was suffered byWimo, as opposed to consumers."  Second, PayPal argues "Wimo's allegations about harm to consumers do not establish standing" for itself.  Both arguments should be rejected as neither is supported by the allegations in the FAC or the applicable law.

"Recovery under RICO is limited to those injuries flowing from predicate acts . . . ."  *Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1117 (9th Cir.1999) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985)). "To have standing under [Section] 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as

injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon County v. Syngenta Seeds, Inc*., 519 F.3d 969, 972 (9th Cir.2008) (internal citation omitted). The FAC properly pleads both.

The scheme alleged is the misappropriation of Plaintiff's intellectual property.  In connection with that scheme, the FAC alleges "[e]ach sale of Fake Lunatik Products, and each transfer of funds in payment for the purchase of Fake Lunatik Products using services offered by PayPal, causes new injury to Plaintiff in the form of brand dilution, loss of goodwill and lost sales, as set forth below, injuries that Plaintiff would not have suffered but for the conduct of the Enterprise."  58 ECF 94:4–8.  Contrary to PayPal's assertion (*see* 63 ECF 31:15), these allegations do not rely on any alleged harm to consumers.

It is recognized that "[d]amages easily flow from theft of trade secrets and confidential information committed by a direct competitor and from infringement of copyrights that are alleged to have been used to make millions—if not billions—of dollars." *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1269 (C.D. Cal. 2007).  Such damages may be recovered under RICO.  *Id.*  Plaintiff is not aware of any authority that under RICO, such damages many only be recovered from a direct competitor, and PayPal cites no authority for that proposition.

That consumers may have also suffered direct harm does not, as a matter of law, preclude Plaintiff's recovery under RICO.  For example, in *Just Film, Inc. v. Merch. Servs., Inc.*, 2012 WL 6087210, at *11-12 (N.D. Cal. Dec. 6, 2012), the defendant argued the plaintiffs must allege that they themselves were aware of, and personally relied upon, the purported misrepresentations.   Relying on *Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008), the Court rejected that argument.

In *Bridge*, "the Court emphasized that proximate causation is 'a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case.' *Id.*

1    at 654 (internal quotation marks and citations omitted).  Instead, proximate causation is

2    the label given to 'the judicial tools used to limit a person's responsibility for the

3    consequences of that person's own acts, with a particular emphasis on the demand for

4    some direct relation between the injury asserted and the injurious conduct alleged.' *Id.*

5    (internal quotation marks and citations omitted)."  *Just Film, Inc. v. Merch. Servs., Inc.*,

6    2012 WL 6087210, at *11–*12.

7         Individuals and companies have a "legal entitlement to business relations

8    unhampered by schemes prohibited by the RICO predicate statutes."  *Diaz v. Gates*, 420

9    F.3d 897, 899 (9th Cir. 2005) (*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir.

10   2002)); *see also Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp. 2d 630, 633 (C.D. Cal.

11   2001) (denying motion to dismiss RICO claim where the allegations included "the

12   distribution and sale of counterfeit Sebastian products").  Contrary to PayPal's assertion,

13   to establish RICO standing, Plaintiff is not required to show that each individual

14   predicate act caused it an injury, but rather that the pattern of racketeering activity did.

15   *See id.*  In other words, Plaintiff is required to plead "compensable injury [consisting of]

16   harm caused by predicate acts sufficiently related to constitute a pattern."  *Sedima,*

17   *S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497 (1985).

18        As the Court recognized in *Just Film, Inc.*, "[t]he Seventh Circuit has explained

19   that, after establishing that predicate acts are sufficiently related to constitute a pattern of

20   racketeering activity, 'a plaintiff need not demonstrate injury to himself from each and

21   every predicate act making up the RICO claim.' "  *Just Film, Inc. v. Merch. Servs., Inc.*,

22   No. C 10-1993 CW, 2012 WL 6087210, at *12 (N.D. Cal. Dec. 6, 2012) (quoting *Corley*

23   *v. Rosewood Care Ctr.*, 388 F.3d 990, 1004 (7th Cir.2004) (discussing *Marshall & Ilsley*

24   *Trust Co. v. Pate*, 819 F.2d 806, 809–10 (7th Cir.1987) (parenthetical in original))).

25   "Instead, the plaintiff must prove only 'an injury directly resulting from some or all of

26   the activities comprising the violation.' "  *Id.* (citing *Marshall*, 819 F.2d at 809).  "As

27   long as the pattern of racketeering activity has caused harm to the plaintiff's business or

28   property, the plaintiff has RICO standing. The plaintiff is not obliged to plead or prove

21

that it has been injured by multiple predicate acts, as long [ ] as it has been injured by at least one predicate act." *Id.* (citations omitted).  There is no authority "stating that plaintiffs must plead or prove that they were harmed by each predicate act alleged." *Id.*, *see also Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir.1987) (finding that the statute required only injury from "any predicate act," not all, and stating that a contrary holding would mean that, "[f]or example, if an organized crime group were to operate a protection racket, extorting money from each merchant in a community, then each merchant's injury would be separate, and therefore, . . . none could recover"); *Edgenet, Inc. v. GS1, AISBL*, 742 F.Supp.2d 997, 1015 n. 6 (E.D. Wis. 2010) (noting that the Supreme Court did not hold otherwise in *Hemi Group*).

Here, Plaintiff has properly plead RICO claims against Defendants in connection with the fraudulent scheme alleged. In addition, Plaintiff alleges that it has been directly injured by Defendants' fraudulent scheme to misappropriate its intellectual property. Accordingly, the Court properly should find that Plaintiff has standing to recover the damages proximately caused by the pattern of racketeering alleged in the FAC.

Finally, as demonstrated, damages incurred in connection with the alleged tort of misappropriation of intellectual property or trade secrets may be recovered under California law.  *See, e.g., Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1269 (C.D. Cal. 2007).  None of the cases on which PayPal's "damages are too remote" argument relies support a contrary conclusion.  *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 261-263, 272-274 (1992) (SIPC duty to advance funds to reimburse customers injury in connection with broker's stock manipulation scheme held to be remote injury. SIPC "must wait on the outcome of the trustees' suit" and "[i]f they recover from [the defendant], SIPC may share according to the priority SIPA gives its claim." ); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–58 (2006) (Held plaintiff could not show RICO injury against competitor because "[i]t was the State that lost tax revenue as a result" of the defendant's alleged unlawful conduct); *Rezner v. Bayerische Hypo–Und Vereinsbank AG*, 630 F.3d 866, 874 (9th Cir. 2010) (Participant in tax shelter scheme

could not recover against organizers of scheme where plaintiff's loss "resulted from [the organizer's] misrepresentations to the United States regarding the tax treatment" of the loan plaintiff assumed as part of the scheme"); *Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*, 2008WL 269080, *5 (E.D.Cal. Jan. 29, 2008) (RICO cross-claim dismissed where no direct relationship existed between plaintiffs' alleged misrepresentations to consumers and fact that consumers' business did not use cross-complainant's services); *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (RICO claim against rowdy neighbors dismissed where plaintiff did "not allege[] any financial loss which would be compensable under RICO," such as "costs incurred to repair damage to her personal property or even to purchase a security system"); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1311 (9th Cir. 1992) (claims of class of minority and woman-owned business enterprises against construction company alleging scheme to evade federal and state regulations requiring prime contractors to employ MWBEs on public works construction projects because  there was no "direct relationship between [the] conduit scheme and the plaintiffs' failure to earn certain profits on the subcontracts . . . ")

## IV.   **CONCLUSION**

For the reasons stated herein, the motion of PayPal to dismiss Plaintiff's Fifth Cause of Action should be denied.  In the event the Court finds dismissal of Wimo's fifth cause of action proper, it should be done with leave to amend.  *See Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087–88 (9th Cir.2002) (explaining "[w]here a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile"); *Hopkins v. Am. Home Mortgage Servicing, Inc.,* No. 13-4447 RS, 2014 WL 580769, at *6 (N.D. Cal. Feb. 13, 2014) (dismissing RICO claim with leave to amend, and noting "the policy of granting leave to amend 'is to be applied with

////

////

////

23

extreme liberality.' " (quoting *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir.2001)); *see also Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir.1999) (noting that inferences should be drawn "in favor of granting the motion").


DATED:  January 5, 2016                    **R. REX PARRIS LAW FIRM**



                                           By:   */s/ Deborah A. Klar*
                                                 R. Rex Parris, Esq.
                                                 Deborah A. Klar, Esq.
                                                 Attorneys for Plaintiff

24