1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANNETTE L. HURST (STATE BAR NO. 148738)
ahurst@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California  94105-2669
Telephone:   +1-415-773-5700
Facsimile:    +1-415-773-5759

MARK P. WINE (STATE BAR NO. 189897)
mwine@orrick.com
KHAI LEQUANG (STATE BAR NO. 202922)
klequang@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, California  92614-8255
Telephone:   +1-949-567-6700
Facsimile:    +1-949-567-6710

Attorneys for Defendant
PayPal Holdings, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| Wimo Labs, LLC,<br><br>             Plaintiff,<br><br>    v.<br><br>eBay, Inc., a Delaware Corporation;<br>PayPal Holdings, Inc., a Delaware<br>Corporation; Hoonie S. Kang, an<br>individual; D.I.R. Enterprises, Inc., a<br>California Corporation; Simon Chen, an<br>individual,<br><br>             Defendants. | Case No. 8:15-cv-01330-JLS (KESx)<br><br>**DEFENDANT PAYPAL HOLDINGS, INC.'S REPLY TO WIMO'S OPPOSITION TO PAYPAL'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Josephine L. Staton<br><br>Hearing Date:  January 29, 2016<br>Time:          2:30 p.m.<br>Place:         Courtroom 10A<br>Complaint:    August 20, 2015 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

I.   THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THE EXISTENCE OF AN ASSOCIATION-IN-FACT RICO ENTERPRISE ........................................................................................... 2

    A.   Wimo Has Not Pled A Common Purpose ............................................. 3

    B.   Wimo Has Not Pled Interpersonal Relationships Or An Ongoing Organization ....................................................................................... 5

    C.   Wimo's Arguments About Continuity Are Misplaced ......................... 8

II.  THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THAT PAYPAL CONDUCTED THE AFFAIRS OF THE ENTERPRISE .......... 11

    A.   Reves v. Ernst & Young Is The Test For Conduct ............................. 11

    B.   The FAC Fails To Allege Facts Establishing Conduct ...................... 12

        1.   Providing vital or indispensable services is not enough .......... 12

        2.   Being able to stop illegal activity is not enough ...................... 15

III. THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THAT PAYPAL COMMITTED ANY PREDICATE ACTS ................................. 16

IV.  THE FIRST AMENDED COMPLAINT DOES NOT ESTABLISH THAT WIMO SUFFERED ANY RICO INJURY ....................................... 19

CONCLUSION .................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.*,
CV-04-2934, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005) ............................. 15

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ...................................................................................... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 4

*Baisch v. Gallina*,
346 F.3d 366 (2d Cir. 2003) .......................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 4

*Boyle v. United States*,
556 U.S. 938 (2009) ............................................................................... 2, 3, 6, 7

*Bryant v. Mattel, Inc.*,
573 F.Supp.2d 1254 (C.D. Cal. 2007) ..................................................... 7, 8, 19

*In re Countrywide Fin. Corp. Mortgage-Back Sec. Litig.*,
No. 2:11-CV-07166-MRP, 2012 WL 10731957 (C.D. Cal. June 29,
2012) ..................................................................................................... 3, 5, 9

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) ........................................................................... 9

*Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,
373 F.Supp.2d 829 (S.D.Ind. 2005) .......................................................... 12, 14

*Diaz v. Gates*,
420 F.3d 897 (9th Cir. 2005) .......................................................................... 21

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ..................................................................... 4, 16

*Friedman v. 24 Hour Fitness USA, Inc.*,
580 F.Supp.2d 985 (C.D. Cal. 2008) .......................................................... 8, 9

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997) .......................................................... 4

*Gomez v. Guthy-Renker, LLC*,
  No. EDCV 14-01425, 2015 WL 4270042 (C.D.Cal. July 13, 2015) ................... 9

*Hemi Group, LLC v. City of New York*,
  559 U.S. 1 (2010) ....................................................................... 20

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992) .................................................................... 20

*Imagineering, Inc. v. Kiewit Pacific Co.*,
  976 F.2d 1303 (9th Cir. 1992) ......................................................... 21

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ......................................................... 6, 7

*Jubelirer v. MasterCard Int'l, Inc.*,
  68 F.Supp.2d 1049 (W.D. Wis. 1999) ................................................. 8, 9

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 1991) ....................................................... 18, 20

*LSJ Inv. Co. v. O.L.D., Inc.*,
  167 F.3d 320 (6th Cir. 1999) ....................................................... 12, 13

*In re Lupron Mktg. and Sales Practices Litig.*,
  295 F.Supp.2d 148 (D. Mass. 2003) ..................................................... 6

*Mattel, Inc. v. MGA Entm't, Inc.*,
  782 F.Supp.2d 911 (C.D.Cal. 2011) ................................................... 19

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*,
  62 F.3d 967, 978-79 (7th Cir. 1995) ............................................... 12, 14

*Mendoza v. Zirkle Fruit Co.*,
  301 F.3d 1163 (9th Cir. 2002) ......................................................... 21

*In re Nat'l Western Life Ins. Deferred Annuities Litig.*,
  635 F.Supp.2d 1170 (S.D. Cal. 2009) ................................................... 7

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) .................................................... 2, 3, 4, 8

DEFENDANT PAYPAL HOLDINGS, INC.'S REPLY
TO WIMO'S OPP. TO MOTION TO DISMISS FAC

*Orr v. Bank of Am.*,
285 F.3d 764 (9th Cir. 2002) ............................................................. 16, 18

*Oscar v. Univ. Students Co-op Ass'n*,
965 F.2d 783 (9th Cir. 1992) ................................................................. 19

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) .............................................................. 9, 16

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous.*
*Inst., LLC*,
No. CIV. S-07-01588 WBS EFB, 2008 WL 269080 (E.D.Cal. Jan.
29, 2008) .......................................................................................... 20, 21

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ...................................... 4, 11, 12, 14, 15, 16

*Robins v. Global Fitness Holdings, LLC*,
838 F.Supp.2d 631 ................................................................................. 9

*Rosner v. Bank of China*,
528 F.Supp.2d 419 (S.D.N.Y. 2007) ................................ 4, 9, 10, 15

*Sebastian Int'l, Inc. v. Russolillo*,
128 F. Supp.2d 630 (C.D. Cal. 2001) ................................................. 21

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
473 U.S. 479 (1985) ............................................................................. 18

*Sheperd v. Am. Honda Motor Co. Inc.*,
822 F.Supp. 625 (N.D. Cal. 1993) ...................................................... 20

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .............................................................. 17

*Tiffany (NJ) Inc. v. eBay, Inc.*,
576 F.Supp.2d 463 (S.D.N.Y. 2008) ..................................................... 9

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
303 F.Supp.2d 432 (S.D.N.Y. 2004) ................................................... 15

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987) ............................................................... 17

iv

*United States v. Turkette*,
    452 U.S. 576 (1981) ................................................................................ 2, 3, 6

*Vulcan Golf, LLC v. Google, Inc.*,
    No. 07 C 3371, 2008 WL 2959951 (N.D. Ill. July 31, 2008) .............................. 6

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ................................................................ 12, 15

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F.Supp.2d 1002 (C.D. Cal. 2011) ..................................................... 9, 12, 13

*In re WellPoint, Inc., Out-of-Network UCR Rates Litig.*,
    903 F.Supp.2d 880 (C.D.Cal. 2012) ..................................................... 12, 13, 15

**Statutes**

18 U.S.C. § 1962(c) ................................................................................ 11, 16, 17

18 U.S.C. § 1962(d) ....................................................................................... 17

**Other Authorities**

Rule 9(b) ................................................................................................ 16, 17, 18

Rule 12(b)(6) ..................................................................................................... 4

Section 1341 ..................................................................................................... 18

## INTRODUCTION AND SUMMARY OF ARGUMENT

Nothing in Wimo's Opposition to PayPal's Motion to Dismiss rescues its defective RICO claim against PayPal.  In an attempt to salvage that claim, Wimo misconstrues the law and mischaracterizes the allegations of its Complaint.  Ultimately, Wimo's RICO claim rests on nothing more than conclusory allegations that PayPal, which provides payment processing services to millions of merchants and consumers across the world, failed to unilaterally detect and stop the sale of products that Wimo alleges to be fake.  Far from establishing that PayPal has joined a criminal enterprise, Wimo's allegations describe conduct that is consistent with lawful behavior and that the Ninth Circuit has held does not give rise to civil liability, much less plausibly suggest criminal conduct.

Indeed, Wimo concedes it has never notified PayPal about a single transaction involving an allegedly fake Lunatik product, undermining any suggestion that PayPal knew any particular transaction involved the sale of a counterfeit product.  Wimo also does not dispute that there are no allegations revealing or evidencing any interpersonal relationships between PayPal and any of the named Seller Defendants or the thousands of unnamed Unauthorized Sellers who are alleged to be members of a criminal enterprise with PayPal.  It has not identified a single individual within PayPal who is alleged to have coordinated with any of the Seller Defendants or the thousands of Unauthorized Sellers referred to in the Complaint.  And it concedes by its silence that nothing PayPal did can possibly be construed as "trafficking" or "transporting" counterfeit goods.

In short, Wimo's First Amended Complaint fails to allege facts sufficient to establish (a) the existence of a RICO enterprise; (b) that PayPal conducted the affairs of the enterprise; (c) that PayPal committed any predicate acts; and (d) that Wimo has suffered injury to its business or property as a result of PayPal's alleged commission of a predicate act.  Its claim rests on the faulty premise that providing routine payment processing services to the general public and failing to preemptively

1  uncover and stop unlawful use of such legitimate business services can render one

2  liable under RICO.  As a matter of law, such allegations do not state a RICO claim.

3  Accordingly, the Court should dismiss Wimo's claim against PayPal with prejudice.

## I.    THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THE EXISTENCE OF AN ASSOCIATION-IN-FACT RICO ENTERPRISE.

To begin with, Wimo asks this Court to "summarily" reject PayPal's argument that Wimo has failed to allege the existence of a RICO enterprise because PayPal does not address the "controlling criteria for an associated-in-fact enterprise prescribed by *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007)."  Opp. at 7:17-20.  *Odom*, however, simply applied the criteria for an association-in-fact enterprise that the United States Supreme Court identified long ago in *United States v. Turkette*, 452 U.S. 576 (1981).  Those criteria are (1) a common purpose shared by all members; (2) an ongoing organization; and (3) continuity.  *See Odom*, 486 F.3d at 552 (citing *Turkette*).  The *Odom* court also noted there was a split among circuits about whether these criteria required an "ascertainable structure," such as a hierarchy or chain of command, *id.* at 550-51, and "join[ed] the circuits that [held] that an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise."  *Id.* at 551.

Two years after *Odom*, the United States Supreme Court addressed "whether an association-in-fact enterprise must have an 'ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages.'"  *Boyle v. United States*, 556 U.S. 938, 945 (2009).  Although the Court held that an association-in-fact enterprise need not have a clearly defined hierarchy or chain of command, it also held that "an association-in-fact enterprise must have a structure."  *Id.* at 945.  "Structure," the Supreme Court stated, means "the way in which parts are arranged or put together to form a whole" and "the interrelation or arrangement of parts in a complex entity."  *Id.* at 945-46.  This requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity

1   sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

2   Moreover, the Supreme Court emphasized that "the concept of associat[ion]'

3   requires both *interpersonal* relationships . . . ." *Id.* (emphasis added).

4         Although these three structural components align closely with the three criteria

5   set forth in *Turkette*, they are not the same, and as discussed in PayPal's Motion, the

6   First Amended Complaint ("FAC") fails to allege facts establishing the structural

7   features of an association-in-fact enterprise required under *Boyle* – namely a

8   common purpose and interpersonal relationships.  For similar reasons, however,

9   Wimo's allegations also do not satisfy the "common purpose" and "ongoing

10  organization" criteria for an association-in-fact enterprise under *Turkette* and *Odom*.

11        **A.**     **Wimo Has Not Pled A Common Purpose.**

12        Wimo alleges that PayPal shares a common purpose with eBay and the

13  Unauthorized Sellers to sell "obvious counterfeit Lunatik products."  FAC ¶ 320.

14  But aside from this bare conclusion, the FAC alleges no facts that plausibly suggest

15  this common purpose.  PayPal's operation of a payment processing platform that is

16  available to the general public is not a fact that plausibly suggests PayPal shares a

17  common purpose to sell counterfeit goods.  It establishes nothing more than that

18  PayPal provided a legitimate business service for its "own commercial reasons." *In*

19  *re Countrywide Fin. Corp. Mortgage-Back Sec. Litig.*, No. 2:11-CV-07166-MRP,

20  2012 WL 10731957, at *8 (C.D. Cal. June 29, 2012).

21        Wimo cites *Odom* for the proposition that the "common purpose element

22  'does not require the enterprise participants to share all of their purposes in

23  common.'"  Opp. at 7:26-27.  But that is not the issue.  The issue is whether Wimo

24  has pled facts that permit a plausible inference that PayPal, eBay and thousands of

25  Unauthorized Sellers shared the specific common purpose to sell fake Lunatik

26  products.  As discussed below, it has not.

27        In *Odom*, the alleged association-in-fact enterprise consisted of two entities:

28  Microsoft and Best Buy, who entered into a cross-marketing agreement.  *See* 486

DEFENDANT PAYPAL HOLDINGS, INC.'S REPLY
TO WIMO'S OPP. TO MOTION TO DISMISS FAC

F.3d at 543-44.  The plaintiffs alleged that, although Microsoft and Best Buy had their own purposes for entering into the agreement, their common purpose was to "increas[e] the number of people using Microsoft's Internet service through fraudulent means."  *Id.* at 552.  In support of this allegation, the plaintiffs described numerous instances in which, pursuant to the cross-marketing agreement, Best Buy sent personal information about a customer to Microsoft and misrepresented to the customer the reasons for doing so.  Microsoft in turn, and unbeknownst to the customer, began billing the customer for Microsoft Internet services.  *Id.* at 543-45.

In finding that these allegations were sufficient to allege a common purpose to promote Microsoft's Internet service through fraudulent means, the Ninth Circuit applied the old Rule 12(b)(6) standard under which a motion "should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Id.* at 545 (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997)).  Months after *Odom* was decided, the United States Supreme Court observed that this pleading standard had been "questioned, criticized, and explained away long enough" and concluded it had "earned its retirement."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).  After *Twombly*, a complaint must plead sufficient "factual enhancement" that makes it more than just "possible," but plausible, that a defendant engaged in unlawful conduct.  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

Under *Iqbal* and *Twombly*, Wimo's allegations that PayPal provided payment processing services on eBay and may have profited from processing payments for some small percentage of sales involving goods that infringe upon the rights of third parties is not enough to permit a plausible inference that PayPal associated with eBay and thousands of Unauthorized Sellers for the specific, unlawful purpose of selling fake Lunatik products.  *See, e.g., Rosner v. Bank of China*, 528 F.Supp.2d

419, 428-29 (S.D.N.Y. 2007) ("The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose . . .").

*In re Countrywide Fin. Corp.*, a case that Wimo cites, illustrates this point. In *In re Countrywide Fin. Corp.*, the plaintiffs alleged that various non-parties had combined with Countrywide "to form an enterprise to profit from the sale, securitization, and servicing of Countrywide mortgage loans." 2012 WL 10731957, at *8. In finding that the plaintiffs had failed to allege a "common purpose" between Countrywide and the non-parties, the court observed that while the complaint "plausibly alleges that the various non-parties had longstanding business relationships" with Countrywide, "[n]othing in the [complaint] creates a plausible inference that the purpose of those relationships was to 'profit illegally from the sale, securitization, and servicing of Countrywide mortgage loans.'" *Id*. "On the contrary," the court continued, "it appears that each of the non-parties . . . entered into a business relationship for [its] own commercial reasons." *Id.* Here, like the non-parties in *In re Countrywide Fin. Corp.*, PayPal's provision of payment processing services to the general public evinces nothing more than the fact that PayPal routinely enters into business relationships with consumers and merchants for its own legitimate commercial reasons. It does not, however, permit a plausible inference that PayPal shared a common purpose with eBay and thousands of Unauthorized Sellers to sell fake Lunatik products.

### B. Wimo Has Not Pled Interpersonal Relationships Or An Ongoing Organization.

The FAC also does not allege that PayPal had any interpersonal relationships with the thousands of Unauthorized Sellers. PayPal's provision of payment processing services to the general public does not permit a plausible inference that it had interpersonal relationships with any, much less each, of the Unauthorized

Sellers.  Indeed, Wimo does not even attempt to argue otherwise, nor could it.  The FAC does not allege that PayPal had any communications with the Unauthorized Sellers outside of its routine business, let alone communications about forming an enterprise to sell fake Lunatik products.  It also does not identify a single person at PayPal who coordinated any activity or communications with these thousands of Unauthorized Sellers.

Rather than address the lack of interpersonal relationships required under *Boyle*, Wimo argues that it has met the *Turkette* criterion requiring that an association-in-fact enterprise be an "ongoing organization" by alleging that (a) the Unauthorized Sellers list their products on eBay's website; (b) PayPal provides payment processing services on eBay; and (c) the Unauthorized Sellers have used PayPal's services on eBay.  Opp. at 8:20-22 (referring to this "panoply of services").  Putting aside the fact that these allegations do not establish the existence of interpersonal relationships required under *Boyle*, the allegations fall far short of establishing an ongoing organization under *Turkette*.

At most, the allegations describe a "rimless hub and spoke" structure that courts repeatedly have found does not meet the "ongoing organization" requirement. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010); *In re Lupron Mktg. and Sales Practices Litig.*, 295 F.Supp.2d 148, 173-74 (D. Mass. 2003); *Vulcan Golf, LLC v. Google, Inc.*, No. 07 C 3371, 2008 WL 2959951, at *5 (N.D. Ill. July 31, 2008).  Here, the Unauthorized Sellers make up the spokes, as they independently list their products on eBay, which is the hub.  But there is no allegation about how each of the thousands of Unauthorized Sellers acts in concert with each other, much less why, as competitors, they would do so.  Wimo's allegations therefore "do not plausibly imply anything more than parallel conduct," which does not support a plausible inference that each person "associated together for a common purpose of engaging in a course of conduct."  *In re Ins. Brokerage*

*Antitrust Litig.*, 618 F.3d at 374 (citing *Boyle*, 556 U.S. at 950).[1]  Accordingly, the "rimless hub and spoke" structure described by Wimo fails "the basic requirement that the components function as a unit, that they be 'put together to form a whole.'"  *Id.*  As to PayPal, moreover, there are no allegations that connect PayPal to this group other than the allegation that PayPal's payment processing services, which are available to the general public, may be used by merchants on eBay to provide a means for buyers to pay.  But Wimo does not allege any vehicle or mechanism that requires an Unauthorized Seller to use PayPal.  Nothing outside of the independent preferences of merchants and consumers determines whether PayPal will be involved in any particular transaction.

Contrary to Wimo's contention, *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1263 (C.D. Cal. 2007), does not support its position that PayPal's provision of payment processing services to the public is enough to establish an enterprise involving PayPal.  In *Bryant*, three upper-level employees at Mattel were alleged to have stolen Mattel's confidential and proprietary information and provided it to Mattel's competitor.  *Id.* at 1257-58.  The employees clearly had interpersonal relationships and communications about misappropriating Mattel's information, and they were alleged to have coordinated their efforts, including through the use of a common AOL email account and their simultaneous resignations.  *Id.* at 1257-58

Here, Wimo does not allege any facts establishing that PayPal coordinated with any of the Unauthorized Sellers to sell counterfeit goods.  Indeed, were the allegations here compared to those in *Bryant*, PayPal would be most analogous to AOL, which provided email accounts to the general public, including the email

---

[1] Citing *In re Nat'l Western Life Ins. Deferred Annuities Litig.*, 635 F.Supp.2d 1170, 1175 (S.D. Cal. 2009), Wimo argues that competitors may be part of a RICO enterprise.  In *In re Nat'l Western Life Ins.*, the court merely denied the defendants' motion for summary judgment which sought a ruling that being competitors precluded, as a matter of law, a finding that they shared a common purpose.  But the notion that competitors are part of an enterprise must begin with an inference of implausibility.  Without additional facts suggesting they have joined together – facts that are lacking here – the Court should not find that Wimo has plausibly alleged that the thousands of Unauthorized Sellers acted together.

account that allowed the transmission of the confidential and proprietary information.  Just as it would be absurd to contend that AOL was a member of the enterprise in *Bryant*, so too is it absurd to deem PayPal a part of a criminal enterprise to sell fake Lunatik products because it provides payment processing services to the public and those services may have been used by the Unauthorized Sellers.

PayPal's provision of payment processing services to millions of members of the general public does not establish "interpersonal relationships" or an "ongoing organization" with each person that uses its services.

### C.     Wimo's Arguments About Continuity Are Misplaced.

As distinguished from the "organization" requirement, the "continuity requirement focuses on whether the associates' behavior was 'ongoing' rather than isolated activity."  *Odom*, 486 F.3d at 553.  PayPal has not argued a lack of continuity apart from its arguments that Wimo has not alleged a common purpose, interpersonal relationships, and an ongoing organization, and Wimo's arguments addressing the "continuity" requirement pertain to the "common purpose" and "organization" requirements discussed above, not continuity.  *See* Opp. at pp. 9-10.

For example, Wimo attempts to distinguish *Jubelirer v. MasterCard Int'l, Inc.*, 68 F.Supp.2d 1049, 1052-53 (W.D. Wis. 1999), on the ground it applied the "ascertainable structure" requirement that the Ninth Circuit rejected in *Odom*.  Opp. at 9:17-20 (citing *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F.Supp.2d 985, 993 (C.D. Cal. 2008)).  PayPal, however, did not rely on *Jubelirer* to show a lack of continuity or for the proposition that an enterprise must have a hierarchy or chain of command.  PayPal cited *Jubelirer* as one among many cases holding that an association-in-fact enterprise cannot be based solely on a routine contractual relationship for providing services.

While the court in *Friedman* found that a contractual relationship for ordinary financial services does not bar a RICO enterprise, 580 F.Supp.2d at 993-

94, courts have "overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425, 2015 WL 4270042, *8 (C.D.Cal. July 13, 2015) (notice of appeal filed) (rejecting *Friedman* as an outlier); *see also Robins v. Global Fitness Holdings, LLC*, 838 F.Supp.2d 631, 652-53 (same). Despite this "widespread consensus among courts that [] routine business relationships are insufficient to impose RICO liability," courts "have followed a surprisingly wide variety of approaches in reaching the same conclusion." *Gomez*, 2015 WL 4270042, at *9 (discussing cases finding a lack of common purpose, lack of organization, lack of continuing unit, and lack of conducting the affairs of the enterprise); *see also, e.g., Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009) (finding lack of organization and lack of conduct); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F.Supp.2d 1002, 1034-35 (C.D. Cal. 2011) (finding lack of conduct); *Rosner*, 528 F.Supp.2d at 428-29 (finding lack of common purpose, lack of functioning as a continuing unit, and lack of conduct); *In re Countrywide*, 2012 WL 10731957, at *8 (finding lack of common purpose); *Jubelirer*, 68 F.Supp.2d at 1052-53 (finding lack of organization and lack of conduct). For any and all of these reasons, Wimo's allegation that PayPal provides payment processing services on eBay does not plausibly suggest that PayPal is part of a criminal enterprise whose purpose is to sell counterfeit goods.

Wimo's allegation that PayPal failed to take reasonable steps to stop counterfeiting also does not add any plausibility to its claim. In so arguing, Wimo attempts to dismiss the law on secondary trademark infringement as if it is not relevant to Wimo's RICO claim. It says nothing about *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007), and shrugs off *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.Supp.2d 463, 470 (S.D.N.Y. 2008), because it does not discuss RICO. But if PayPal's actions, or alleged failure to take actions, do not violate any civil duty or give rise to civil liability (and Wimo does not allege that they do), they cannot

1   possibly permit an inference that PayPal, by its conduct, became a knowing

2   participant in a criminal enterprise.

3        That PayPal is a regulated entity is irrelevant.  In *Rosner*, for example, the

4   plaintiff argued that Bank of China ("BoC") was part of a fraudulent scheme by

5   virtue of its holding accounts and transferring funds on behalf of the companies

6   perpetrating the fraud.  *See Rosner*, 528 F.Supp.2d at 422-23.  Among other things,

7   Rosner alleged that:

8         BoC disregarded applicable laws and regulations that, if

9         followed, would have prevented the laundering of the IFS
          Investors' funds.  Specifically, Rosner claims that BoC

10        failed to comply with domestic and international bank
          secrecy, know-your-customer, and anti-money
          laundering laws, decrees, and regulations, and that BoC

11        was a knowing and willing participant in the fraudulent
          scheme and provided the banking service necessary to

12        effectuate the transfer of stolen funds.

13  *Rosner* at 423.  The court, however, found that such allegations, coupled with

14  Rosner's allegation that BoC provided "indispensable banking services" to the

15  companies, were not enough to allege the existence of an enterprise.  *Id.* at 428-29.

16  As in *Rosner*, Wimo's allegations that PayPal is a regulated entity say nothing

17  about the existence or organization of a RICO enterprise.

18       Wimo also argues that its allegations about the "pre and post spin-off

19  relationship" between eBay and PayPal suggest a "common purpose to profit by the

20  misappropriation of [Wimo's] intellectual property."  Opp. at 9:25-28.  But nothing

21  about a parent-subsidiary relationship, or the separation of that relationship, suggests

22  a common purpose to misappropriate Wimo's intellectual property.  Likewise,

23  Wimo's allegation that eBay has "guaranteed" that 80% of its Gross Merchandise

24  Volume would be transacted through PayPal does not suggest a common purpose to

25  misappropriate Wimo's intellectual property.  While this may incentivize eBay to

26  promote PayPal, eBay could just as easily, if not more easily, meet this target through

27  the sale of non-counterfeit goods as opposed to sales of counterfeit goods.  Nothing

28  about this allegation adds any plausibility to Wimo's alleged RICO enterprise.

DEFENDANT PAYPAL HOLDINGS, INC.'S REPLY
TO WIMO'S OPP. TO MOTION TO DISMISS FAC

In short, Wimo has not alleged any facts that independently or collectively plausibly suggest the existence of an association-in-fact enterprise whose purpose is to sell counterfeit goods, let alone that PayPal is a part of that enterprise.

## II.  THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THAT PAYPAL *CONDUCTED* THE AFFAIRS OF THE ENTERPRISE.

Not only does Wimo fail to allege the existence of an enterprise, it fails to allege that PayPal participated in the conduct of the enterprise's affairs.  To "participate, directly or indirectly, in the conduct of [an] enterprise's affairs, [a defendant must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).[2]  Although Wimo repeatedly asserts that PayPal "conducted" the affairs of the enterprise by providing a "vital" and "indispensable" service, merely providing a "vital" or "indispensable" service to an enterprise does not satisfy the *Reves* "operation or management" test.  Moreover, the terms "vital" and "indispensable" are nothing more than labels or conclusions.  The facts alleged by Wimo establish that PayPal's payment processing services are neither "vital" nor "indispensable."

### A.    *Reves v. Ernst & Young* Is The Test For Conduct.

As a preliminary matter, Wimo appears to suggest that *Reves* does not apply to PayPal because it is limited to "outsiders" who provide professional services to an enterprise.  *See* Opp. at 10:21-25, n. 1.  Wimo, however, does not cite a single case that holds that *Reves* applies only to so-called "outsiders" versus "insiders" or applies any inquiry other than that established by the United States Supreme Court in *Reves*.  But even if *Reves* were so limited, Wimo fails to explain how PayPal is an "insider," as opposed to an "outsider" that merely provides payment processing services.  The *Reves* test was intended to identify who within an enterprise may be

---

[2] Wimo also suggests that it must only plead that PayPal "participated" in the conduct of the enterprise.  *See, e.g.*, Opp. at 10:20; 11:8.  Wimo cites no authority for this position, nor could it.  *Reves* expressly rejects this interpretation of 18 U.S.C. § 1962(c) and requires that a defendant have some part in "directing the affairs" of the enterprise.  507 U.S. at 179.

liable under RICO; one cannot plead around *Reves* by merely alleging that a defendant is an "insider."  Every single case that Wimo cites that analyzes whether a defendant has met the "conduct" requirement applies *Reves*, including to the so-called "insiders" of an enterprise.  *See, e.g., Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008); *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 324-25 (6th Cir. 1999); *MCM Partners, Inc. v. Andrews-Bartlett & Assocs.*, Inc., 62 F.3d 967, 978-79 (7th Cir. 1995); *In re WellPoint, Inc., Out-of-Network UCR Rates Litig.*, 903 F.Supp.2d 880, 910-912 (C.D.Cal. 2012); *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F.Supp.2d 829, 839 (S.D.Ind. 2005).

As the Ninth Circuit has said, "*Reves* is the controlling authority on the point of what constitutes 'conduct.'"  *Walter*, 538 F.3d at 1247.

### B.  The FAC Fails To Allege Facts Establishing Conduct.

Wimo contends it has alleged facts describing PayPal's participation in the conduct of the affairs of the alleged enterprise.  *See* Opp. at 11:7-9.  Those allegations consist of the following: (1) PayPal "provides critical payment and financing services" to the Unauthorized Sellers; and (2) only eBay and PayPal have the ability to exercise control over eBay's and any eBay seller's misappropriation of Wimo's intellectual property.  *See* Opp. at 12:14-23.  These allegations, however, fail to establish that PayPal conducted the affairs of the enterprise.[3]

### 1.  Providing vital or indispensable services is not enough.

First, it is not enough to allege that PayPal provides a "vital" or "indispensable" service to an enterprise.  In support of its position, Wimo cites *In re WellPoint, Inc.*, 903 F.Supp.2d, 880.  But the court in *In Re WellPoint, Inc.* did not hold that the provision of a vital or indispensable service satisfies the *Reves* operation or management test.  The plaintiff in that case alleged that United Health Group ("UHG") engaged in a fraudulent scheme to provide misleading "usual,

---

[3] It also is obviously false that only eBay and PayPal can exercise control over any eBay seller's misappropriation of Wimo's intellectual property.  The sellers themselves, far more than eBay or PayPal, control their conduct.

customary, and reasonable" ("UCR") schedules for out-of-network health insurance

service, which resulted in improper reimbursements to out-of-network providers

and subscribers. *Id.* at 892. In finding that the plaintiffs had adequately alleged

that UHG and its subsidiary, Ingenix, conducted the affairs of the enterprise, the

court cited the allegations that:

> Ingenix is alleged to have played an active and crucial role in directing the submission of 'scrubbed data' by the Insurer Conspirators and aggregating, scrubbing and manipulating the data to create the false UCR schedules. These schedules were then sold back to the same health insurers, making Ingenix the "primary instrument used to accomplish" the enterprise's scheme.

*Id.* at 912 (internal citations omitted). Here, there are no such allegations about

PayPal. PayPal is not alleged to have manufactured or sold counterfeit products,

and it was not the "primary instrument used to accomplish" the enterprise's scheme.

It is alleged to have provided a service to the general public, and that service may

have been used, but did not have to be used, in connection with the sale of some

allegedly fake Lunatik products.

The court in *In re WellPoint, Inc.* also found that, as UHG's wholly owned

subsidiary, Ingenix occupied a position in the enterprise's chain of command

through which the affairs of the enterprise were conducted. *See* 903 F.Supp.2d at

912. But the basis for this conclusion was that UHG occupied the head of a two-

party enterprise consisting of UHG and Ingenix, and that Ingenix executed UHG's

orders in manipulating and disseminating misleading UCR data. *Id.*; *see also id.* n.

1 (defining "UHG Defendants" as UHG and Ingenix).[4] Here, however, Wimo

alleges a much broader enterprise that includes thousands of Unauthorized Sellers

with no clear chain of command, and it does not allege that PayPal took direction

---

[4] Likewise, in *LSJ Inv. Co.*, the Sixth Circuit simply affirmed default judgments against the defendants, finding that they, as controlling shareholders of the companies that directed and perpetrated the fraud, conducted the affairs of the enterprise. *See* 167 F.3d at 324-25. Wimo does not allege that PayPal is the controlling shareholder of anyone that directs or controls the enterprise. *LSJ* is therefore inapposite.

from the head of any chain of command.  Wimo simply alleges that PayPal failed to do enough to stop the Unauthorized Sellers.[5]

*Decatur Ventures, LLC* also does not help Wimo.  There, the court found that the real estate appraisers in a real estate investment scheme did not conduct the affairs of the enterprise because they merely provided appraisals as part of their routine business activities, and unlike the other defendants, did not coordinate the efforts in furtherance of the fraudulent scheme, including obtaining the loans and appraisals for the properties.  *See* 373 F.Supp.2d at 837.  Like the appraisers, PayPal merely provides a service in the normal course of its business.  It is not alleged to have taken any affirmative actions in furtherance of the alleged scheme to sell counterfeit goods, much less have coordinated all of the efforts to make such sales possible.

Similarly, in *MCM Partners, Inc.*, the Seventh Circuit concluded that two defendants, Andrews-Bartlett ("AB") and Freeman Decorating Company ("FDC"), met the conduct requirement because they were alleged to have carried out the scheme to exclude the plaintiff, MCM, from the forklift rental market.  Specifically, AB and FDC were forklift rental companies that leased forklifts by MCM and others but were directed by a competitor, OG, and the local union to rent only OG forklifts.  *See* 62 F.3d at 970-71.  Knowing it was illegal to exclude MCM, AB and FDC nonetheless followed OG's and the union's directions not to lease MCM forklifts.  *Id.*  The Sixth Circuit, observing that the question was "not an easy one," ultimately held that the allegations about AB and FDC were sufficient to state a RICO claim against them as "lower-rung participants who [were] under the direction of upper management."  *Id.* at 979 (citing *Reves*, 507 U.S. at 184).  In

---

[5] For this reason, Wimo's reliance on *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003), also is misplaced.  *Baisch* merely observes that one who has "discretionary authority" in executing the orders of the principals of a fraudulent scheme may conduct the affairs of the enterprise.

direct contrast, Wimo does not allege that PayPal carried out a scheme to sell counterfeit Lunatik products at the direction of the head of any chain of command.

All Wimo can say is that PayPal provided legitimate payment processing services to the general public and that these services were used by the Unauthorized Sellers in connection with some, but not all, sales of fake Lunatik Products. Performing services for an enterprise, however, "does not rise to the level of direction, whether one is 'inside' or 'outside.'" *Walters*, 538 F.3d at 1249. "Regardless of how indispensable or essential such services may have been, rendering a professional service by itself does not qualify as participation in a RICO enterprise." *Rosner*, 528 F.Supp.2d at 431; *see also AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, CV-04-2934 (ERK), 2005 WL 3710370, *8 (E.D.N.Y. Feb. 22, 2005) ("It is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise . . . or provide goods and services that ultimately benefit the enterprise.") (quoting *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.Supp.2d 432, 451-52 (S.D.N.Y. 2004)).

### 2.    Being able to stop illegal activity is not enough.

Wimo also argues that PayPal has conducted the affairs of the enterprise by failing to take remedial measures to stop the Unauthorized Sellers from engaging in counterfeiting. *See, e.g.*, Opp. at 12:20 (PayPal has the ability to exercise control), 12:25 (same); FAC ¶ 179 (same), ¶ 180 (PayPal fails to take "reasonable remedial measures"). Failing to unilaterally stop the Unauthorized Sellers from selling products that Wimo claims infringe upon its intellectual property rights, however, does not establish direction or control. As the Ninth Circuit has said, "[i]t is not enough that [the defendant] failed to stop illegal activity," because *Reves* requires "'some degree of direction.'" *Walter*, 538 F.3d at 1248; *see also WellPoint*, 903 F.Supp.2d at 910.

Moreover, *Reves* requires that a defendant be able to exercise control over the affairs of the enterprise – not just its own affairs. *Reves*, 507 U.S. at 179.  Wimo

DEFENDANT PAYPAL HOLDINGS, INC.'S REPLY
TO WIMO'S OPP. TO MOTION TO DISMISS FAC

alleges that PayPal can "exercise control" by withdrawing its services to the Unauthorized Sellers. FAC ¶ 179. Putting aside that Wimo has not alleged how PayPal would even know from whom it should withdraw its services, given that Wimo has never notified PayPal about any counterfeit sales, these allegations establish nothing more than that PayPal can control its own affairs. Even if PayPal withdrew its services, that would not prevent an Unauthorized Seller from manufacturing or selling counterfeit goods on eBay or anywhere else. Just as this kind of "control" is insufficient to establish "control" for secondary liability trademark infringement, *see Perfect 10, Inc.*, 494 F.3d at 807, it is not enough to establish control for RICO liability under *Reves*.

## III.   THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE THAT PAYPAL COMMITTED ANY PREDICATE ACTS.

Enterprise issues aside, the Court should dismiss Wimo's RICO claim because Wimo fails to allege that PayPal committed any predicate acts. First, Wimo makes no argument that PayPal committed any acts of "trafficking" in counterfeit goods.[6] Trafficking, therefore, is no longer at issue. Second, as to mail and wire fraud, Wimo does not dispute any of the authorities that PayPal cites establishing that Wimo has failed to allege mail or wire fraud, much less allege it with the particularity that Rule 9(b) demands.

To plead the predicate act of wire fraud, Wimo must allege that PayPal devised a scheme or artifice with the specific intent to defraud and used interstate telephone wires in furtherance of the scheme or artifice. *See Eclectic Properties East, LLC*, 751 F.3d at 997; *Orr v. Bank of Am.*, 285 F.3d 764, 782 (9th Cir. 2002); *see also* Ninth Circuit Model Criminal Jury Instructions, No. 8.124 (2010 ed.).

---

[6] Wimo's only response to PayPal's arguments about "trafficking" is that it has alleged that PayPal conspired and aided and abetted trafficking, but it cites only conclusory allegations about conspiracy and aiding and abetting. It can point to no factual allegations evidencing a conspiracy or describing conduct that amounts to aiding and abetting. Moreover, as discussed in PayPal's Motion, nearly all of the courts that have analyzed the issue have concluded that there is no aiding and abetting liability under section 1962(c). *See* Motion, pp. 19-20.

Wimo has not identified a single non-conclusory allegation supporting a plausible inference that PayPal knowingly participated in a scheme to defraud or had the specific intent to defraud Wimo.

Citing paragraph 330 of the FAC, Wimo argues that the FAC alleges that "PayPal has knowingly transmitted or caused to be transmitted by means of wire communication in interstate and foreign commerce multiple communications for the purpose of executing this scheme." Opp. at 17:23-26. Not only is this allegation insufficient because it is a mere recitation of an element of wire fraud, that portion of paragraph 330 refers to "Defendants" collectively and says nothing about what PayPal did. Such collective allegations do not satisfy Rule 9(b), which "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . .'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d).").

Wimo also cites paragraph 176 of the FAC and claims that PayPal is required to obtain personal information of its customers "to determine whether a merchant is selling counterfeit products on ebay.com." Opp. at 18:3-5. Paragraph 176, however, only vaguely alleges that PayPal is subject to regulation by the Financial Crimes Enforcement Network ("FinCEN"), but says nothing about counterfeit goods, fake Lunatik products or eBay.[7] Even if it did, it still would not advance

---

[7] Wimo also cites paragraph 287(a) of the FAC to suggest that PayPal processed payments "knowing that sellers used its payment processing and payment services to facilitate" the sale of the counterfeit goods through eBay. Opp. at 18:9-11. But paragraph 287(a) refers to eBay's alleged knowledge, not PayPal's. *See* FAC ¶287(a) ("Knowing that sellers used PayPal's payment processing and payment services to facilitate the sale of Fake Lunatik Products through ebay.com, *eBay nonetheless continued to provide such sellers with PayPal's services.*") (emphasis added).

1    facts necessary to allege that PayPal committed wire fraud.

2           The other allegations identified in Wimo's Opposition fare no better.  They

3    show only that PayPal and eBay have an ongoing business relationship, Opp. at

4    18:1-3 (citing FAC ¶¶ 9, 43), and that eBay, through PayPal, processed credit card

5    transactions, Opp. at 18:5-9 (citing FAC ¶ 285).  These allegations do not establish

6    that PayPal devised a scheme or artifice with the specific intent to defraud and used

7    interstate telephone wires in furtherance of the scheme or artifice.  *See Orr*, 285 F.3d

8    at 782.[8]

9           In a last ditch attempt to save its only predicate act against PayPal, Wimo

10   argues that its other allegations show a different wire fraud involving PayPal and

11   Sellers 2 and 3.  Opp. at 18:23-19:14; *see also* Opp. at 18:18-22 ("it is evident that

12   PayPal operates online on a regular and continuous basis, exchanging online

13   communications with the Seller Defendants.").  That new argument and the cited

14   allegations fail to establish PayPal's violation of section 1341.  Not only are these

15   allegations outside the allegations identifying the alleged predicate acts of wire fraud

16   (*See* FAC ¶ 331(a)-(o)), they fail to satisfy Rule 9(b).  They are nothing more than

17   recycled allegations that PayPal provided payment processing services with a new

18   "wire" allegation that two sellers emailed PayPal when their accounts were created.

19   *See* Opp. at 18:23-19:6.  This new wire fraud theory still fails to show that PayPal

20   

---

[8] Wimo also argues that PayPal "has an affirmative obligation to perform the
21   appropriate level of diligence on its merchants that would entail determining
     whether a merchant is selling counterfeit or other illegal goods."  Opp. at 4:3-5.
22   This, and similar allegations that PayPal failed to take reasonable steps to prevent
     counterfeiting, turned a "blind eye" to it, and had knowledge of and the ability to
23   exercise control over infringing products (FAC ¶¶ 6, 177-180), are not only
     conclusory allegations that fail to meet the applicable pleading standards, they also
24   do not establish that PayPal had the specific intent to defraud.  To state a claim for
     RICO, a plaintiff must allege the commission of criminal predicate acts.  *See*
25   *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985).  Allegations that a
     defendant failed to perform sufficient diligence, failed to take reasonable steps, or
26   failed to exercise control are not allegations that attach criminal liability because
     they do not establish specific intent.  *See Lancaster Community Hosp. v. Antelope*
27   *Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991) ("[a] specific intent to
     deceive is an element of the predicate act, mail fraud").

28   

DEFENDANT PAYPAL HOLDINGS, INC.'S REPLY
                                          TO WIMO'S OPP. TO MOTION TO DISMISS FAC

knowingly participated in a scheme to sell counterfeit goods or acted with the specific intent to defraud.

Because Wimo has failed to plead any predicate acts, let alone two predicate acts, PayPal's Motion to Dismiss should be granted.

## IV.   THE FIRST AMENDED COMPLAINT DOES NOT ESTABLISH THAT WIMO SUFFERED ANY RICO INJURY.

Wimo's Opposition also does nothing to establish that it suffered concrete injury to its business or property by reason of PayPal's supposed RICO activities.

To begin with, Wimo repeatedly cites *Bryant*, 573 F.Supp.2d at 1269, to argue that RICO damages flow from "theft of trade secrets and confidential information committed by a direct competitor and from infringement of copyrights."  Opp. at 20:13-16.  *Bryant*, however, does not establish Wimo's standing.  In *Bryant*, the court found that Mattel had adequately alleged damages where Mattel alleged that a competitor and related parties stole its trade secrets and copyrighted materials.  *See* 573 F.Supp.2d at 1257-58.  The case does not discuss or analyze what constitutes concrete injury to business or property, and the court ultimately dismissed Mattel's RICO claim for lack of standing, finding that Mattel's alleged lost profits did not constitute concrete injury to business or property and that Mattel failed to establish that any lost profits were proximately caused by the misappropriation of its trade secrets.  *See Mattel, Inc. v. MGA Entm't, Inc.*, 782 F.Supp.2d 911, 1019-1027 (C.D.Cal. 2011).

And while Wimo cites other cases finding that harm from a competitor's misappropriation of trade secrets is not too remote, *see* Opp. at 22:19-23:16, those cases have no application here because Wimo does not allege that PayPal stole its property.  Wimo claims it has suffered from diverted sales and loss of trademark value and reputation based on sales lost as a result of the Unauthorized Sellers' counterfeiting.  These alleged harms do not constitute "out of pocket" injury to business or property.  *See, e.g., Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783,

785 (9th Cir. 1992) (RICO injury requires proof of concrete financial loss, and not mere injury to valuable intangible property interests); *Lancaster Community Hosp.*, 940 F.2d at 406 (loss of market share is too amorphous to support a claim for RICO); *Sheperd v. Am. Honda Motor Co. Inc*., 822 F.Supp. 625, 631 (N.D. Cal. 1993) (granting motion to dismiss where plaintiff failed "to allege a concrete financial loss which resulted directly from the wrongful conduct of defendants").

These alleged harms also do not meet the strict causation and direct harm requirements under RICO.  "A link that is 'too remote,' 'purely contingent,' or 'indirect[t]' is insufficient."  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 271, 274 (1992)). The key question is "whether the alleged violation led *directly* to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 461 (2006) (emphasis added).  Here, the alleged violation is an alleged fraudulent scheme "to sell and profit from the sale of counterfeit goods through ebay.com."  FAC ¶¶ 330, 333.  As discussed in PayPal's Motion, if consumers purchased counterfeit goods as a result of this alleged fraudulent scheme, they were the victims and they suffered the direct harm.  *See* Motion at 23:15-24:4.[9]  If Wimo lost sales as a result of this, or its reputation was harmed, those harms were only indirect and do not satisfy RICO's strict causation requirement.

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*, No. CIV. S-07-01588 WBS EFB, 2008 WL 269080 (E.D.Cal. Jan. 29, 2008), is particularly instructive on the direct harm requirement.  In *Proven Methods*, the court granted a motion to dismiss the defendant's RICO counterclaim, which was based on plaintiffs' publication of misleading advertisements to recruit new customers. *Id.* at *1, *3.  The defendants, who were competitors, acknowledged that consumers were

_____

[9] Wimo claims it does not rely on "any alleged harm to consumers," Opp. at 20:10-12, but the FAC expressly alleges that PayPal's conduct "has directly harmed both consumers and [Wimo] by sowing confusion among consumers [. . .] and post-sale confusion among consumers . . . ."  FAC ¶ 330.

the primary target of the scheme but claimed they were harmed because the misleading advertisements deprived them from obtaining the consumers' potential business. *Id.* at *5. The court found causation to be too "attenuated," *id.* (citing *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1312 (9th Cir. 1992)), while noting that "only the consumers' subsequent intervening decision not to purchase defendants' products or services could be construed as the 'direct cause' of defendants' injuries, as opposed to the alleged RICO violation (defrauding the consumers)." *Id.* at *7. Here, too, Wimo's alleged lost sales and harm to its reputation arise, if at all, from the intervening decisions of consumers, not directly from any predicate acts.[10]

Wimo also spends much of its Opposition arguing that it need not show it suffered injury from each predicate act. *See* Opp. at 21:12-22:15. PayPal, however, never argued this. PayPal argued that because Wimo failed to plead any predicate acts by PayPal, Wimo also cannot claim to have suffered injury from any predicate act. *See* Motion at 23:10-12. This, of course, goes without saying.[11]

## CONCLUSION

For the reasons stated above, PayPal respectfully requests that the Court grant its Motion to Dismiss with prejudice. Wimo voluntarily amended its Complaint after PayPal moved to dismiss its original Complaint, and it has not alleged any new facts to support a RICO claim against PayPal. PayPal should not be put to the task and

---

[10] Wimo cites *Diaz v. Gates*, 420 F.3d 897, 899 (9th Cir. 2005) (which in turn cites *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002)), for the contention that "[i]ndividuals and companies have a 'legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes.'" Opp. at 21:7-10. But Wimo ignores the requirement that, to have standing, a plaintiff must allege "some tangible financial loss" as well. *See Diaz*, 420 F.3d at 900. Wimo's reliance on *Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp.2d 630, 633 (C.D. Cal. 2001), also is misplaced. *Sebastian* does not discuss RICO standing at all.

[11] Wimo also never addresses its supposed injury based on "direct expenses from [its] efforts to stop the sale of Fake Lunatik Products through eBay's ineffective takedown procedures," FAC ¶ 336, and "incurred substantial costs actively monitoring listings on ebay.com" to uncover evidence of infringement, FAC ¶ 61. *See* Motion at 24:25-25:21.

DEFENDANT PAYPAL HOLDINGS, INC.'S REPLY
TO WIMO'S OPP. TO MOTION TO DISMISS FAC

1    expense of another Motion to Dismiss.

2

3    Dated:        January 14, 2016          ANNETTE L. HURST
                                             MARK P. WINE
                                             KHAI LEQUANG
4                                            Orrick, Herrington & Sutcliffe LLP

5

6                                            By: /s/ Annette L. Hurst
                                                  ANNETTE L. HURST
7                                              Attorneys for Defendant
                                                PayPal Holdings, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28