DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

JAMES A. BOWMAN (S.B. #220227)
jbowman@omm.com
JUSTINE M. DANIELS (S.B. #241180)
jdaniels@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

R. BRUCE RICH (*pro hac vice*)
bruce.rich@weil.com
RANDI W. SINGER (*pro hac vice*)
randi.singer@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Defendant eBay Inc.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WIMO LABS, LLC,<br><br>                     Plaintiff,<br><br>          v.<br><br>EBAY, INC., et al.,<br><br>                     Defendants. | Case No. 8:15-cv-01330-JLS-KES<br><br>**REPLY IN SUPPORT OF DEFENDANT EBAY INC.'S MOTION TO DISMISS PLAINTIFF'S FIFTH CAUSE OF ACTION OF THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**<br><br>Hearing Date:  January 29, 2016<br>Time:               2:30 p.m.<br>Judge:             Hon. Josephine L. Staton<br>Dept.:              Courtroom 10A<br>Am. Compl.:   November 20, 2015 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

I.    Wimo Fails to Allege a RICO Claim Generally. ................................ 3

II.   Wimo Fails to Adequately Allege that eBay Conducted the
      Alleged RICO Enterprise. .................................................................. 5

      A.    The *Reves* Operation & Management Test Governs. ................ 6

      B.    Wimo Fails to Adequately Allege that eBay Operated or
            Managed the RICO Enterprise under *Reves*. ............................ 8

III.  The FAC Fails to Allege the Existence of a RICO Enterprise. .......... 12

      A.    Wimo Fails to Allege Facts Showing a Common Purpose
            Between the Alleged Participants in the Enterprise. ................ 14

      B.    The FAC Fails to Allege an "Ongoing Organization"
            Between the Alleged RICO Participants to Carry Out
            RICO Predicate Acts. ............................................................... 15

IV.   Wimo Cannot Show a "Pattern of RICO Activity." ........................... 18

      A.    Wimo's Allegations that eBay Violated Section 2320 Fail. .... 18

      B.    Wimo Fails to Adequately Allege Wire Fraud. ........................ 22

CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Academy of Motion Picture Arts and Sciences v. GoDaddy.com, Inc.*,
   CV 10-03738 AB (CWX), 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) ....2, 11

*Amsterdam Tobacco Inc. v. Philip Morris Inc.*,
   107 F. Supp. 2d 210 (S.D.N.Y. 2000) ................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................15

*Baisch v. Gallina*,
   346 F.3d 366 (2d Cir. 2003) ............................................................................8

*Boyle v. United States*,
   556 U.S. 938 (2009) ..........................................................................13, 15, 16, 17

*Bryant v. Mattel Inc.*,
   573 F. Supp. 2d 1254 (C.D. Cal. 2007) ....................................................16, 17

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009) ............................................................................9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...................................................................passim

*Elsevier Inc. v. W.H.P.R., Inc.*,
   692 F. Supp. 2d 297 (S.D.N.Y. 2010) ............................................................17

*Evercrete Corp. v. H-Cap Ltd.*,
   429 F. Supp. 2d 612 (S.D.N.Y. 2006) ....................................................3, 4, 22

*Friedman v. 24 Hour Fitness USA, Inc.*,
   580 F. Supp. 2d 985 (C.D. Cal. 2008) ............................................................14

*Gomez v. Guthy-Renker*,
   No. EDCV 14-1425-JGB, 2015 U.S. Dist. LEXIS 90725
   (C.D. Cal. July 13, 2015) ..........................................................................13, 14

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
   955 F.2d 1143 (7th Cir. 1992) ........................................................................11

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.,*

4

151 Cal. App. 4th 631 (2007) ..................................................................22

5

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*

6

456 U.S. 844 (1982) ...............................................................................19

7

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*

8

98 F. Supp. 2d 480 (S.D.N.Y. 2000) ...............................................3, 22

9

*MDT Corp. v. N.Y. Stock Exch. Inc.,*

858 F. Supp. 1028 (C.D. Cal. 1994) ......................................................11

10

*Naso v. Park,*

11

850 F. Supp. 264 (S.D.N.Y. 1994) ..........................................................4

12

*Newcal Industries, Inc. v. Ikon Office Sol.,*

13

513 F.3d 1038 (9th Cir. 2008) ..................................................................4

14

*Odom v. Microsoft Corp.,*

15

486 F.3d 541 (9th Cir. 2007) .................................................................16

16

*Reves v. Ernst & Young,*

17

507 U.S. 170 (1993) ...........................................................................5, 6, 8

18

*Robins v. Glob. Fitness Holdings, LLC,*

19

838 F. Supp. 2d 631 (N.D. Ohio 2012) .................................................14

20

*Rosner v. Bank of China,*

528 F. Supp. 2d 419 (S.D.N.Y. 2007) ..............................................14, 15

21

*Sebastian Int'l, Inc. v. Russolillo,*

22

186 F. Supp. 2d 1055 (C.D. Cal. 2000) ............................................4, 19

23

*Smith v. Jackson,*

24

84 F.3d 1213 (9th Cir. 1996) ....................................................................4

25

*Tiffany (NJ) Inc. v. eBay Inc.,*

26

600 F.3d 93 (2d Cir. 2010) ...........................................................2, 19, 21

27

*Tiffany (NJ) Inc. v. eBay, Inc.,*

28

576 F. Supp. 2d 463 (S.D.N.Y. 2008) .............................................11, 21

# TABLE OF AUTHORITIES
### (continued)

**Page**

*U.S. Media Corp. v. Edde Entm't, Inc.*,
   No. 94 Civ. 4849, 1996 U.S. Dist. LEXIS 13389 (S.D.N.Y. Sept. 12, 1996) ....22

*United Food & Commercial Workers Unions v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) ............................................................................6, 9

*United States v. Cone*,
   714 F.3d 197 (4th Cir. 2013) .................................................................................20

*United States v. Jinian*,
   725 F.3d 954 (9th Cir. 2013) .................................................................................23

*United States v. Oreto*,
   37 F.3d 739 (1st Cir. 1994) .................................................................................6, 7

*United States v. Turkette*,
   452 U.S. 576 (1981) .....................................................................................13, 15

*Univ. of Md. v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534 (3d Cir. 1993) ............................................................................9, 10

*Vulcan Golf, LLC v. Google, Inc.*,
   No. 07-3371, 2008 U.S. LEXIS 60608 (N.D. Ill. July 31, 2008) .......................12

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ...................................................................6, 10, 11

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) .............................................................3, 5

**Statutes**

18 U.S.C. § 1961(1) ................................................................................................20

18 U.S.C. § 2319 ....................................................................................................18

18 U.S.C. § 2320 ....................................................................................................18

# TABLE OF AUTHORITIES

**Page**

**Other Authorities**

130 Cong. Rec. H12076 ........................................................................................ 19

HR Report 98-877 ........................................................................................... 19, 20

S. Rep. 98-526 ..................................................................................................... 21

**INTRODUCTION**

Wimo's Opposition does nothing to cure the fundamental legal and factual deficiencies identified by eBay's Motion to Dismiss. Unlike situations where courts permit RICO claims to proceed, Wimo cannot plausibly allege that eBay actively colluded with the sellers, directed their activities, or received directions from them in connection with the alleged counterfeiting. Indeed, Wimo cannot identify any service that eBay provided to the Seller Defendants and Unauthorized Sellers that eBay did not also provide to all other users. As the Motion establishes, the RICO claim fails for multiple independent reasons:

- The RICO claim is nothing more than alleged trademark infringement;
- Wimo does not plausibly allege that eBay conducted and directed the affairs of the alleged enterprise;
- Wimo does not plausibly allege a RICO enterprise among the defendants; and
- Wimo does not plausibly allege the predicate acts of trafficking in counterfeit goods or wire fraud.

Wimo largely ignores the foregoing points and instead focuses on new, improper, and irrelevant allegations that expand on the rampant conjecture of the FAC. But, even if those allegations were included in the FAC, speculation about eBay's motives for ordinary business activities is not enough to state a viable RICO claim because the Court must consider and credit innocent, alternative explanations for such activities. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997, 1000 (9th Cir. 2014) (dismissing RICO claim where the complaint's allegations did not support plausible inferences). Wimo now urges that eBay observed the profits of its competitor, the Alibaba Group, and decided that eBay must similarly provide a platform for the sale of illegal counterfeits from China. Opp'n at 1:22-2:7. Such allegations appear nowhere in the FAC and are

1   inconsistent with the innocent explanation that eBay sought to expand its presence
2   in one of the world's largest markets—China. Further, Wimo's theory is
3   undermined by eBay's judicially-recognized incentive to avoid counterfeits:
4   "[P]rivate market forces give eBay and those operating similar businesses a strong
5   incentive to minimize the counterfeit goods sold on their websites. . . . The risk of
6   alienating these users gives eBay a reason to identify and remove counterfeit
7   listings. Indeed, it has spent millions of dollars in that effort." *Tiffany (NJ) Inc. v.*
8   *eBay Inc.*, 600 F.3d 93, 109 (2d Cir. 2010).

9         Wimo also suggests that because it submitted some 5,000+ Notices of
10  Claimed Infringement ("NOCIs") to eBay regarding alleged "Fake Lunatik
11  Products," eBay was required to proactively seek out, identify, and remove other
12  listings not identified by Wimo that potentially infringed Wimo's trademarks or
13  offered knockoff versions of its products. The fact that eBay did not, according to
14  Wimo, signals that eBay **must** be in a conspiracy with the sellers to assist in their
15  counterfeit sales. But such an inference of collaboration does not logically or
16  legally flow from the facts alleged in the FAC. While Wimo references numerous
17  NOCIs it submitted to eBay, Wimo does not allege a single instance where eBay
18  failed to remove a listing in response to any one of those NOCIs. Further, Wimo
19  confuses eBay's "technical capacity" to search for potential counterfeits with
20  Wimo's "legal duty to police its own trademarks." *Academy of Motion Picture Arts*
21  *and Sciences v. GoDaddy.com, Inc.*("*GoDaddy*"), CV 10-03738 AB (CWX), 2015
22  WL 5311085, at *52 (C.D. Cal. Sept. 10, 2015) (slip op.) In so doing, Wimo seeks
23  to impose on eBay "the **unprecedented duty** to act as the internet's trademark
24  police." *Id.* (emphasis added). It was Wimo's obligation, not eBay's, to police
25  Wimo's marks. RICO liability cannot be premised on eBay's alleged failure to meet
26  a duty that did not exist.

27        In essence, Wimo's RICO claim boils down to just two things: (1) the fact
28  that the alleged Seller Defendants and Unauthorized Sellers used ebay.com and the

REPLY ISO EBAY'S MOTION TO
DISMISS FIFTH CAUSE OF ACTION

other services that eBay offers to all users of its website, such as automatically generated emails based on a user's browsing history, and (2) that eBay did not do more to proactively police Wimo's trademarks (despite having no legal obligation to do so). Such allegations do not create a viable RICO cause of action, and the Fifth Cause of Action should be dismissed with prejudice.

## ARGUMENT

### I.    Wimo Fails to Allege a RICO Claim Generally.

As noted in the Motion, Wimo's RICO claim fails because it is "simply a restyling" of trademark infringement claims as purported RICO claims. Mot. at 6:11-8:11 (quoting *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1081 (C.D. Cal. 2012) (Staton, J.)). Wimo does not dispute that it relies on the same allegations to support its trademark infringement claims and the purported predicate acts. Opp'n at 8:3-4. Instead, Wimo argues that the cited cases do not support eBay's argument and that Wimo's trademark infringement allegations are merely "also germane" to its predicate act allegations. Wimo is mistaken on both counts.

First, Wimo urges that the cases cited in the Motion and in *Wecosign* do not reflect the "broad legal proposition on which eBay's argument relies" (Opp'n at 6:20-7:4), apparently because not every cited case involved trademark infringement masquerading as a RICO claim. Wimo's argument misses the point: whether patent infringement, trademark infringement, or some other civil claim is involved, merely combining such acts with alleged use of an interstate wire is insufficient to plead a RICO predicate act. *See, e.g., Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 630-31 (S.D.N.Y. 2006) ("All businesses use interstate mail or wires. Congress did not intend that every trademark dispute would be brought under RICO."); *see also* Section IV, *infra*. Moreover, most of the cases cited in the Motion and in *Wecosign* did in fact concern trademark infringement. *See Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 491 (S.D.N.Y. 2000) (patent but citing and discussing three trademark cases); *Naso v. Park*, 850 F. Supp. 264, 274-

75 (S.D.N.Y. 1994) (trademark and patent); *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996) (copyright); *Evercrete*, 429 F. Supp. 2d at 630-31 (trademark).

Second, Wimo argues that it has adequately pleaded RICO predicate acts and, accordingly, additional pleading of trademark infringement does not undermine the adequacy of its RICO pleading. Opp'n at 7:5-18. Wimo again misses the point: as discussed further below, Wimo has not adequately pleaded RICO predicate acts and, instead, has mischaracterized vanilla trademark infringement claims as predicate acts. Further, Wimo's reliance on *Newcal Industries, Inc. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir. 2008) and *Sebastian International, Inc. v. Russolillo*, 186 F. Supp. 2d 1055 (C.D. Cal. 2000) is misplaced. Neither case deals with the relevant question of whether mere trademark infringement claims can be recast as RICO predicate acts. *Newcal* primarily dealt with whether the plaintiff had standing to assert a RICO claim. 513 F.3d at 1055-56. And although *Newcal* did not expressly consider whether plaintiff had recast trademark claims as RICO predicate acts, the substance of the alleged fraud materially exceeded the trademark allegations: plaintiff in *Newcal* claimed "that IKON's fraud foreclosed 'specific named customer accounts' from competition, thereby decreasing Newcal's market share. Second, Newcal claim[ed] to have paid a fraudulently inflated price to buy out certain accounts . . . ." *Id.* at 1055 Similarly, the criminal counterfeiting allegations in *Sebastian* far exceeded the trademark infringement allegations— among other things, the defendants were direct sellers of alleged counterfeits and allegedly "remove[d] . . . holographic labels . . . to pass off the counterfeit merchandise as genuine." 186 F. Supp. 2d at 1062. There are no equivalent allegations here. Instead, Wimo alleges only that eBay: (1) failed to proactively stop the Seller Defendants and Unauthorized Sellers from posting listings and selling "Fake Lunatik Products" after receiving NOCIs; and (2) sent automatically generated emails that included links to the sellers' allegedly infringing listings.
/ / /

*See* FAC ¶¶ 326(a-b, d-i, k-o), 331(a-b, d-i, k-o).[1]

As in *Wecosign*, internet marketing cannot transform trademark infringement claims into wire fraud. *Compare* FAC ¶ 330 (alleging Defendants committed wire fraud using "interactive websites [] to promote and sell Fake Lunatik Products"), *with Wecosign*, 845 F. Supp. 2d at 1077 (noting that the *Wecosign* complaint alleged that "Defendants began advertising and solicitation of their financial services on the Internet under various marks confusingly similar to the Mark"). Accordingly, the RICO claim should be dismissed.

## II.   Wimo Fails to Adequately Allege that eBay Conducted the Alleged RICO Enterprise.

Wimo's attempt to characterize eBay's regular, lawful services as conducting a RICO enterprise fails because the FAC does not allege facts showing that eBay conducted the alleged RICO enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). In *Reves*, the Supreme Court made clear that mere participation or providing services to an alleged enterprise is not enough for RICO liability. Instead, the Court held that a defendant "conducts" a RICO enterprise only when that defendant participates in the "operation or management" of the enterprise. *Id*. at 182. In making this showing, the plaintiff must also establish that the defendant was acting to conduct the affairs of the ***enterprise***, rather than conducting its ***own*** affairs. *Id*. at 185. Wimo fails entirely to address these crucial requirements.

---

[1] The Opposition conflates eBay with the Seller Defendants and Unauthorized Sellers by repeatedly asserting that the "Defendants" misappropriated Wimo's intellectual property through "the promotion, sale, and shipment of Fake Lunatik Products." *See, e.g.,* Opp'n at 6:12-13, 7:14-15. However, the FAC makes clear that only the sellers—and not eBay—list, sell, and ship the purported counterfeits. *See* Mot. at 20:2-5 (citing FAC ¶¶ 10-12, 147, 164, 321c, 326, 331); *id.* at 21:4-5 (citing FAC ¶¶ 64, 69, 72, 74, 82-83, 88-89, 95-97, 104, 109-10, 114, 116-18, 123-25, 132-34, 137-38, 140, 182, 326, 331). Even if eBay's automatically generated emails could be construed as promoting alleged counterfeits, those advertisements would not violate Sections 2320 or 1343. *See* Mot. at 20:9-24 and 23:3-24:9.

### A.   The *Reves* Operation & Management Test Governs.

Because Wimo cannot meet the *Reves* criteria, Wimo instead tries to avoid *Reves*. Wimo contends that the *Reves* test was limited to outside service providers and does not apply to those alleged to be "an integral part of the Enterprise." Opp'n at 8:16-9:23 and 8 n.2. Wimo is wrong. The Supreme Court categorically held that RICO liability under Section 1962(c) requires that the defendant direct the affairs of the enterprise by operating or managing the enterprise. *Reves*, 507 U.S. at 185 ("[W]e hold that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself.").

The Ninth Circuit has confirmed that "*Reves* is the controlling authority on the point of what constitutes 'conduct'" of an enterprise, regardless of whether the defendant was alleged to be an insider or an outsider to the scheme. *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008). In fact, the Ninth Circuit rejected the argument Wimo advances, noting that "performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside'" the alleged scheme. *Id.* at 1249.[2]

Wimo asserts that *United States v. Oreto*, 37 F.3d 739 (1st Cir. 1994) limited *Reves* to defendants who merely provide services to an enterprise. *See* Opp'n at 8 fn.2. Not so. *Oreto* addressed the circumstances under which "foot soldiers" who implemented the decisions of "generals" in an enterprise could be liable under

---

[2] Courts have consistently applied the *Reves* "operation and management" test whether the defendant was alleged to be an insider or outsider in the alleged scheme. *See, e.g.*, *United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013) (applying *Reves* to allegation of alleged RICO enterprise between two companies); *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 216-218 (S.D.N.Y. 2000) (applying *Reves* and concluding that manufacturer that allegedly distributed cigarettes to wholesalers, allegedly knowing that the wholesalers were illegally smuggling those cigarettes to other states, did not conduct the affairs of alleged RICO smuggling enterprise).

RICO. 37 F.3d at 750-51. The First Circuit simply concluded that—consistent with *Reves*—"lower rung employees" could be liable when acting under the direction of "upper management," and the defendants in that case had knowingly carried out the decisions of the enterprise's leaders. *Id*. at 750. The fact that lower-level participants of an enterprise can be liable under *Reves* when they act on orders from superiors within the enterprise has no bearing on the facts here: Wimo does not allege that eBay is a "lower level employee" in the alleged enterprise, nor does it allege that eBay was acting at the orders and under the direction of the Seller Defendants and Unauthorized Sellers.

Moreover, even if *Reves* were limited to those who provide services to an alleged enterprise, as Wimo claims, *Reves* would still apply here because the FAC alleges that eBay and PayPal participated in the enterprise by ***providing services*** to the Seller Defendants and Unauthorized Sellers. Throughout the FAC, Wimo describes eBay and PayPal's involvement in the alleged enterprise based the services they provided. For example:

- eBay "has had reasonable means available to withdraw its ***services*** and the services of PayPal so that ebay.com could not be used by Unauthorized Sellers to directly infringe on Plaintiff's trademarks." FAC ¶ 3 (emphasis added).

- eBay and PayPal "do not take reasonable means they have available to withdraw their ***services*** to Unauthorized Sellers . . . " *Id.* ¶ 5 (emphasis added).

- eBay refuses to take remedial action and creates the "false optic" that it has no reason to suspect that "users of its ***services*** are infringing on Plaintiff's protected marks." *Id.* ¶ 180 (emphasis added).

- "eBay "knowingly provided ***essential services*** to the Seller Defendants and other Unauthorized Sellers engaged in the promotion, advertisement, offer for sale, sale and distribution of . . . counterfeit Lunatik products . . . ." *Id.* ¶ 287 (emphasis added).

/ / /

- "eBay provided *online marketing services* to the Seller Defendants and other eBay sellers whom eBay knew and had reason to know were selling Fake Lunatik Products . . . ." *Id.* ¶ 287(c) (emphasis added).

- "eBay knowingly provided the Seller Defendants with the *online marketplace and other services* to facilitate the activities of the Unauthorized Sellers, including *marketing, shipping and/or financing services* that allowed the Seller Defendants to transact their illegal sales . . ." *Id.* ¶ 320 (emphasis added). *See also id.* at ¶¶ 287(a), 287(b), 320, 321(a).

*Reves* controls and, as discussed below, the RICO claim must be dismissed for failure to allege facts demonstrating that eBay "operated or managed" the affairs of the enterprise, and that eBay was acting to further the interests of the alleged illegal enterprise rather than its own affairs.[3] 507 U.S. at 182, 185.

**B.    Wimo Fails to Adequately Allege that eBay Operated or Managed the RICO Enterprise under *Reves*.**

Wimo's RICO claim fails because the factual allegations regarding operation or management rest solely on (1) allegations regarding services that eBay provides to all users of its website, and (2) claims that eBay should have done more to prevent the sale of alleged Wimo counterfeits. Neither is sufficient to establish that eBay "operated or managed" the alleged enterprise.

---

[3] Wimo also cites *Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003) to argue that eBay can be liable under RICO because it "exercised discretion" in refusing to restrain the sale of "Fake Lunatik Products" on ebay.com. Opp'n at 11:14-46. But the court in *Baisch* did *not* hold that a defendant can be found to direct the affairs of an enterprise by exercising discretion in connection with the alleged criminal activity. Instead, *Baisch* noted that a defendant can be liable *either* by directing the affairs of the enterprise *or* by "exercising discretionary authority" in *carrying out instructions from "those higher up in the chain of command" in the enterprise*. *Id.* at 376 (emphasis added). Wimo does not allege that eBay participated in the enterprise by following instructions. To the contrary, the FAC alleges that eBay was at the hub of the overall scheme and allegedly managed its actions. FAC ¶¶ 319, 321(a), 323.

1    In the FAC and the Opposition, Wimo fails to identify anything eBay did to

2  assist the supposed enterprise other than offer the ***same services*** that it provides to

3  any other user of its website. Wimo completely ignores this element of *Reves*.

4  There is no allegation that eBay actively colluded with the Seller Defendants or

5  Unauthorized Sellers or that it oversaw or coordinated their supposed counterfeiting

6  activities. The FAC alleges only that eBay provided a marketplace and "marketing

7  and search optimization services," directed PayPal to process payments, and

8  negotiated favorable shipping rates for sellers located overseas. FAC ¶¶ 321(a), (b).

9  As eBay explained in the Motion, however, these are not services provided to

10 counterfeiters, they are services provided to any user of ebay.com. Mot. at 9:16-

11 10:19. Wimo provides no authority or argument to support its claim that a company

12 can conduct a RICO enterprise through others' use of the same services it provides

13 to all customers.

14    Wimo's complete failure to allege facts showing that eBay was acting to

15 conduct the alleged RICO enterprise, rather than its own normal business

16 operations, is fatal. *See, e.g., United Food & Commercial Workers Unions v.*

17 *Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013) (affirming dismissal for lack of

18 enterprise conduct where the defendants' cooperation did not go "outside the

19 bounds of the parties' normal commercial relationships"); *Univ. of Md. v. Peat,*

20 *Marwick, Main & Co.*, 996 F.2d 1534, 1534-40 (3d Cir. 1993) (no enterprise

21 conduct where auditor's actions did not go beyond its regular business service);

22 *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) (defendant

23 must act to advance the interests of the RICO enterprise, rather than acting in its

24 own interests or as part of its regular business operations).

25    Wimo argues, however, that the conduct requirement is met because the

26 services eBay provided to the Seller Defendants and Unauthorized Sellers were

27 "vital to the achievement of the Enterprise's primary goal and to the success of the

28 enterprise." Opp'n at 8:16-18. For example, Wimo argues that eBay negotiated

REPLY ISO EBAY'S MOTION TO
DISMISS FIFTH CAUSE OF ACTION

lower shipping costs for overseas sellers and allowed the Seller Defendants and Unauthorized Sellers to use the services of ebay.com to sell alleged counterfeits. *Id.* at 10:7-11. But merely providing services to an alleged illegal enterprise, no matter how useful, does not constitute "operating or managing" the enterprise. *See e.g.*, *Walter*, 538 F.3d at 1249 ("Simply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'"); *Univ. of Md.*, 996 F.2d at 1539 ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result."). The fact that the Seller Defendants and Unauthorized Sellers may have used eBay's regular services to carry out their alleged crimes is not sufficient to establish the necessary operation and management over the enterprise required for RICO liability.[4]

Wimo also argues that eBay operated and managed the alleged enterprise because it purportedly failed to take sufficient steps to prevent the sale of "Fake Lunatik Products" on ebay.com and to proactively remove "obvious fake" products after receiving 5,000+ NOCIs from Wimo. Opp'n at 10:16-11:3. However, Wimo cites no authority that eBay had an affirmative duty to proactively locate and

_____

[4] No authority supports Wimo's claim that a defendant "conducts the enterprise" where it provides services or assistance that was "indispensable and vital" to its success. Opp'n. 9:8-17. Wimo asserts that *Walter v. Drayson* concluded that a participant who is indispensable and vital to the success of the enterprise participates in the conduct of the enterprise. *Id*. at 9:9-11. Not so. In *Walter*, the Ninth Circuit affirmed the district court's conclusion that the defendant **had not** participated in directing the affairs of the enterprise. 538 F.3d at 1249. In so ruling, the Ninth Circuit distinguished another case cited by Wimo, *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc*., 62 F.3d 967 (7th Cir. 1995), where the Seventh Circuit found that certain low level participants met the conduct requirement by providing vital assistance to the enterprise while acting under orders from upper management. *Id*. As noted above, the FAC does not allege that eBay was a low level participant acting on orders from upper management in the enterprise and thus, as in *Walter*, the standard applied by the court in *MCM Partners* to the low level participants in that case does not apply.

1  remove such listings. Nor can it. "The law does not impose liability for contributory
2  trademark infringement on [a company] for its refusal to take such preemptive steps
3  in light of [its] . . . generalized knowledge that counterfeit goods might be sold on
4  its website." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 470 (S.D.N.Y.
5  2008); *see also MDT Corp. v. N.Y. Stock Exch. Inc.*, 858 F. Supp. 1028, 1034 (C.D.
6  Cal. 1994); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d
7  1143, 1149 (7th Cir. 1992); *GoDaddy*, 2015 WL 5311085 at *52. eBay's alleged
8  failure to comply with a duty that did not exist cannot establish operation or
9  management of the RICO enterprise.

10  Even if eBay, rather than Wimo, were required to police the sellers' listings,
11  Wimo provides no authority for the novel theory that "intentional inaction" or a
12  failure to prevent third parties' illegal conduct can establish operation or
13  management of a RICO enterprise. *See* Opp'n at 9:5-7; *see also id.* at 10:16-11:13.
14  To the contrary, the Ninth Circuit has held that a failure to stop illegal activity of an
15  enterprise is not sufficient to establish that the defendant controlled or conducted
16  the affairs of the enterprise. *Walter*, 538 F.3d at 1248 ("[i]t is not enough that [the
17  defendant] failed to stop the illegal activity."). Finally, the "intentional inaction"
18  that Wimo posits is inconsistent with the facts alleged in the FAC. Although Wimo
19  repeatedly references the 5,000+ NOCIs it supposedly sent to eBay, Wimo never
20  alleges that eBay failed to remove any of the purportedly infringing listings that
21  were the subject of those NOCIs. Nor does Wimo allege that eBay failed to follow
22  its policy for sellers accused of repeat infringement. The failure to make such
23  allegations fatally undermines the claim of "intentional inaction."

24  Wimo's allegations that the Seller Defendant and Unauthorized Sellers used
25  eBay's regular services to list supposed counterfeits, and that eBay did not
26  proactively seek out and remove all potentially infringing listings, falls far short of
27  establishing that eBay operated or managed the affairs of a RICO enterprise.
28  / / /

REPLY ISO EBAY'S MOTION TO
DISMISS FIFTH CAUSE OF ACTION

### III. The FAC Fails to Allege the Existence of a RICO Enterprise.

The FAC fails to allege facts showing that eBay shared a common purpose with the Seller Defendants and Unauthorized Sellers or that it had the kind of interpersonal relationships with those sellers that could establish a RICO enterprise. Absent factual allegations showing coordination and common purpose between eBay and the sellers to traffic in counterfeits, Wimo's RICO claim fails to meet the enterprise requirements of *Boyle v. United States* and *Odom v. Microsoft.*

The Opposition never cites a case that found a RICO enterprise under facts similar to those here—where the defendant was not alleged to have been aware of the thousands of other enterprise participants carrying out the alleged predicate acts, was not alleged to have communicated or collaborated with the other alleged participants regarding the supposed illegal purpose of the enterprise, and had no involvement beyond providing its commonly-offered commercial services. This absence is not surprising; courts presented with such facts have instead held that plaintiffs have not pleaded the common purpose and organization required for a RICO enterprise. *See, e.g., Vulcan Golf, LLC v. Google, Inc.*, No. 07-3371, 2008 U.S. LEXIS 60608, at *15 (N.D. Ill. July 31, 2008) (finding no enterprise where "none of the allegations suggest that the hundreds of thousands . . . of members of the alleged enterprise . . . are specifically aware of the other members such that they are organized in any structured manner or joined in any purpose").

Ignoring this authority, Wimo pulls isolated language from various cases to invent a supposed rule that could be met in nearly every instance of alleged fraud. Under Wimo's proposed rule, no common purpose is needed other than an allegation that the participants had the intention to carry out RICO predicate crimes, and no organization or relationships are needed other than the joint commission of predicate crimes. Opp'n at 15:25-16:11. It is hard to imagine ***any*** criminal activity involving more than one person that would not satisfy Wimo's "test."

/ / /

- 12 -

1    Courts have warned against such misuse of the RICO statutes to transform a

2    company's regular business relationships into RICO enterprises. In *Guthy-Renker*,

3    the court cautioned that "sufficiently crafty counsel" could use "creative wordplay"

4    to craft a supposed "enterprise" solely based on regular services a business may

5    have provided to an entity that engaged in fraud. No. EDCV 14-1425-JGB, 2015

6    U.S. Dist. LEXIS 90725, at *13-14 (C.D. Cal. July 13, 2015). The court explained:

7    > To do this, [the plaintiff] need merely elaborate on what it means for
8    > [the service provider] to provide services to [the] Business, doing so in
     > a way that expresses their . . . common purpose, . . . a structure or
9    > organization, and … longevity necessary to accomplish the purpose.
     > . . .

10   > Finding a 'common purpose' can be done relatively systematically.
     > Since [the service provider] and Business are in a commercial
11   > relationship, their commercial relationship need only be restated as a
     > 'purpose.'
12   > . . .

13   > Using this pleading strategy, [a plaintiff's] counsel can construct a
     > novel 'enterprise' out of nothing more than the allegation that [the
14   > services provider] provides services to [a] Business; it just requires
     > elaborating verbosely on what a Servicer/Client relationship means.
15

16   *Id*. at *15-16. Wimo seeks to do precisely what *Guthy-Renker* sought to bar.

17   Wimo's creative effort fails because it contravenes the basic requirements of

18   *Boyle*. The Supreme Court in *Boyle* made clear that where "several individuals,

19   independently and without coordination, engaged in a pattern of crimes listed as

20   RICO predicates . . . [p]roof of these patterns **would not be enough** to show that the

21   individuals were members of an enterprise." *Boyle v. United States*, 556 U.S. 938,

22   947 n.4 (2009) (emphasis added). Thus, while an enterprise need not have a specific

23   "hierarchical structure or 'chain of command,'" a RICO claim cannot survive

24   unless the plaintiff alleges facts showing a common purpose and interpersonal

25   relationships among those associated with the enterprise. *Id*. at 946. In plain terms,

26   an association-in-fact enterprise is "a group of persons associated together for a

27   common purpose of engaging in a course of conduct." *Id*. (quoting *United States v.*

28   *Turkette*, 452 U.S. 576, 583 (1981)).

### A.   Wimo Fails to Allege Facts Showing a Common Purpose Between the Alleged Participants in the Enterprise.

Wimo fails to allege facts plausibly demonstrating that eBay, PayPal, the Seller Defendants, and the thousands of Unauthorized Sellers alleged to be part of the enterprise joined together for the purpose of selling counterfeit versions of Wimo's products. Instead, the facts alleged show only that eBay's "purpose" was to enable users of its website to sell their items, rather than to enable counterfeiters to sell counterfeit versions of Wimo's products.

Relying on *Friedman v. 24 Hour Fitness USA, Inc*., 580 F. Supp. 2d 985 (C.D. Cal. 2008), Wimo contends that "the Ninth Circuit" has rejected eBay's argument that regular commercial services cannot be the "common purpose" among participants to establish a RICO enterprise. Opp'n at 13:14-16. Wimo's reliance on *Friedman* is misplaced. As an initial matter, *Friedman* was a district court case, not a Ninth Circuit case, and Wimo provides no Ninth Circuit authority to support this claim. Nor can it—far from being controlling authority, *Friedman* has been recognized as an outlier and has been rejected by nearly every decision to consider it. *See, e.g., Guthy-Renker*, 2015 U.S. Dist. LEXIS 90725, at *17 (declining to follow *Friedman* and noting that "other courts addressing the same issue on similar facts have expressly declined to follow *Friedman*"); *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 652-53 (N.D. Ohio 2012) (rejecting *Friedman* as an outlier and citing multiple cases to the contrary). Instead, "there has been a remarkable uniformity in [courts'] conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Guthy-Renker*, 2015 U.S. Dist. LEXIS 90725, at *31; *see also Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) (finding no RICO enterprise where the alleged "common purpose" was the services that Bank of China provided to the public at large).

/ / /

Wimo attempts to distinguish *Rosner* on the ground that it "does not discuss the standards prescribed by *Odom*." Opp'n at 13:17-23. This is simply not true. While *Rosner* did not specifically discuss *Odom*, it addressed whether the participants of the alleged enterprise shared a "common purpose," which is precisely the standard *Odom* endorses. 528 F. Supp. 2d at 428 (noting that a "RICO enterprise is a 'group of persons associated together for a common purpose of engaging in a course of conduct'") (quoting *Turkette*, 452 U.S. at 583). Evaluating the same "common purpose" standard at issue in *Odom*, the court in *Rosner* concluded that providing the same "general professional services" to other alleged enterprise participants was not sufficient to allege the "common unlawful purpose" needed to violate RICO. *Id.* at 429.

Finally, Wimo contends that the "common purpose" requirement is met because eBay and PayPal had a "common purpose to profit by the misappropriation of Plaintiff's intellectual property," which supposedly could not have been accomplished without their collective agreement to refrain from "exercising control over the means of any eBay's seller's infringement . . . ." Opp'n at 13:24-14:8. But parroting the *Boyle* requirements with broad and factually unsupported allegations of a "common purpose" and "coordinated" ***inaction*** is the kind of conclusory pleading that the Supreme Court has held to be insufficient to meet a party's obligations under Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 696 (2009).

**B.    The FAC Fails to Allege an "Ongoing Organization" Between the Alleged RICO Participants to Carry Out RICO Predicate Acts.**

Wimo fails to allege an "ongoing organization" among the alleged enterprise participants or that they "associated together" to carry out the purpose of the enterprise. *Boyle*, 556 U.S. at 946; *see also Eclectic*, 751 F.3d at 997. This is fatal.

Wimo relies on *Odom* and argues that no specific or ascertainable structure need be alleged. Opp'n at 14:21-15:23. But while *Odom* does not identify any particular structure required for a RICO enterprise, Wimo must still allege facts

REPLY ISO EBAY'S MOTION TO
DISMISS FIFTH CAUSE OF ACTION

creating a plausible inference that there was an "ongoing organization" between eBay and the alleged RICO participants that was a "vehicle for the commission of two or more predicate acts." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007). Wimo must also allege facts showing that eBay and the other enterprise participants "associated together" to carry out the purpose of the enterprise. *Boyle*, 556 U.S. at 946.

The facts of *Odom*, which were discussed in the Motion but ignored by Wimo, provide a good example of the kind of coordination between participants needed to allege a RICO enterprise. There, the court relied heavily on the fact that Microsoft and Best Buy had announced the formation of a "comprehensive strategic alliance" that was specific to the alleged fraudulent activity, that they engaged in "significant joint marketing activity," shared profits, and that Microsoft invested $250 million in Best Buy as part of the enterprise. *Id*. at 543, 545. Thus, the enterprise at issue in *Odom* did not consist of the regular business activities of either Microsoft or Best Buy; instead, they joined together and created a venture that was specific to the alleged fraudulent activity. Here, in contrast, Wimo alleges no facts showing that eBay, PayPal, the Seller Defendants, and the thousands of unnamed Unauthorized Sellers joined together to form anything, that they coordinated their activities, or that they "established mechanisms" to implement the alleged purpose of the enterprise. *Cf. id*. Nor is there any allegation that they shared profits from the alleged enterprise or that eBay or PayPal provided financial assistance of any kind to the sellers. Thus, despite Wimo's reliance on isolated language in *Odom*, the facts here bear no relation whatsoever to *Odom*'s facts.

Wimo also relies on a district court case, *Bryant v. Mattel Inc.*, 573 F. Supp. 2d 1254 (C.D. Cal. 2007), in arguing that eBay's provision of services to the Seller Defendants and Unauthorized Sellers, standing alone, is enough to establish that the defendants "coordinated their efforts," thus creating the "ongoing organization" required by *Odom* and *Boyle*. Opp'n at 16:12-22. But *Bryant* involved allegations

that the defendants "stole documents containing information regarding Mattel's future products, production and shipping costs, sales information, customer information, marketing information, and strategic research information both in Mexico and worldwide" and coordinated the transfer of the stolen information through a shared email address. 573 F. Supp. 2d at 1257-58. That is a far cry from conclusory and unsupported allegations of "coordination" here, where Wimo (1) concedes that eBay was not aware of specific sellers until it received NOCIs from Wimo and (2) cannot identify any assistance eBay provided to the defendant sellers beyond the regular services available to all sellers.

Finally, Wimo argues that eBay relies on out-of-circuit authority in arguing that that the "hub-and-spoke" or "rimless wheel" structure alleged here can never constitute a RICO enterprise. Opp'n at 13:24-14:18. But eBay does not argue that a rimless hub-and-spoke arrangement, categorically, can never satisfy the common purpose and organization requirements of *Boyle*. Instead, in its motion, eBay noted that numerous courts have considered facts similar to those alleged here and concluded that those alleged enterprises lacked the common purpose and interpersonal relationships needed to satisfy *Boyle*'s enterprise requirements. Mot. at 16:24-17:13. This is consistent with the holding in *Boyle* that the complaint must allege facts showing that there were interpersonal relationships between the members of the purported enterprise and that they "associated together" as a group, as opposed to committing similar but ultimately independent crimes. 556 U.S. at 946; *see also Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (finding no enterprise existed where "not a single fact is pleaded tending to show that the various sets of named defendants . . . had any interpersonal relationships"). As in *Vulcan Golf*, the enterprise alleged here (where eBay's website is alleged to have been used by thousands of unnamed Unauthorized Sellers to sell counterfeits around the world, without any allegation that eBay directed their

/ / /

activities or that it was even aware of these specific sellers) lacks the interpersonal relationships and ongoing organization needed to plead an enterprise under *Boyle*.

## IV.   Wimo Cannot Show a "Pattern of RICO Activity."

### A.   Wimo's Allegations that eBay Violated Section 2320 Fail.

Wimo fails to plead a predicate act under Section 2320 because (1) eBay does not traffic in counterfeits and (2) eBay does not knowingly use counterfeit marks. *See* Mot. at 18:20-22:3. Wimo's Opposition fails to respond to either of these arguments. Instead, Wimo asserts that eBay failed to prevent the sale of alleged counterfeits and sent emails advertising alleged counterfeits it (somehow) must have known were fakes. *See* Opp'n at 17:24-19:11. Even if these allegations were true—which they are not—such acts do not violate Section 2320.[5]

> #### 1.   The Opposition Concedes that eBay Does Not Traffic in Counterfeit Goods and Section 2320 Does Not Criminalize Contributory Trademark Infringement.

Wimo does not assert that eBay transports, transfers, otherwise disposes of counterfeit goods, or engages in any other act that constitutes "trafficking" under the statute. *See* Mot. at 19:16-23 (citing 18 U.S.C. § 2320(f)(5) (defining trafficking)). Instead, Wimo contends that eBay engages in trafficking because it controls ebay.com and allegedly failed to stop the listing and sale of "Fake Lunatik Products" by the Seller Defendants and Unauthorized Sellers after Wimo sent eBay numerous NOCIs. *See* Opp'n at 17:24-18:8. However, Section 2320 does not penalize the failure to stop the actions of third parties. Nor does Wimo cite a single case suggesting that the statute should be construed in such a way. The one case Wimo appears to rely on—*Sebastian International, Inc. v. Russolillo*—does not address Section 2320 liability for marketplaces, like eBay, or liability flowing from

---

[5] The Opposition also, inexplicably, contends that eBay has somehow violated Section 2319. *See* Opp'n at 17:14-16. However, that statute concerns criminal infringement of copyright. *See* 18 U.S.C. § 2319. The FAC does not allege that Wimo has copyright interests, much less that those interests have been infringed.

the acts of third parties. Rather, that case concerned suppliers who allegedly produced and sold purported counterfeits to various retailers and the public. *See* 186 F. Supp. 2d at 1062. Based on those allegations, the Court found that the plaintiff had sufficiently alleged a violation of the statute. *Id.* at 1066. *Sebastian* has no bearing on the facts alleged here because the FAC concedes that the transactions on eBay's website are "carried out directly between eBay members"—*i.e.*, eBay is neither a producer nor a seller of any alleged counterfeit. FAC ¶ 36; *see also* Mot. at 19:24-20:8 (citing *Tiffany*, 600 F.39 at 97 (recognizing that eBay "does not itself sell the items . . . nor does it ever take physical possession of them . . .")).

Wimo's allegation that eBay knew of, but failed to stop, the sale of "Fake Lunatik Products" at most amounts to a claim for contributory trademark infringement.[6] *See Tiffany*, 600 F.3d at 103 (". . . eBay's knowledge *vel non* that counterfeit Tiffany wares were offered through its website is relevant to the issue of whether eBay contributed to the direct infringement of Tiffany's mark by the counterfeiting vendors themselves . . . [b]ut it is not a basis for a claim of direct trademark infringement against eBay. . ."). Nothing suggests that Congress intended to criminalize contributory trademark infringement, and contributory liability appears nowhere in Section 2320.[7] To the contrary, the House Committee emphasized that:

---

[6] Wimo makes virtually identical allegations in support of its Second Cause of Action for Contributory Infringement. *Compare* Opp'n at 17:24-18:8 *with* FAC ¶¶ 284-87, 291-93. Ultimately, that contributory infringement claim must also fail because eBay promptly removes potentially infringing listings and suspends the accounts of repeat offenders. *See Tiffany*, 600 F.3d at 109.

[7] The tort of contributory infringement arose from *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982). When it enacted Section 2320, Congress was aware of *Inwood* and discussed it in the context of generic drugs. *See* 130 Cong. Rec. H12076 at 12079 (daily ed. Oct. 10, 1984); *see also* HR Report 98-877 at 7 (discussing same). Notwithstanding this knowledge, Congress did not incorporate contributory trademark infringement into Section 2320.

[T]his legislation relates only to counterfeiting of registered trademarks, and *that no conduct that is not already proscribed by current law is covered by this bill. In fact, the scope of this bill is narrower than current law*, in that it creates enhanced penalties for only the most, egregious conduct covered by current law.

*See* H.R. 98-977 at 8 (emphasis added). Reading contributory infringement into Section 2320 would improperly rewrite the law. *See United States v. Cone*, 714 F.3d 197, 207 (4th Cir. 2013) ("We do not find that § 2320 can be properly read as the government contends without rewriting the statute: an act the Congress, but not this court, can undertake."). As a mere tort, contributory infringement cannot be a basis for RICO liability. *See* 18 U.S.C. § 1961(1) (limiting RICO predicate acts to violations of enumerated statutes).

### 2.   *eBay's Marketing Emails Do Not Violate Section 2320.*

The Opposition also does not dispute that the Seller Defendants and Unauthorized Sellers—not eBay—created the allegedly infringing listings and engaged in the sale of "Fake Lunatik Products." *See* Mot. at 21:2-8. Nor does the Opposition contend that eBay had any knowledge of the alleged infringing acts of the Seller Defendants and Unauthorized Sellers beyond the information provided in Wimo's NOCIs. *Id.* at 21:15-22:3. But Wimo argues that eBay violates Section 2320 because it "intentionally elects to refrain from taking action to prevent the further dissemination of email solicitations for Fake Lunatik products which include Plaintiff's … trademarks, notwithstanding its receipt of more than 5,000 NOCI from Plaintiff . . ." *See* Opp'n at 19:6-11 (emphasis omitted). Even if this allegation were true—which it is not—such "email solicitations" are not actionable under Section 2320 because the statute does not reach use of counterfeit marks in advertisements. *See* Mot. at 20:9-24 (quoting H.R. 98-997 at 10 ("*[T]he Committee has chosen not to cover use of a counterfeit mark or designation in connection with advertising of goods or services.*") (emphasis added)).

/ / /

Wimo's argument is also factually unfounded. Wimo relies on two key allegations to assert that eBay knowingly used counterfeit marks in its email advertisements: (1) since 2013 Wimo has sent eBay over 5,000 NOCIs concerning Fake Lunatik Products; and (2) eBay uses "complex algorithms" to create its marketing emails. *See* Opp'n at 18:13-19:2. But the courts and Congress have recognized that mere suspicion or general knowledge of counterfeiting is not enough. *See* Mot. at 21:15-22:3 (citing *Tiffany*, 600 F.3d at 107; S. Rep. 98-526 at *12). The court in *Tiffany* considered this precise issue and found that the "thousands of NOCIs filed with eBay" alleging use of Tiffany's marks did not put eBay on notice of any particular infringing listing. 576 F. Supp. 2d at 507. The Second Circuit agreed and held that eBay's duty to take down infringing listings arises only on its receipt of a NOCI or other notice for a specific listing. *See Tiffany*, 600 F.3d at 107 ("Some contemporary knowledge of which ***particular listings*** are infringing or will infringe in the future is necessary.") (emphasis added). Despite its ample opportunity to do so, Wimo has failed to allege that it sent any NOCIs related to the specific listings that eBay purportedly promoted through its marketing emails.[8] Thus, Wimo cannot impute knowledge to eBay.

Second, Wimo's claim that eBay uses algorithms to promote counterfeit goods, including Fake Lunatik Products, is utterly baseless. *See* Mot. at 21 n.7. Even the FAC concedes that "eBay uses this data in connection with its direct marketing of products listed on ebay.com." FAC ¶ 146. Wimo asks the Court to ignore this obvious, legitimate use in favor of its conjecture that eBay specifically uses algorithms to target buyers interested in counterfeits and promote such products. *See* Opp'n at 18:16-19:2. Such speculation cannot support a claim of criminal trademark infringement. *See Eclectic*, 751 F.3d at 996.

---

[8] At any given time, eBay has over 800 million listings from across the globe. FAC ¶ 40. The 5,000 NOCIs Wimo submitted from 2013 through 2015 account for less than 0.000625% of the listings on ebay.com on any particular day.

**B.    Wimo Fails to Adequately Allege Wire Fraud.**

eBay has argued that Wimo's wire fraud allegations fail because it does not allege facts showing that: (1) eBay knowingly participated in a scheme to defraud, and (2) eBay acted with intent to defraud. Mot. at 22:4-25:15. In response, the Opposition offers only misrepresentations of the law and unsupported speculation.

Wimo first claims that its wire fraud allegations are not limited to alleged misrepresentations and, instead, also include the misappropriation of its intellectual property. Opp'n at 19:13-25. Citing a California state court case, *Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.*, 151 Cal. App. 4th 631 (2007), Wimo asserts that misappropriation involves taking another person's property for no cost, to the detriment of the plaintiff. However, Wimo provides no authority that such misappropriation can provide the basis for the criminal wire fraud it must allege here. As the Motion notes, misappropriation or use of intellectual property, standing alone, is not wire fraud. *See* Mot. at 22:18-23:2 (citing *Johnson Elec.*, 98 F. Supp. 2d at 491, and *Evercrete*, 429 F. Supp. 2d at 630-31); *see also U.S. Media Corp. v. Edde Entm't, Inc.*, No. 94 Civ. 4849, 1996 U.S. Dist. LEXIS 13389, at *13 (S.D.N.Y. Sept. 12, 1996) ("[a] copyright violation alone does not involve either affirmative misrepresentation or any duty to disclose. Such a violation may not be 'bootstrapped' into a violation of the mail or wire fraud statutes"). Wimo failed to respond to this authority.

Regarding the misrepresentations—*i.e.,* automatically generated emails—that Wimo contends are part of the alleged wire fraud scheme, Wimo does not contest that eBay lacked knowledge that any particular solicitation was false at the time it was made. Opp'n at 20:17-19. Instead, Wimo asserts that a claim for wire fraud can lie even if eBay did not know the substance of the alleged representations. *Id.* at 20:19-22. Wimo's assertion does not comport with Ninth Circuit authority holding that a defendant must "knowingly" participate in a "scheme to defraud" or "knowingly" participate in "a scheme or plan for obtaining money by means of

false or fraudulent pretenses, representations, or promise." *United States v. Jinian*, 725 F.3d 954, 964-65 (9th Cir. 2013). Further, Wimo's theory defies logic: it is impossible for eBay to knowingly participate in a scheme to profit from alleged misrepresentations and act with an intent to deceive without knowledge that the representations were false.

Aside from its legally unsupported misappropriation theory and its attempt to transform wire fraud into a strict liability offense, Wimo devotes the rest of its argument to irrelevant propositions: that the FAC identifies specific wires it contends were in furtherance of the fraud, that Wimo is not required to show that the scheme was successful, and that the underlying purpose of the wire fraud statute is to proscribe the use of wires in connection with fraudulent activity. *See* Opp'n at 20:9-16. But these distractions cannot obscure the fundamental issue raised by eBay—the FAC does not allege any facts from which it can plausibly be inferred that eBay acted with intent to deceive users of its website. Mot. at 24:22-25:15.

This failure is fatal to Wimo's wire fraud allegation. Under *Eclectic*, where companies engage in transactions that are facially legitimate and operate legitimate businesses over a long period of time, "a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic*, 751 F.3d at 997-98 (internal quotations omitted). In evaluating whether Wimo has adequately alleged wire fraud, *Eclectic* dictates that Wimo's conclusory statements be disregarded and that the remaining factual allegations be compared against innocent alternative explanations for the defendant's conduct. *Id*. at 998-99.

Here, the FAC never alleges facts establishing that eBay colluded with the Seller Defendants or the thousands of Unauthorized Sellers to traffic in counterfeits, nor does the FAC allege that eBay provided assistance to these sellers beyond what it provides to any user of its website. Wimo has failed to address the obvious "alternative explanation" that the Seller Defendants and Unauthorized Sellers used

- 23 -

1  eBay's regular services, without its knowledge, cooperation, or approval, to sell
2  purported Fake Lunatik Products. This alternative explanation for eBay's actions
3  stands entirely uncontroverted by the Opposition. Because Wimo has failed under
4  *Eclectic* to negate the "alternative explanations" for eBay's actions, Wimo has not
5  "met [its] burden to do [s]omething more to render [its] allegations plausible within
6  the meaning of *Iqbal* and *Twombly*." *Id*. (internal citations and quotations omitted).
7  　　The RICO claim must be dismissed.

8  **CONCLUSION**

9  　　eBay respectfully requests that the Court grant the Motion and dismiss
10  Wimo's amended fifth cause of action for civil RICO against eBay with prejudice.

11
12  　Dated:  January 14, 2016　　　　　O'MELVENY & MYERS LLP
13
14  　　　　　　　　　　　　　　　By:　/s/ David R. Eberhart
15  　　　　　　　　　　　　　　　　　　David R. Eberhart
16  　　　　　　　　　　　　　　　Attorneys for Defendant eBay Inc.
17
18
19
20
21
22
23
24
25
26
27
28